1  **LEWIS BRISBOIS BISGAARD & SMITH LLP**
   Julian J. Pardini, Esq.  SB# 133878
2  Stephen J. Liberatore, Esq.  SB# 129772
   One Sansome Street, Suite 1400
3  San Francisco, California 94104
   Telephone: (415) 362-2580
4  Facsimile: (415) 434-0882

5  Attorneys for Defendant
   AMCO INSURANCE COMPANY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTINE DOUGHERTY, <br><br> Plaintiff, <br><br> v. <br><br> AMCO INSURANCE COMPANY, and DOES ONE through TWENTY, Inclusive, <br><br> Defendant. | CASE NO. C 07-01140 MHP <br><br> **NOTICE OF MOTION AND MOTION OF DEFENDANT AMCO INSURANCE COMPANY FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** <br><br> Date: July 30, 2007 <br> Time: 2:00 p.m. <br> Dept.: 15 — Hon. Marilyn Hall Patel |

4823-3667-6609.1

NOTICE OF MOTION & MOTION OF DEFENDANT AMCO INS. CO. FOR SUMMARY JUDGMENT;
MEMORANDUM OF POINTS AND AUTHORITIES - CASE NO. 07-01140 MHP

# TABLE OF CONTENTS

**PAGE**

TABLE OF CONTENTS ................................................................. i

TABLE OF AUTHORITIES ............................................................ ii

MOTION AND NOTICE OF MOTION ............................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES ....................... 1

I.   FACTUAL BACKGROUND ................................................... 1

II.   THE AMCO POLICY ............................................................. 3

III.   ARGUMENT ........................................................................... 6

    A.   Summary of Argument ................................................. 6

    B.   AMCO Did Not Breach the Insurance Contract .......... 6

    C.   AMCO Did Not Breach the Implied Covenant of Good Faith and Fair Dealing .................................................................................. 7

        1.   Absent a Breach of the Insurance Contract, AMCO Did Not Act in "Bad Faith" ........................................................... 7

        2.   There Was a Genuine Dispute About the Value of Plaintiff's Claim ..... 8

    D.   Plaintiff Is Not Entitled to an Award of Punitive Damages ................... 10

        1.   Plaintiff Cannot Prove Oppression, Fraud, or Malice, Intent to Harm Or Despicable Conduct ........................................... 10

        2.   Plaintiff's Evidence Must Be "Clear and Convincing" ................ 11

        3.   Punitive Damages May Be Recovered Against an Insurer Only For Conduct That Goes Beyond "Bad Faith" .................................... 11

        4.   Plaintiffs Cannot Offer Clear and Convincing Evidence to Show Oppression, Fraud Or Malice By AMCO ................................ 12

IV.   CONCLUSION ....................................................................... 13

4823-3667-6609.1

i

NOTICE OF MOTION & MOTION OF DEFENDANT AMCO INS. CO. FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES - CASE NO. 07-01140 MHP

LEWIS BRISBOIS BISGAARD & SMITH LLP
ONE SANSOME STREET, SUITE 1400
SAN FRANCISCO, CALIFORNIA 94104
TELEPHONE (415) 362-2580

## TABLE OF AUTHORITIES

**CASE LAW**            **PAGE**

*Basich v. Allstate Ins. Co.*
    (2001) 87 Cal.App.4th 1112 .................................. 11

*Chateau Chamberay Homeowners Assn. v. Associated International Ins. Co.*
    (2001) 90 Cal.App.4th 335 ................................... 8

*College Hosp., Inc. v. Superior Court*
    (1994) 8 Cal.4th 704 ........................................ 10

*Flyer's Body Shop v. Ticor Title Ins. Co.*
    (1986) 185 Cal.App.3d 1149 ................................. 10

*In re Angelina P.*
    (1981) 28 Cal.3d 908 ....................................... 11

*Love v. Fire Ins. Exchange*
    (1990) 221 Cal.App.3d 1136 ............................... 7-8

*Mock v. Michigan Millers Mut. Ins. Co.*
    (1992) 4 Cal.App.4th 306 ................................. 10-11

*Rappaport-Scott v. Interinsurance Exchange of the Automobile Club*
    (2007) 146 Cal.App.4th 831 ................................ 8-9

*Shade Foods, Inc. v. Innovative Products Sales & Marketing, Inc.*
    (2000) 78 Cal.App.4th 847 ................................ 11-12

*Stewart v. Truck Ins. Exchange*
    (1993) 17 Cal.App.4th 468 fn. 27 ......................... 11-12

*Tomaselli v. Transamerica Ins. Co.*
    (1994) 25 Cal.App.4th 1269, fn.14 ........................ 11-12

**STATUTES**

California Civil Code section 3294 ................................ 10

LEWIS BRISBOIS BISGAARD & SMITH LLP
ONE SANSOME STREET, SUITE 1400
SAN FRANCISCO, CALIFORNIA 94104
TELEPHONE (415) 362-2580

**MOTION AND NOTICE OF MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on July 30, 2007, at 2:00 p.m., or as soon thereafter as the matter may be heard in Department 15 of the above-entitled Court, located at the United States Courthouse, 450 Golden Gate Avenue, San Francisco, California, before the Honorable Marilyn Hall Patel, Judge, presiding, Defendant AMCO INSURANCE COMPANY (hereinafter "AMCO") will and hereby does move for summary judgment or, in the alternative, for partial summary judgment.

This motion is brought on the ground that there is no triable issue of material fact and, based on the undisputed facts, AMCO is entitled to judgment as a matter of law. Alternatively, this motion is brought on the ground that there is no triable issue of material fact as to the claims of Plaintiff CHRISTINE DOUGHERTY ("Plaintiff") for breach of contract, breach of the implied covenant of good faith and fair dealing ("bad faith"), or as to her prayer for punitive damages, and therefore, AMCO is entitled to an order of this Court that Plaintiff cannot recover as against AMCO with respect to each such claim.

This motion is based on this notice of motion, the following memorandum of points and authorities, the declarations of Jeffrey Mangone, H. Renton Rolph, Jr., and Darbie Hoffman, AMCO's Request for Judicial Notice, and exhibits attached thereto, the Court's file concerning this matter, and on such further evidence as may be presented at the hearing on the motion.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.  FACTUAL BACKGROUND**

On April 17, 2001, Plaintiff was injured in an automobile accident. (See Request for Judicial Notice, ¶1.) Plaintiff sought and obtained medical treatment and incurred $7,874 in medical expenses. (*Ibid.*) AMCO, which had issued to Plaintiff an automobile insurance policy (see, decl. of Hoffman, ¶2), paid medical bills submitted by Plaintiff pursuant to the med-pay provisions of the policy. (Decl. of Mangone, ¶3.)

On April 16, 2002, Plaintiff filed suit against the other driver involved in the accident. (*Id.* at ¶4.) In November 2002, Plaintiff demanded $30,000, the other driver's policy limits, in

LEWIS BRISBOIS BISGAARD & SMITH LLP
ONE SANSOME STREET, SUITE 1400
SAN FRANCISCO, CALIFORNIA 94104
TELEPHONE (415) 362-2580

settlement. This demand was met and the case settled for that amount. (*Id.* at ¶5.)

On January 8, 2003, Plaintiff's counsel advised AMCO that she wished to file an underinsured motorist claim, and AMCO opened a file.[1/] (*Id.* at ¶6.) In July 2003, Plaintiff demanded that AMCO pay her $45,000, in addition to the monies she had already received, in underinsured motorist benefits pursuant to the provisions of her AMCO policy. (*Id.* at ¶7.) Plaintiff provided information in support of her claim and AMCO requested additional information that was needed for the adjustment of Plaintiff's claim. (*Id.* at ¶¶7-11.) On November 26, 2003, AMCO advised Plaintiff's counsel that it did not believe that Plaintiff was entitled to receive underinsured motorist coverage benefits in addition to the monies she had already received. (*Id.* at ¶11.) The parties failed to agree on the amount, if any, AMCO owed in underinsured motorist coverage benefits (*id.* at ¶¶12-13) and, on November 4, 2004, Plaintiff's counsel demanded that Plaintiff's claim be submitted to arbitration (*id.* at ¶14).

The parties conducted discovery and in early October 2005 agreed to have Alfred Chiantelli, Judge (ret.), act as arbitrator. (Decl. of Rolph, ¶¶3-4.) The arbitration hearing took place on January 26, 2006. (*Id.* at ¶4.) At the arbitration, Plaintiff's counsel argued that her claim was worth between $125,000 and $175,000 more than the monies she had already received (*Id.* at ¶5); AMCO took the position that Plaintiff had been fully compensated by the $30,000 settlement with the other driver and AMCO's payment of med-pay benefits, and should take nothing additional by way of her underinsured motorist claim (*id.* at ¶6).

On March 1, 2006, Judge Chiantelli issued his decision, awarding Plaintiff $107,874 (*id.* at ¶7), which equaled the underinsured motorist coverage limit of Plaintiff's AMCO policy ($100,000), plus the total amount of her medical costs ($7,874). On March 29, AMCO issued payment to Plaintiff in the amount of $72,874 (the arbitration award less the $30,000 Plaintiff received in settlement with the other driver and the med-pay limits of the AMCO policy.) (*Id.* at ¶8.)

///

---

[1/]  Plaintiff settled with the other driver's insurer for damage to her car. Hence, in her lawsuit against the other driver, she did not allege property damage. Also, property damage to her car was not at issue in her underinsured motorist claim.

## II. THE AMCO POLICY

The AMCO policy ("the Policy") listed as named insureds "Christine D. Rayburn[2/] and Malcolm W. Rayburn, Jr." (See Decl. of Hoffman, ¶2, Ex. T (the AMCO policy), at p. 020017.) In pertinent part, the Policy provided as follows:

[at p. 020020]

### PERSONAL AUTO POLICY

**AGREEMENT**

In return for payment of the premium and subject to all the terms of this policy, we agree with you as follows:

. . .

[at p. 020023]

**PART B – MEDICAL PAYMENT COVERAGE**

**INSURING AGREEMENT**

A.  We will pay reasonable expenses incurred for necessary medical and funeral services because of "bodily injury:"

    1.  Caused by accident; and

    2.  Sustained by an "insured

B.  "Insured" as used in this Part means:

    1.  You . . .

. . .

[at p. 020025]

**PART C – UNINSURED MOTORISTS COVERAGE**[3/]

. . .

///

///

///

---

[2/]  It is undisputed that named insured "Christine D. Rayburn" is Plaintiff Christine Dougherty.

[3/]  This language was replaced by the endorsement that is quoted immediately hereafter.

[at pp. 020047]

**UNINSURED MOTORISTS COVERAGE — CALIFORNIA REDUCED LIMITS APPLY FOR "BODILY INJURY" TO ANY PERSON, OTHER THAN YOU OR ANY "FAMILY MEMBER"**

I.    PART C — UNINSURED MOTORISTS COVERAGE

Part C is replaced by the following:

**INSURING AGREEMENT**

    A.    We will pay compensatory damages which an "insured" is legally entitled to recover from the owner or operated of an "uninsured motor vehicle" because of:

        1.    "Bodily injury" sustained by an "insured" and caused by an accident; . . ..

The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the "uninsured motor vehicle". . . .

    B.    "Insured" as used in this endorsement means:

        1.    You or any "family member".

        . . .

    D.    "Uninsured motor vehicle" means a land motor vehicle or trailer of any type:

        . . .

        2.    Which, with respect to damages for "bodily injury" only, is an underinsured motor vehicle. An underinsured motor vehicle is one which a liability bond or policy applies at the time of the accident but its limit for liability is less than the limit of liability for this coverage. . . .

. . .

[at p. 020049-020050]

**LIMIT OF LIABILITY**

**The limits of liability for you and "family members" and persons designated in the Schedule are different than for other persons.**

**Subject to the limit of liability as determined by paragraphs A and B below, the limit of Bodily Injury Liability shown in the Declarations for this coverage for each accident is the maximum amount we will pay to all "insureds" for all damages for "bodily injury" resulting from any one accident.**

4823-3667-6609.1    4

NOTICE OF MOTION & MOTION OF DEFENDANT AMCO INS. CO. FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES - CASE NO. 07-01140 MHP

A.  Limit of Liability for Bodily Injury To You and "Family Members" and Persons Designated in the Schedule

The limit of Bodily Injury Liability show in the Declarations for this coverage for each person is the maximum amount we will pay for "bodily injury" sustained by any one person in any one accident, when that "bodily injury" is sustained by you or any "family member" or any person designated in the Schedule. That maximum amount includes any claim of other persons arising out of that "bodily injury."

. . .

E.  The limit of liability shall be reduced by all sums:

1.  Paid because of the "bodily injury" or "property damage" by or on behalf of persons or organizations who may be legally responsible. This includes all sums paid under Part A of the policy; . . .

. . .

F.  We will not make a duplicate payment under this coverage for the same element of loss that has been paid by or on behalf of persons or organizations who may be legally responsible. This includes all sums paid under Part A of the policy.

G.  We will not make a duplicate payment under this coverage for the same element of loss that has been paid under any automobile medical payments coverage. This includes all sums paid under Part B of the policy.

. . .

[at p. 020051]

**ARBITRATION**

A.  If we and an "insured" do not agree:

1.  Whether that person is legally entitled to recover damages under this coverage; or

2.  As to the amount of damages;

then the matter will be settled by arbitration. Such arbitration may be initiated by a written demand for arbitration made by either party. The arbitration shall be conducted by a single neutral arbitrator. . . .

B.  Each party will:

1.  Pay the expenses it occurs; and

2.   Bear the expenses of the arbitrator equally.

C.   Any decision of the arbitrator will be binding as to:

1.   Whether the "insured" is legally entitled to recover damages; and

2.   The amount of damages.

The Policy provided uninsured (and underinsured) motorist coverage limits of $100,000 per person and $300,000 per accident. The Policy also provided $5,000 in med-pay benefits per person per accident. (Ex. T, at p. 020017.)

## III.   ARGUMENT

### A.   Summary of Argument

AMCO moves for summary judgment on the ground that it did not breach any provision of the insurance contract with Plaintiff. AMCO further moves for summary judgment on the ground that, absent a breach of the insurance contract, as a matter of law it could not have breached the implied covenant of good faith and fair dealing (i.e., acted in "bad faith"); also, AMCO contends that it could not have acted in bad faith in that there was a genuine dispute with respect to the value of Plaintiff's underinsured motorist claim.

Alternatively, AMCO moves for partial summary judgment that:

- AMCO did not breach the insurance contract;

- AMCO's handling of Plaintiff's underinsured motorist claim did not constitute insurance "bad faith;" and

- Plaintiff is not entitled to recover punitive damages.

### B.   AMCO Did Not Breach the Insurance Contract

AMCO contends that the undisputed facts establish, as a matter of law, that it did not breach the insurance contract, in that:

- AMCO did not deny that there was coverage for Plaintiff's underinsured motorist claim;

- AMCO did not withhold underinsured motorist coverage benefits that were due;

- AMCO did not refuse to arbitrate Plaintiff's underinsured motorist claim and did not refuse to select an arbitrator;

- AMCO did not refuse to pay underinsured motorist benefits awarded to Plaintiff by the arbitrator.

As the above recitation of facts establishes, AMCO agreed that the Policy provided underinsured motorist coverage and accepted Plaintiff's underinsured motorist claim. Based on its evaluation of Plaintiff's claim, however, AMCO determined that the value of her claim did not exceed the $30,000 she had already received in settlement of her lawsuit against the other driver and the med-pay benefits AMCO had paid her, and therefore took the position that no "new" money was due to be paid to Plaintiff under the Policy. The Policy did not require AMCO to accept the value Plaintiff affixed to her claim; indeed, the Policy specifically contemplated that AMCO and its insured might not agree on the value of an uninsured or underinsured motorist claim, and thus provided a method by which that disagreement could be resolved — either party could demand that the disagreement be submitted to arbitration.

AMCO did not deny Plaintiff's demand to proceed to arbitration, but instead actively participated in discovery after her demand was made and cooperated in the selection of an arbitrator and the scheduling of the arbitration hearing. AMCO then actively participated in the arbitration hearing and, after the arbitrator submitted his decision, AMCO paid to Plaintiff the amount of the award (appropriately deducting amounts already paid to her).

In short, at no point in time did AMCO withhold policy benefits that were due to be paid to Plaintiff. Hence, AMCO did not breach the insurance contract.

C. **AMCO Did Not Breach the Implied Covenant of Good Faith and Fair Dealing**

  1. **Absent a Breach of the Insurance Contract, AMCO Did Not Act in "Bad Faith"**

Under well-established California law, a breach of the implied covenant of good faith and fair dealing has two elements: "(1) benefits due under the policy must have been withheld and (2) the reason for withholding benefits must have been unreasonable or without proper cause." (*Love v. Fire Ins. Exchange* (1990) 221 Cal.App.3d 1136, 1151.) If Plaintiff cannot prove that benefits were due under the Policy, then she cannot prove a breach of the implied covenant. (*Id.* at 1151-1152.) Therefore, if judgment is rendered in favor of AMCO on the breach of contract cause

1  of action, it must also be rendered in favor of AMCO on the cause of action for breach of the
2  implied covenant. (*Ibid.*)
3        As established above, AMCO did not breach the insurance contract: It did not deny
4  underinsured motorist coverage; it accepted Plaintiff's claim; it evaluated Plaintiff's claim; it
5  disagreed with Plaintiff about the value of her claim; it accepted Plaintiff's demand to proceed to
6  arbitration; it actively participated in the arbitration; and it paid the arbitration award.
7        Hence, inasmuch as AMCO did not breach the contract, it cannot, as a matter of law, be
8  liable for an alleged breach of the implied covenant of good faith and fair dealing.

      **2.   There Was a Genuine Dispute About the Value of Plaintiff's Claim**

10        Even if the Court does not grant summary judgment or partial summary judgment as to the
11  breach of contract cause of action, summary judgment or partial summary judgment should be
12  granted on the cause of action for breach of the implied covenant of good faith and fair dealing
13  because there existed a "genuine dispute" as to the value of Plaintiff's underinsured motorist
14  claim. Indeed, the Policy contemplated the very circumstance that occurred— that AMCO and
15  Plaintiff might disagree regarding the value of an underinsured motorist claim— and provided for
16  arbitration to resolve that dispute.
17        It is now established in California that where there is a genuine dispute concerning the
18  nature and extent of coverage or the value of an insured's claim, an insurer cannot be held liable
19  for bad faith. (*Chateau Chamberay Homeowners Assn. v. Associated International Ins. Co.* (2001)
20  90 Cal.App.4th 335, 347-348.) It is not necessary that the insurer's position was ultimately
21  correct, only that "its position with respect to the disputed points was reasonable or that [the
22  insurer] had proper cause to assert the positions it did." (*Id.* at 350.)
23        A recent California appellate court case, *Rappaport-Scott v. Interinsurance Exchange of
24  the Automobile Club* (2007) 146 Cal.App.4th 831, is directly on point. There, as here, plaintiff
25  was involved in an auto accident, sued the other driver, then settled for that driver's policy limits
26  ($25,000). She then submitted a claim to her own insurer, Interinsurance, for benefits under her
27  policy's underinsured motorist coverage. The parties then proceeded to arbitration per plaintiff's
28  demand, where plaintiff argued that her claim was worth nearly $350,000 and sought an award of

1  $75,000 (the difference between her policy's underinsured motorist coverage limit of $100,000
2  and the $25,000 policy limits she recovered from the other driver), and Interinsurance offered
3  "only $7,000." The arbitrator awarded plaintiff $63,000, of which plaintiff was entitled to receive
4  $33,000, after deducting the amounts she had already received ($25,000 from the other driver and
5  $5,000 in med-pay benefits from Interinsurance). Plaintiff then sued Interinsurance, alleging that
6  it had breached the implied covenant of good faith and fair dealing.

7   The trial court sustained Interinsurance's demurrer to the original and amended complaints,
8  ultimately denying plaintiff further leave to amend and dismissing her lawsuit. The appellate court
9  affirmed, stating:

> Despite the difference between the $7,000 offered by Interinsurance and the $33,000 later determined to be payable on the policy, the vast difference between the $346,732.34 in losses claimed by Rappaport-Scott and the $63,000 in actual losses as determined by the arbitrator demonstrates, *as a matter of law*, that a genuine dispute existed as to the amount payable on the claim. Moreover, Rappaport-Scott does not allege or assert any facts that would overcome the necessary inference from the facts she does allege that a genuine dispute existed, and therefore cannot.
>
> Accordingly, even if Rappaport-Scott's complaint could be construed as alleging an unreasonable delay in payment of benefits, we conclude that the facts alleged in the complaint demonstrate beyond argument that a genuine dispute existed as to the amount payable on her claim.

18 (*Id.* at 839, emphasis in original.)

19   Here, under eerily similar circumstances, Plaintiff was involved in an auto accident, sued
20  the other driver, settled for his policy limits, submitted an underinsured motorist claim to AMCO,
21  demanded arbitration, argued that her claim was worth between $125,000 and $175,000 (while
22  AMCO argued that the $30,000 she received in settlement with the other driver, plus the med-pay
23  benefits of the Policy she had already received, adequately compensated her for her damages), and
24  received an arbitration award of $107,874, which was reduced to $72,874 to account for monies
25  she had already received in settlement with the other driver and the med-pay limits of the Policy.
26  Here, as in *Rappaport-Scott*, that the arbitrator determined Plaintiff's underinsured motorist claim
27  had a value less than the amount Plaintiff determined it was worth and more than the amount
28  AMCO determined it was worth "demonstrates, *as a matter of law*, that a genuine dispute existed

LEWIS BRISBOIS BISGAARD & SMITH LLP
ONE SANSOME STREET, SUITE 1400
SAN FRANCISCO, CALIFORNIA 94104
TELEPHONE (415) 362-2580

1 as to the amount payable on the claim." (*Ibid.*)

2 Thus, at best, Plaintiff can show only that there was a genuine dispute between her and AMCO regarding the value of her claim and the amount payable under the Policy. That such a genuine dispute existed establishes as a matter of law that AMCO did not act in bad faith.

### D. Plaintiff Is Not Entitled to an Award of Punitive Damages

#### 1. Plaintiff Cannot Prove Oppression, Fraud, or Malice, Intent to Harm Or Despicable Conduct

Even if the Court concludes that triable issues of fact exist with regard to breach of contract or "bad faith," it should grant partial summary judgment as to Plaintiff's prayer for punitive damages.

Plaintiff cannot recover punitive damages unless she proves by clear and convincing evidence either (a) that AMCO had an affirmative intention to harm her, or (b) that AMCO's handling of the claim was "despicable." This follows from the definitions of "oppression," "fraud," and "malice" in California Civil Code section 3294. "Oppression" requires that the defendant's conduct be "despicable." "Fraud" requires proof that the defendant intended to cause injury to the plaintiff. "Malice" may be based on either an intention to injure or upon "despicable" conduct. Further, "[p]unitive damages are proper only when the tortious conduct rises to levels of extreme indifference to the plaintiff's rights, a level which decent citizens should not have to tolerate." (*Flyer's Body Shop v. Ticor Title Ins. Co.* (1986) 185 Cal.App.3d 1149, 1154, emphasis added.)

To prove an intent to harm, Plaintiff must prove that AMCO committed "an act conceived in a spirit of mischief or with criminal indifference towards the obligations owed to others." (*Mock v. Michigan Millers Mut. Ins. Co.* (1992) 4 Cal.App.4th 306, 328.) "Despicable" conduct is conduct which is "so vile, base, contemptible, miserable, wretched, or loathsome that it would be looked down upon and despised by ordinary decent people." (*College Hosp., Inc. v. Superior Court* (1994) 8 Cal.4th 704, 725 (internal brackets omitted).) In 1987, the Legislature amended Section 3294 to require "despicable" conduct so as to impose a "substantive limitation on punitive damage awards." (*College Hospital, Inc., supra*, 8 Cal.4th at 725.)

///

Case 3:07-cv-01140-MHP   Document 11   Filed 06/22/2007   Page 14 of 16

### 2. Plaintiff's Evidence Must Be "Clear and Convincing"

The "clear and convincing evidence" requirement, added by the Legislature in 1987, was also intended as a substantive limitation on punitive damage awards. (*Stewart v. Truck Ins. Exchange* (1993) 17 Cal.App.4th 468, 481-482 and fn. 27.) When determining the viability of a punitive damages claim on a motion for summary adjudication, the court must view the evidence in light of the "clear and convincing" standard of proof. (*Basich v. Allstate Ins. Co.* (2001) 87 Cal.App.4th 1112, 1121, emphasis added.) Evidence is "clear and convincing" when it is "'so clear as to leave no substantial doubt'" or "'sufficiently strong to command the unhesitating assent of every reasonable mind.'" (*Shade Foods, Inc. v. Innovative Products Sales & Marketing, Inc.* (2000) 78 Cal.App.4th 847, 891, quoting *In re Angelina P.* (1981) 28 Cal.3d 908, 919.)

### 3. Punitive Damages May Be Recovered Against an Insurer Only For Conduct That Goes Beyond "Bad Faith"

In the insurance context, an insured cannot recover punitive damages unless the insurer's conduct goes *beyond* that ordinarily characterized as "bad faith." Accordingly, even if it is determined that an insurer is liable for "bad faith" due to the unreasonable handling of a claim, it does not follow that the insurer is liable for punitive damages. (See *Mock v. Michigan Millers Mut. Ins. Co., supra,* 4 Cal.App.4th at 328.) In reversing a jury award of punitive damages in a first party insurance case, one California Court of Appeal held:

> [T]he actions of [the insurance company] may be found to be negligent (failing to follow up information provided by the insured), overzealous (taking an unnecessary deposition under oath of the insured), legally erroneous (relying on an endorsement which was not shown to have been delivered), and callous (failing to communicate). There was nothing done, however, which could be described as evil, criminal, recklessly indifferent to the rights of the insured, or with a vexatious intention to injure.

(*Tomaselli v. Transamerica Ins. Co., supra,* 25 Cal.App.4th at 1288.)

In light of the enhanced burden of proof necessary to recover punitive damages, courts in insurance cases routinely find a failure of proof on punitive damages claims, even where "bad faith" is found to be present. (See *e.g., Basich v. Allstate Ins. Co., supra,* 87 Cal.App.4th at 1121 (affirming summary judgment); *Shade Foods, Inc. v. Innovative Products Sales & Marketing, Inc.,*

4823-3667-6609.1                              11
NOTICE OF MOTION & MOTION OF DEFENDANT AMCO INS. CO. FOR SUMMARY JUDGMENT;
MEMORANDUM OF POINTS AND AUTHORITIES - CASE NO. 07-01140 MHP

1  *supra*, 78 Cal.App.4th at 892 (reversing jury award); *Tomaselli v. Transamerica Ins. Co.* (1994) 25
2  Cal.App.4th at 1288 (reversing jury award); *Stewart v. Truck Ins. Exchange, supra*, 17
3  Cal.App.4th at 482-484 (reversing order granting new trial on punitive damages after non-suit).)

### 4. Plaintiff Cannot Offer Clear and Convincing Evidence to Show Oppression, Fraud Or Malice By AMCO

This case represents nothing more than a dispute concerning whether Plaintiff had been adequately compensated for her injuries by the amounts she had already received from the settlement she reached in her lawsuit against the other driver in the underlying auto accident and the payments she received under the med-pay provisions of the Policy.

Plaintiff's boilerplate allegations in support of her punitive damage claim are that AMCO "acted without due regard for and in reckless and conscious disregard of the medical, physical, emotional and financial circumstances of and potentially adverse consequences to plaintiff" and that AMCO "pursued this course of despicable conduct intentionally, maliciously, in conscious disregard of the rights of plaintiff, fraudulently, and/or with reckless disregard of the likelihood of causing plaintiff extreme detriment . . . ." (Request for Judicial Notice, Ex. U (Complaint, ¶¶26-27).) She offers no specific facts supporting these conclusory allegations.

Indeed, Plaintiff's allegations are not consistent with the undisputed facts. AMCO agreed that the Policy provided underinsured motorist coverage and AMCO accepted Plaintiff's underinsured motorist claim. Based on its evaluation of Plaintiff's claim, however, AMCO determined that the value of her claim did not exceed the $30,000 she received in settlement of her lawsuit against the other driver and the med-pay benefits she received from AMCO, and therefore took the position that no "new" money was due to be paid to Plaintiff under the Policy. When Plaintiff disputed its position, AMCO accepted Plaintiff's demand to proceed to arbitration, actively participated in discovery and cooperated in the selection of an arbitrator and the scheduling of the arbitration hearing. AMCO also participated in the arbitration hearing, and, after the arbitrator announced his decision, AMCO paid to Plaintiff the amount due after deducting from the arbitrator's award the monies already paid to Plaintiff in settlement with the other driver and the limits of the med-pay benefits of the AMCO policy. Therefore, AMCO did nothing which

could even arguably approach satisfying the standard for punitive damages, and thus Plaintiff is not entitled to an award of punitive damages as a matter of law.

## IV. CONCLUSION

Based on the foregoing, AMCO respectfully requests that the Court grant this motion and enter judgment in favor of AMCO and against Plaintiff.

Alternatively, AMCO respectfully requests that the Court grant AMCO's motion for partial summary judgment and issue an order that AMCO did not breach the insurance contract, and/or did not breach the implied covenant of good faith and fair dealing, and/or that Plaintiff is not entitled to recover punitive damages as against AMCO.

Dated: June 22, 2007

Respectfully submitted,

LEWIS BRISBOIS BISGAARD & SMITH LLP

By _____
Julian J. Pardini
Stephen J. Liberatore
Attorneys for Defendant
AMCO INSURANCE COMPANY

4823-3667-6609.1

13

NOTICE OF MOTION & MOTION OF DEFENDANT AMCO INS. CO. FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES - CASE NO. 07-01140 MHP