**LEWIS BRISBOIS BISGAARD & SMITH** LLP
Julian J. Pardini, Esq.  SB# 133878
Stephen J. Liberatore, Esq.  SB# 129772
One Sansome Street, Suite 1400
San Francisco, California 94104
Telephone: (415) 362-2580
Facsimile: (415) 434-0882

Attorneys for Defendant
AMCO INSURANCE COMPANY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTINE DOUGHERTY, | ) CASE NO. C 07-01140 MHP |
| Plaintiff, | ) **DECLARATION OF RENTON** |
| | ) **ROLPH, ESQ., IN SUPPORT OF MOTION** |
| v. | ) **OF DEFENDANT AMCO INSURANCE** |
| | ) **COMPANY FOR SUMMARY JUDGMENT,** |
| | ) **OR IN THE ALTERNATIVE, PARTIAL** |
| AMCO INSURANCE COMPANY, and DOES | ) **SUMMARY JUDGMENT** |
| ONE through TWENTY, Inclusive, | ) |
| | ) Date:   July 30, 2007 |
| Defendant. | ) Time:  2:00 p.m. |
| | ) Dept.: 15 — Hon. Marilyn Hall Patel |
| | ) |

I, H. Renton Rolph, Jr., declare:

1.      I am an attorney at law, duly licensed to practice before all courts of the State of

California, as well as the United States District Court, Northern District of California.  I am

employed as an attorney by Nationwide Mutual Insurance Company, and in that capacity have

represented AMCO Insurance Company ("AMCO"), Defendant in the above-referenced litigation

and a member of the Nationwide "family" of companies.  I make this declaration in support of

AMCO's Motion for Summary Judgment, or in the alternative, Partial Summary Judgment.  I have

personal knowledge of the matters set forth herein, except as to those matters stated on information

and belief and, as to those matters, I am informed and believe them to be true.

/ / /

/ / /

LEWIS BRISBOIS BISGAARD & SMITH LLP
ONE SANSOME STREET, SUITE 1400
SAN FRANCISCO, CALIFORNIA 94104
TELEPHONE (415) 362-2580

2.    I was assigned to represent AMCO in November 2004 after Ms. Dougherty demanded arbitration to resolve her underinsured motorist claim, which arose out an automobile accident in which she was involved on April 17, 2001.

3.    After Ms. Dougherty demanded arbitration, the parties engaged in discovery, much as parties do in litigation. On behalf of AMCO, I requested production of documents, propounded interrogatories, and conducted depositions, including that of Ms. Dougherty.

4.    In early October 2005, the parties agreed to have the Honorable Alfred Chiantelli, Judge (ret.), act as arbitrator. On January 26, 2006, Judge Chiantelli conducted the arbitration.

5.    In his letter-brief as well as in his oral argument at the arbitration, Ms. Dougherty's attorney, Stephen M. Murphy, argued that Ms. Dougherty's underinsured motorist claim was worth between $125,000 and $175,000, in addition to the monies already paid to her pursuant to the settlement of her lawsuit against the other driver involved in the auto accident ($30,000) and the "med-pay" benefits paid by AMCO. A true and correct copy of Mr. Murphy's letter brief is attached hereto and marked **Exhibit Q**.

6.    I argued in my brief and orally at the arbitration hearing that, considering Ms. Dougherty's comparative negligence for and the nature of the injuries she allegedly sustained in the auto accident, she had already been adequately compensated via the settlement with the other driver and by AMCO's payment of "med-pay" benefits and, therefore, should take nothing ($0) by way of her underinsured motorist claim. A true and correct copy of the arbitration brief I prepared for AMCO is attached hereto and marked **Exhibit R**. At the arbitration, Judge Chiantelli asked me how much I thought her claim was worth were it assumed that Ms. Dougherty bore no liability for the auto accident; I replied that at most her underinsured motorist claim would be worth $20,000.

7.    On March 1, 2006, Judge Chiantelli issued his decision, awarding Ms. Dougherty $107,874. Given the $30,000 paid to Ms. Dougherty in settlement of her lawsuit against the other driver and the $5,000 med-pay benefits limits under the Policy, Judge Chiantelli determined that Ms. Dougherty was entitled to recover $72,874 from AMCO. A true and correct copy of Judge Chiantelli's arbitration award is attached hereto and marked **Exhibit S**.

LEWIS BRISBOIS BISGAARD & SMITH LLP
ONE SANSOME STREET, SUITE 1400
SAN FRANCISCO, CALIFORNIA 94104
TELEPHONE (415) 362-2580

4158373835  Law Offices of Justin D   Nationwide Insurance  03-27-14 p.m. 06-21-2007  2 /2

Case 3:07-cv-01140-MHP  Document 13  Filed 06/22/2007  Page 3 of 21

8.  On March 29, 2006, AMCO issued a check in that amount and forwarded it to Mr. Murphy.

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed this 21 day of June, 2007, at San Francisco, California.

*H. Renton Rolph*

H. Renton Rolph

LEWIS BRISBOIS BISGAARD & SMITH LLP
ONE SANSOME STREET, SUITE 1400
SAN FRANCISCO, CALIFORNIA 94104
TELEPHONE (415) 362-2580

DECLARATION OF H. RENTON ROLPH IN SUPPORT OF AMCO'S MOTION FOR SUMMARY JUDGMENT
CASE NO. 07-01140 MHP

# EXHIBIT Q

FROM : LAW OFFICE                    FAX NO. : 4159861231              Jan. 25 2006 03:44PM P2

180 Montgomery Street, Suite 940  San Francisco, California 94104

415.986.1338    415.986.1231    www.stephenmmurphy.com

002806 000037

STEPHEN M. MURPHY

CLAIMANT'S

BRIEF

FAX

January 25, 2006

**VIA FAX TO (415) 772-0960**

Hon. Alfred Chiantelli
ADR Services, Inc.
450 Sansome St., Ste. 1100
San Francisco, CA 94111

Re:    Christine Dougherty – Underinsured Motorist Claim
          Date of Incident:    4/17/01
          Arbitration Date:    1/26/06

Dear Judge Chiantelli:

Claimant Christine Dougherty hereby submits her arbitration letter brief with regard to this underinsured motorist claim. Claimant intends to call three witnesses at the hearing: Christine Dougherty, her husband Malcolm Rayburn, and Dr. Ernest Sponzilli who will testify by deposition and telephone.

The only issues before the arbitrator are (1) whether the insured is entitled to recover damages from the underinsured motorist and (2) if so, the amount of damages. Accordingly, arbitration is limited to issues relating to liability of the underinsured motorist to the insured and "does not include determination of the extent of coverage and the amount of money the insurance company is obligated to pay the insured." *Weinberg v. Safeco* (2004) 114 Cal. App. 4th 1075, 1082. Claimant therefore moves in limine for exclusion of any evidence or mention of the limits of her underinsured motorist policy.

**Factual Background**

Ms. Dougherty is a 46 year old mother of three sons, two teenagers and a four year old.

On April 17, 2001, at approximately 4:00 p.m., Ms. Dougherty was driving a 1969 Porsche that her husband gave her as a 40th birthday present. Ms. Dougherty came to a complete stop at a posted stop sign at the intersection of San Marin Drive and Simmons Lane in Novato. Before making a left turn onto Simmons Lane, Ms. Dougherty noticed two trucks, one green and one white, stop at the stop sign in front of her, in the eastbound direction of San Marin Drive. Ms. Dougherty was stopped at the stop sign before the two trucks stopped and had the right of way.

010826

FROM :LAW OFFICE                    FAX NO. :4159861231              Jan. 25 2006 03:44PM P3

002806 300838

STEPHEN M. MURPHY

Hon. Alfred Chiantelli                                                Page 2 of 5
ADR Services, Inc.
January 25, 2006

Ms. Dougherty began to make a left turn onto Simmons Lane. As she was turning, she noticed the white truck slowing down, but the green truck was accelerating through the intersection. Ms. Dougherty yelled out of her window to the driver of the green truck, honked her horn, and tried to accelerate out of the way, but the driver of the green truck, Glen Osmidoff, struck the rear portion of Ms. Dougherty's vehicle. Ms. Dougherty had almost completed her left turn when she was struck. Ms. Dougherty sustained approximately $7,000 in damages to her vehicle.

A police officer reported to the scene of the incident and made a report. After speaking to Mr. Osmidoff, Ms. Dougherty and an independent witness, the police officer concluded that the accident was caused by Mr. Osmidoff's failure to yield to Ms. Dougherty, in violation of Vehicle Code section 21800a. The independent witness told the police officer that he believed Mr. Osmidoff may have been talking to the driver of the white truck prior to the incident and that he was looking to the left, at the driver of the white truck, instead of looking forward to where Ms. Dougherty's vehicle was located at the time he accelerated away from the intersection.

Ms. Dougherty filed a lawsuit against Mr. Osmidoff for negligence and loss of consortium on April 16, 2002. In December of 2002, Ms. Dougherty and Mr. Osmidoff settled for $30,000, the limits of Mr. Osmidoff's insurance policy.

## Medical Treatment

Ms. Dougherty first began to experience pain a few days after the incident. Her first symptom was a stiff neck. She called Dr. Ernest Sponzilli, a pain management and physical medicine specialist at Mt. Tam Orthopedics, for an appointment. The first available appointment Dr. Sponzilli had was on April 24.

During her first appointment with Dr. Sponzilli, Ms. Dougherty complained of neck, shoulder and upper back pain. She also told Dr. Sponzilli that she believed she was pregnant. Dr. Sponzilli held off on taking any x-rays until Ms. Dougherty could find out whether or not she was pregnant. In the meantime, Dr. Sponzilli prescribed physical therapy, a cervical collar, and a cervical traction unit. Dr. Sponzilli's initial diagnosis was a possible cervical disk herniation, cervical soft tissue strain, and rotator cuff strain.

Ms. Dougherty was seen by her OBGYN, Dr. Harris Simmonds, on May 7, 2001. Dr. Simmonds confirmed that she was indeed pregnant and advised Ms.

010827

FROM : LAW OFFICE                    FAX NO. : 4159861231        Jan. 25 2006 03:45PM P4

002806300839

STEPHEN M. MURPHY

Page 3 of 5

Hon. Alfred Chiantelli
ADR Services, Inc.
January 25, 2006

Dougherty against undergoing x-rays, MRIs, or CAT scans until after her baby was delivered. Ms. Dougherty's due date was late December 2001.

Ms. Dougherty started physical therapy on May 8, 2001 and went to ten (10) physical therapy sessions from that date until July 5, 2001.

Ms. Dougherty followed-up with Dr. Sponzilli on June 4, 2001. At that time, Dr. Sponzilli prescribed additional physical therapy for Ms. Dougherty as well as acupuncture. Following this appointment, Ms. Dougherty continued with physical therapy and had three acupuncture treatments in June of 2001 at the Novato Acupuncture and Herb Clinic. The physical therapy and acupuncture offered little relief of Ms. Dougherty's symptoms. Ms. Dougherty followed-up again at Mt. Tam Orthopedics on July 9, 2001.

Ms. Dougherty gave birth to her son on December 17, 2001.

On February 15, 2002, Ms. Dougherty returned to Dr. Sponzilli and complained of continuing, chronic neck and right shoulder pain. X-rays were taken that day and an MRI was ordered. The MRIs were conducted on March 1, 2002. The cervical MRI showed "at the level of C5-6, there is a mild right paracentral disc protrusion **effacing the ventral cord** with mild secondary central canal stnosis without nerual foraminal stenosis. At C6-7, there is mild protrusion centrally with mild central canal stenosis without neural foraminal stenosis." (Emphasis added.) In Dr. Sponzilli's opinion, these cervical disc herniations were caused by the subject accident.

The right shoulder MRI showed: 1) **"partial undersurface articular surface tear** of the supraspinatus adjacent to an area of erosion in the greater tuberosity" 2) mild acromioclavicular joint arthrosis with sclerosis" and 3) "mild glenhumeral joint effusion." (Emphasis added.)

Dr. Sponzilli went over the MRI results with Ms. Dougherty on March 8, 2002 and prescribed additional physical therapy as well as topical and oral anti-inflammatory medications. Dr. Sponzilli discussed that surgery might be an option, but she opted for a conservative treatment regimen since she had just given birth a few months earlier and, as a result, was not in a position to undergo surgery and subsequent rehabilitation from surgery.

Ms. Dougherty followed up again at Mt. Tam Orthopedics on April 19, 2002. At that time, she was prescribed additional physical therapy and acupuncture. Ms.

010828

002806 300840

STEPHEN M. MURPHY
Page 4 of 5

Hon. Alfred Chiantelli
ADR Services, Inc.
January 25, 2006

Dougherty had twelve (12) acupuncture treatments from April 26 through July 9, 2002. (The acupuncture was performed by licensed acupuncturist and RN, Paula Aboud. Ms. Aboud is affiliated with Mt. Tam Orthopedics.)

In the fall of 2003 she underwent shoulder and cervical nerve blocks which confirmed her symptoms. She consulted orthopedist Dr. Mark Lawler at that time, who recommended shoulder surgery. Her last visit with Dr. Lawler was in March of 2004. Because her only viable treatment option is surgery and Ms. Dougherty is not in a position to undergo surgery in view of her family responsibilities, she has not returned to see her doctors. Her symptoms, however, have continued as have the restrictions on her usual activities.

Ms. Dougherty previously experienced pain in her right shoulder approximately ten years before the subject accident from coaching and playing baseball. However, that injury resolved itself well before April 2001, and Ms. Dougherty had not received treatment for her shoulder or experienced shoulder symptoms for several years prior to the automobile accident. Ms. Dougherty fractured her lower spine in an automobile accident in April of 1999. However, the spine fracture was resolved by August of 1999 and was not exacerbated by the automobile accident of April 2001.

Dr. Sponzilli opined in his deposition that Ms. Dougherty's neck and shoulder injuries were caused by the April 2001 automobile accident.

### Medical Expenses

Ms. Dougherty incurred over $7,000 in medical expenses as a result of the incident. AMCO Insurance Company has paid $5,000 in medical payments coverage and is entitled to an offset for this amount.

### Pain and Suffering

Ms. Dougherty has suffered constant pain in her neck and right shoulder for nearly five years. The pain made Ms. Dougherty's pregnancy more difficult to endure. Despite trying various conservative measures to alleviate the pain, she is still symptomatic and is faced with undergoing surgery that will require extensive and painful rehabilitation.

010829

FROM : LAW OFFICE                FAX NO. :4159861231              Jan. 25 2006 03:45PM P6

002806 300841

STEPHEN M. MURPHY
Page 5 of 5

Hon. Alfred Chiantelli
ADR Services, Inc.
January 25, 2006

### Conclusion

Claimant believes her general damages have a value in the range of $125,000 to $175,000 and will ask the arbitrator to render an award in this range.

Very truly yours,

STEPHEN M. MURPHY

cc: H. Renton Rolph, Esq.

010830

**EXHIBIT R**

002806300842

H. Renton Rolph / State Bar No. 73457
JAMES & McCLELLAN
One Front Street, Suite 1250
San Francisco, CA 94111
Telephone:  (415) 837-3820
Fax:          (415) 837-3835

Attorney for Respondent
AMCO Insurance Company

IN RE: THE UNINSURED MOTORIST CLAIM

CHRISTINE DOUGHERTY,                    None Assigned

    Claimant,

                          **AMCO INSURANCE COMPANY'S**
vs.                                                  **ARBITRATION BRIEF**

AMCO  INSURANCE COMPANY,

    Respondent.                       Arbitrator: Judge Alfred Chiantelli
                            /    Date: 1/26/06

Respondent AMCO Insurance Company submits its Brief:

**I STATEMENT OF FACTS**

This is an underinsured motorist's case arising from an auto accident in

Novato, CA on 4/17/2001.  AMCO Insurance Company insured the 1969 Porsche 912

being driven by Claimant Christine Dougherty.  On 4/17/01 at about 4:00 p.m. claimant

made  a left turn at the intersection of San Marin Drive and Simmons Lane in Novato.

Claimant was westbound on San Marin Drive and entered the left turn lane in order to

turn left onto southbound Simmons Lane. Facing claimant on eastbound San Marin

Drive  side by side in two lanes  were two stopped pick up trucks.  A white truck was in

1

010831

002806 3008 3

1  eastbound lane number one and a green truck in eastbound lane number two. The

2  driver of the green truck was Glenn Osmidoff.

3      While making her left turn in front of these two vehicles, claimant's

4  Porsche collided with the green truck driven by Osmidoff. Claimant Dougherty did not

5  activate her left turn signal before and during her left turn. This point is not disputed.

6      Omsidoff was insured by USAA  with a policy limit of $30,000. In

7  December 2002 USAA paid this amount to Ms. Dougherty in exchange for a complete

8  release of Osmidoff.  Dougherty then submitted this claim to her own carrier AMCO.

9                      II APPLICABLE LAW

10      California's uninsured motorist  statute has contained the fault principle

11  from its inception. Fault on the part of the uninsured or underinsured motorist is a

12  prerequisite to the insured's recovery on the policy. The insurer is not required to cover

13

14  all losses but only losses resulting from bodily injury that the insured "shall be legally

15  entitled to recover as damages…from the owner or operator of the uninsured motor

16  vehicle."  Insurance Code section 11580.2(a)(1).   In addition to showing that the

17  uninsured motorist was not at fault, the insurer has all tort defenses available to it to

18  defeat an uninsured motorist claim.  In Sorenson v Allied  (1980) 112 Cal.App.3d 717,

19  169 Cal. Rptr. 441 the court held that the defense of comparative fault of the insured is

20  available to the insurer.

21      An insured is limited to a maximum recovery of the face amount of the

22  policy less all permissible reductions and credits. Jarrett v Allstate Insurance Co.

23  (1962) 209 Cal.App. 2d 804, 26 Cal Rptr. 231. Insurance Code section 11580.2(e)

24

25  provides  that recoverable damages shall be reduced by amounts paid under the

2

010832

002606 300844

1   automobile medical payments insurance. Claimant Dougherty received $5,000 medical

2   payments coverage under her policy.

### III  DISCUSSION

4       AMCO submits the deposition of Glenn Osmidoff in which Osmidoff stated

5   that he came to a full stop at the stop sign and then proceeded. He testified that he saw

6   claimant's red Porsche in the left turn lane and that she did not have her left turn signal

7   on.

8

9       CVC section 21801(a) provides:

10      "The driver of a vehicle intending to turn to the left...shall yield the right of
    way to all vehicles approaching from the opposite direction which are close enough to
11  constitute a hazard at any time during the turning movement and shall continue to yield
    the right of way to the approaching vehicles until the left turn ...can be made with
12  reasonable safety."

13      The law requires that left turners yield to all vehicles coming from the

14  opposite direction who are close. The law says nothing about who arrives or stops first

15  at the intersection or whether all vehicles are stopped. Clearly the vehicle being driven

16  by Osmidoff was close enough to constitute a hazard for claimant. Claimant admits that

17  she saw Osmidoff's truck at the intersection. Therefore, Osmidoff had the right of way

18  and claimant was required to yield to both trucks before she made her left turn. This

19  remains true even if the white truck yielded to claimant. A left turner must make sure

20  that all lanes of approaching traffic are clear and safe, not just the first one. Osmidoff

21  had no duty to yield to claimant and, obviously, he chose not to do so. Therefore,

22  AMCO submits that this accident was    entirely claimant's fault. The damage to

23  claimant's Porsche was to right rear corner as will be shown by photographs. This

24  damage suggests that she almost made it across both lanes of traffic. However, almost

25

010833

002806300845

1    is not good enough. Claimant should have yielded to all approaching traffic close

2    enough to pose a hazard. Quite simply, she did not do so.

3        AMCO submits that USAA    did not analyze this case correctly in

4    deciding to pay its limit.

5                        **DAMAGES**

6        The photographs show that this was a minor to moderate impact.

7    Claimant was able to get out of her car unassisted and drive her Porsche home and

8    required no medical assistance either that day or during the following week. She

9    actually did not go to see a doctor for a week. According to plaintiff's letter brief,

10   plaintiff incurred medical bills of "over $7,000." of which AMCO has paid $5,000. In

11   answering interrogatories  in  February 2005 claimant said her medical bills totaled

12   $7874.

13

14       Claimant was pregnant in April 2001 and gave birth to a healthy son

15   named Wesley, now age four,  on 12/17/2001. The pregnancy and the unborn child

16   were  unaffected by this accident. Claimant does not claim that her unborn child was

17   harmed in this accident or that the pregnancy became problematic as a result of this

18   accident.  In the months after this accident, claimant continued to perform her work as a

19   self-employed bookkeeper until December 2001 when she sold the business to a friend.

20   This sale was due to the birth of Wesley and his needs.

21

22       Claimant has specifically declined to have surgery on her back or

23   shoulder. Claimant is not claiming any future surgery costs.

24       Claimant had a major auto accident in 1999 when her Chevy Tahoe

25   skidded off the road on ice near Mammoth and hit a tree. After this accident she was

010834

002806 300846

hospitalized for several days and told that she had sustained multiple compression fractures in her lumbar spine and a broken sternum. Actually records show that she sustained a fracture of the T-12 vertebrae and a torn meniscus in her knee.

## CONCLUSION

AMCO submits that because claimant was entirely at fault for this accident, she is not entitled to any recovery under her policy with AMCO. If the arbitrator concludes that Glenn Osmidoff was also partially at fault, AMCO submits that claimant has already been fully compensated by USAA's $30,000 and AMCO's $5,000 in medical payments coverage. In either event, AMCO respectfully requests an award in its favor and that claimant take nothing.

Dated: January 26, 2006          JAMES & McCLELLAN

By _H. Renton Rolph_____
H. Renton Rolph
Attorney for Respondent
AMCO Insurance Company

5

010835

**EXHIBIT S**

Sent By: ADR Services;                    415 772 0960;        Mar-1-06  1:25PM;        Page 4/11

Hon. Alfred G. Chiantelli
ADR Services, Inc.
50 Fremont Street, Suite 2110
San Francisco, California 94105
(415) 772-0900
(415) 772-0960 (Fax)

002843700201

IN RE: ARBITRATION BETWEEN

| | |
|---|---|
| CHRISTINE DOUGHERTY | ADRS Case No. 05-4159-AGC |
| Claimant, | ARBITRATION AWARD |
| vs. | |
| AMCO INSURANCE COMPANY | |
| Respondent. | |

The above entitled matter came on regularly for an Arbitration hearing on Thursday, January 26, 2006, before Hon. Alfred G. Chiantelli, Judge of the Superior Court, Retired, the Arbitrator duly designated by the parties. Stephen M. Murphy of the Law Offices of Stephen M. Murphy appeared as counsel for Claimant and H. Renton Rolph of James & McClellan appeared as counsel for Respondent. The matter was presented and submitted for decision.

This is an underinsured motorist claim which involves the following issues: (1) whether the insured is entitled to recover damages under the underinsured motorist's policy and (2) if so, the amount of damages.

Claimant filed a lawsuit against Glenn Osmidoff, the driver of a green truck involved in the April 17, 2001 vehicular collision with Claimant's car. This third party case was settled for the limits of Mr. Osmidoff's USAA insurance policy, $30,000. There is no issue of underinsurance coverage in this case. This underinsurance claim is pursuant to the AMCO Insurance Company Policy issued to claimant.

-1-

010838

002843700202

1   The limits of Claimant's underinsurance policy limits are unknown because Claimant's
2   motion in limine for exclusion of any evidence or, mention of the limits of Claimant's
3   underinsured motorist policy was granted. Weinberg v. Safeco (2004) 114 Cal.App.4th 1075.

4   The Arbitrator having considered the evidence and arguments of counsel makes the
5   following Arbitration Award:

6   The Claimant has met her burden of proving her case against Respondent by a
7   preponderance of evidence and has proven damages in the amount of $107,874, however,
8   pursuant to the terms of Claimant's policy, Respondent is entitled to a $35,000 offset which is
9   the result of the $30,000 USAA settlement of Claimant's underlying third party lawsuit and
    Respondent's $5,000 payment under medical payment coverage.
10

11  **Claimant is awarded $72,874 in total damages.** Claimant had $7,874 in medical bills.
12  There is no claim for loss of earnings. She is entitled to general damages which is reasonable
13  compensation for the pain and suffering she endured from the accident through the birth of her
    child, her recuperation period and present permanent condition.

14  This case arises out of a two vehicle accident. On April 17, 2001, at approximately 4:00
15  p.m., Claimant was driving a 1969 Porche and came to a complete stop at a posted stop sign at
16  the intersection of San Marin Drive and Simmons Lane in Novato, California. Claimant entered
17  the left turn lane in order to turn left from westbound San Marin Drive onto southbound
18  Simmons Lane. Facing Claimant on eastbound San Marin Drive side by side in two lanes were
19  two pickup trucks. A white truck was in the number one eastbound lane and a green truck in the
20  eastbound number two lane was driven by Mr. Glen Osmidoff. Claimant believed she was at the
21  stop sign before the two trucks stopped at their stop sign. Without using an appropriate left turn
22  signal, Claimant made her left turn onto Simmons Lane. The white truck stopped for her but the
23  green truck continued through the intersection. Claimant yelled out her window, honked her horn
24  and had almost completed her left turn when the right rear portion of her vehicle was struck. The
25  vehicle sustained $7,000 in property damages.

-2-

010839

Sent By: ADR Services;                415 772 0980;          Mar-1-06  1:24PM;          Page 6/11

002843700203

1    Photographs show that this was a minor to moderate impact. Claimant was able to get out

2  of her car unassisted and was able to drive her vehicle home. She did not see a doctor for a week.

3  Her pregnancy and her unborn child was unaffected by this accident and gave birth to a healthy

4  son on December 17, 2001. Claimant continued to work as a self-employed bookkeeper until

5  December, 2001 when she sold the business. Claimant has declined to have surgery on her back

6  or shoulder and this award was issued with the opinion that the claimant will not have any

7  related surgery in the near future.

8    During her first appointment on April 24, 2001 with Dr. Ernest Sponzilli, a pain

9  management and physical medicine specialist, at Mt. Tam Orthopedics, she complained of neck,

10  shoulder and upper back pain. Dr. Sponzilli held off taking any x-rays until claimant could find

11  out if she was pregnant. The initial diagnosis was a possible cervical disk herniation, cervical

12  soft tissue strain and rotator cuff strain. Physical therapy and acupuncture offered little relief. On

13  February 15, 2002, x-rays were taken and MRIs were conducted on March 1, 2002. The cervical

14  MRI showed a disc protrusion at C5-C6 effacing the ventral cord. At C6-C7 there is a mild

15  protrusion "centrally with mild central canal stenosis without neural foraminal stenosis.

16    The right shoulder showed "partial under surface articular surface tear of the

17  supraspiratus adjacent to the area of erosion in the greater tuberosity." He also found mild

18  aeromioclavicular joint arthrosis with scleroses and mild glenhumeral joint effusion. Dr.

19  Sponzilli prescribed additional physical therapy as well as anti-inflammatory medications.

20  Surgery was not an option for Claimant who had just given birth a few months earlier.

21    Claimant followed up with physical therapy and acupuncture (12 treatments by RN, Paul

22  Aboud of Mt. Tam Orthapedics). Claimant only received temporary relief from such treatments.

23  A consultation with orthopedist, Dr. Mark Lawler, resulted in Claimant's rejection of

24  recommended shoulder surgery. Her last visit with Dr. Lawler was in March 2004.

25    As a result of coaching and playing baseball, Claimant had experienced pain in the right

     shoulder ten years before the accident. This injury resolved itself before the April 2001 accident.

-3-

010840

Sent By: ADR Services;                    415 772 0960;            Mar-1-06  1.24m;           Page 3/11

002843700204

1   She was able to resume coaching baseball and engage in her regular sports activities. Claimant

2   also fractured her lower spine in an automobile accident in April of 1999, however, the fracture

3   was resolved by August of 1999. This accident did not involve any injuries to her neck or right

4   shoulder.

5        Her symptoms continue to have restrictions on her usual activities. Dr. Sponzilli opined

6   that Claimant's neck and shoulder injuries were caused by the April 2001 automobile accident.

7   There are no medical records to indicate that Claimant had been receiving treatment of either

8   condition prior to the accident. Claimant was not having neck or right shoulder problems before

9   this accident and started complaining of these problems right after this accident.

10       The March 1, 2002 MRI scan was done at Marin Magnetic Imaging and Dr. David Stoller

11  interpreted the study and found as to the right shoulder a tear of the supraspinatus tendon. The

12  report of the cervical spine showed a C5-C6, C6-C7 disk protrusions which were mild. These

13  changes Dr. Sponzilli testified would not have been seen in a person of Claimant's age. So these

14  injuries would not be age-related. Claimant was 42 years of age at the time the MRI was taken.

15       Although Claimant's active life (child care, athletics, gardening, etc.) has been reduced,

16  she has undergone some moderate improvement as evidenced by the acupuncture notes and Dr.

17  Sponzelli's deposition testimony. Faced with the option of a shoulder arthoscopy or for the

18  cervical spine a facet joint block followed by a rhizotomy, Claimant has chosen to live with the

19  pain.

20       As to liability, there is ample evidence that Glen Osmidoff was negligent when he struck

21  the rear portion of Claimant's vehicle. To find otherwise is to ignore that (1) Claimant had

22  almost completed her left turn when her car was struck (2) the white truck acknowledged

23  Claimant's right of way, (3) an independent witness, Darrell Wayne Anderson, believed the

24  driver of the green truck was looking to his left as though talking to the driver in the white truck

25  and felt it was the driver of the green truck that caused the collision by failing to yield the right

    of way to the red porche (4) Glen Osmidoff, the driver of the green truck, did not contest the

-4-

010841

Sent By: ADH Services;                    415 772 0960;          Mar-1-06  1:25rm;      Page 2/3

002843700205

1   citation for violating California's Vehicle Code 21800 a -- failure to yield to a vehicle close

2   enough to constitute a hazard while entering a roadway and (5) even if Claimant did not give an

3   appropriate signal as required by vehicle code section 22107, it is doubtful that Glen Osmidoff

4   would have seen the signal. This accident would have happened even if the left hand signal was

5   given by the Claimant. He acknowledges what the independent witness saw. He was

6   momentarily distracted by recognizing "Dean" in the truck next to him, waved at him at some

7   point and he was saying something or yelling something out at his open window, (6) Whether a

8   vehicle will be affected by a driver turning left and whether, in the exercise of ordinary care, a

9   driver should have given the appropriate signal to indicate an intention to make the left turn is a

10   question of fact for a fact finder. (1943) McDevitt v. Rogers 58 Cal.App.2d. 307; Day v. General

11   Petroleum (1939) 32 Cal.App.2d. 220. Because Claimant was in a left turn only lane there is no

12   question of her intention to turn left. From all the facts there is no evidence that Claimant entered

13   the intersection from the wrong side of the highway, "cut a corner", traveled at an excessive

14   speed or failed to ascertain that all lanes were free of approaching vehicles.

15       A driver of a left-turning vehicle may not be declared contributorily negligent as a matter

16   of law in assuming that he or she could make the left turn before the other automobile reached

17   the intersection. McCoulou v. Vijar (1931) 212 Cal.49. It does not appear from all the factual

18   evidence that the green and white truck presented a hazard to the Claimant so that in turning left

19   she had to yield the right of way to oncoming traffic.

20       This award is in full settlement of all claims submitted to this arbitration.

21   Dated March 1, 2006

22   *Alfred G. Chiantelli* (signature)

23   Hon. Alfred G. Chiantelli (Ret)

24   ARBITRATOR

25

-5--

010842