**LEWIS BRISBOIS BISGAARD & SMITH LLP**
Julian J. Pardini, Esq. SB# 133878
Stephen J. Liberatore, Esq. SB# 129772
One Sansome Street, Suite 1400
San Francisco, California 94104
Telephone: (415) 362-2580
Facsimile: (415) 434-0882

Attorneys for Defendant
AMCO INSURANCE COMPANY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTINE DOUGHERTY,<br><br>Plaintiff,<br><br>v.<br><br>AMCO INSURANCE COMPANY, and DOES ONE through TWENTY, Inclusive,<br><br>Defendant. | CASE NO. C 07-01140 MHP<br><br>**NOTICE OF MOTION AND MOTION OF DEFENDANT AMCO INSURANCE COMPANY FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date: April 28, 2008<br>Time: 2:00 p.m.<br>Dept.: 15 — Hon. Marilyn Hall Patel |

LEWIS BRISBOIS BISGAARD & SMITH LLP
ONE SANSOME STREET, SUITE 1400
SAN FRANCISCO, CALIFORNIA 94104
TELEPHONE (415) 362-2580

# TABLE OF CONTENTS

**PAGE**

TABLE OF CONTENTS . . . . . . . . . . i

TABLE OF AUTHORITIES . . . . . . . . . . ii

MOTION AND NOTICE OF MOTION . . . . . . . . . . 1

MEMORANDUM OF POINTS AND AUTHORITIES . . . . . . . . . . 1

I. FACTUAL BACKGROUND . . . . . . . . . . 1

II. THE AMCO POLICY . . . . . . . . . . 4

III. ARGUMENT . . . . . . . . . . 8

A. Summary of Argument . . . . . . . . . . 8

B. AMCO Did Not Breach the Insurance Contract . . . . . . . . . . 8

1. Introduction . . . . . . . . . . 8

2. *Love v. Fire Insurance Exchange* . . . . . . . . . . 8

3. No Debt Was Clearly Owed to Plaintiff . . . . . . . . . . 9

4. No Perceived Delay Attributable to AMCO Resulted in a Breach of the Insurance Contract . . . . . . . . . . 12

5. That Plaintiff Demanded Arbitration Does Not Mean AMCO Breached the Insurance Contract . . . . . . . . . . 13

C. Absent a Breach of the Insurance Contract, AMCO Did Not Act in "Bad Faith" . . . . . . . . . . 14

D. Plaintiff Is Not Entitled to an Award of Punitive Damages . . . . . . . . . . 15

1. Plaintiff Cannot Prove Oppression, Fraud, or Malice, Intent to Harm Or Despicable Conduct . . . . . . . . . . 15

2. Plaintiff's Evidence Must Be "Clear and Convincing" . . . . . . . . . . 16

3. Punitive Damages May Be Recovered Against an Insurer Only For Conduct That Goes Beyond "Bad Faith" . . . . . . . . . . 16

4. Plaintiffs Cannot Offer Clear and Convincing Evidence to Show Oppression, Fraud Or Malice By AMCO . . . . . . . . . . 17

IV. CONCLUSION . . . . . . . . . . 18

LEWIS BRISBOIS BISGAARD & SMITH LLP
ONE SANSOME STREET, SUITE 1400
SAN FRANCISCO, CALIFORNIA 94104
TELEPHONE (415) 362-2580

4832-3017-7282.1

i

NOTICE OF MOTION & MOTION OF DEFENDANT AMCO INS. CO. FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES - CASE NO. 07-01140 MHP

# TABLE OF AUTHORITIES

**CASE LAW** **PAGE**

*Basich v. Allstate Ins. Co.*
87 Cal.App.4th 1112 (2001) . . . . . . . . . . 16-17

*Chrisman v. Sup. Ct. (Gen. Acc. Ins. Co.)*
191 Cal.App.3d 1465 (1987) . . . . . . . . . . 13-14

*College Hosp., Inc. v. Superior Court*
8 Cal.4th 704 (1994) . . . . . . . . . . 16

*Flyer's Body Shop v. Ticor Title Ins. Co.*
185 Cal.App.3d 1149 (1986) . . . . . . . . . . 15

*Hartford Fire Ins. Co. v. Macri*
4 Cal.4th 318 (1992) . . . . . . . . . . 14

*In re Angelina P.*
28 Cal.3d 908 (1981) . . . . . . . . . . 16

*Love v. Fire Ins. Exchange*
221 Cal.App.3d 1136 (1990) . . . . . . . . . . 8-9, 14

*McCormick v. Sentinal Life Ins. Co.*
153 Cal.App.3d 1030 (1984) . . . . . . . . . . 12

*Mock v. Michigan Millers Mut. Ins. Co.*
4 Cal.App.4th 306 (1992) . . . . . . . . . . 16

*Shade Foods, Inc. v. Innovative Products Sales & Marketing, Inc.*
78 Cal.App.4th 847 (2000) . . . . . . . . . . 16-17

*Stewart v. Truck Ins. Exchange*
17 Cal.App.4th 468 (1993) . . . . . . . . . . 16-17

*Tomaselli v. Transamerica Ins. Co.*
25 Cal.App.4th 1269 (1994) . . . . . . . . . . 16-17

*Viking Ins. Co. v. State Farm Mut. Auto. Ins. Co.*
17 Cal.App.4th 540 (1993) . . . . . . . . . . 13

*Waller v. Truck Ins. Exchange*
11 Cal.4th 1 (1995) . . . . . . . . . . 9

**STATUTES**

California Civil Code section 3294 . . . . . . . . . . 15

California Insurance Code section 11580.2 . . . . . . . . . . 13

LEWIS BRISBOIS BISGAARD & SMITH LLP
ONE SANSOME STREET, SUITE 1400
SAN FRANCISCO, CALIFORNIA 94104
TELEPHONE (415) 362-2580

LEWIS BRISBOIS BISGAARD & SMITH LLP
ONE SANSOME STREET, SUITE 1400
SAN FRANCISCO, CALIFORNIA 94104
TELEPHONE (415) 362-2580

**MOTION AND NOTICE OF MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on _________, 2008, at 2:00 p.m., or as soon thereafter as the matter may be heard in Department 15 of the above-entitled Court, located at the United States Courthouse, 450 Golden Gate Avenue, San Francisco, California, before the Honorable Marilyn Hall Patel, Judge, presiding, Defendant AMCO INSURANCE COMPANY (hereinafter "AMCO") will and hereby does move for summary judgment or, in the alternative, for partial summary judgment.

This motion is brought on the ground that there is no triable issue of material fact and, based on the undisputed facts, AMCO is entitled to judgment as a matter of law. Alternatively, this motion is brought on the ground that there is no triable issue of material fact as to the prayer for punitive damages of Plaintiff CHRISTINE DOUGHERTY ("Plaintiff"), and therefore, AMCO is entitled to an order of this Court that Plaintiff cannot recover as against AMCO with respect thereto.

This motion is based on this notice of motion, the following memorandum of points and authorities, the declarations of Jeffrey Mangone, H. Renton Rolph, Jr., Darbie Hoffman, Julian J. Pardini, and exhibits attached to each, including the depositions of Plaintiff Christine Dougherty and AMCO's Jeff Mangone, AMCO's Request for Judicial Notice, the Court's entire file concerning this matter, and on such further evidence as may be presented at the hearing on the motion.

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. FACTUAL BACKGROUND

On April 17, 2001, Plaintiff was injured in an automobile accident. (Declaration of Pardini, ¶4, Ex. V (Deposition of Plaintiff Christine Dougherty) at 12:11-14.) Plaintiff sought and obtained medical treatment and incurred $7,874 in medical expenses. (Request for Judicial Notice ("RFJN"), Ex. U (Complaint).) AMCO, which had issued to Plaintiff an automobile insurance policy (Decl. of Hoffman, ¶2, Ex. T), paid medical bills submitted by Plaintiff pursuant to the med-pay provisions of the policy. (Decl. of Mangone, ¶3.)

On April 16, 2002, Plaintiff filed suit against the other driver involved in the accident. (Decl. of Mangone, at ¶4; see also Ex. V, at 12:15-18.) In November 2002, Plaintiff demanded $30,000, the other driver's policy limits, in settlement. This demand was met and the case settled for that amount. (Decl. of Mangone, ¶5, Ex. B; see also Ex. V, at 31:6-12.)

On January 8, 2003, Plaintiff's counsel advised AMCO that she wished to file an underinsured motorist claim, and AMCO opened a file.[1/] (Decl. of Mangone, ¶6.) AMCO assigned Plaintiff's claim to Jeffrey Mangone. (Decl. of Mangone, ¶2.) By letter dated February 4, 2003, Plaintiff's counsel, Stephen Murphy, sent to Mr. Mangone various documents in support of Plaintiff's underinsured motorist claim. (Decl. of Pardini, ¶¶5, 6, Ex. W (Deposition of Mr. Mangone), at 79:1-22, and Ex. X.) On February 20, 2003, Mr. Mangone wrote to Mr. Murphy to acknowledge receipt of the information Mr. Murphy had sent and to request additional information from Mr. Murphy regarding whether Plaintiff was still receiving treatment for her injuries and whether Plaintiff had yet undergone surgery. (Ex. W, at 80:1-16; see also Decl. of Pardini, ¶7, Ex. Y.) Mr. Mangone renewed his request for additional information by writing letters to Mr. Murphy dated March 20, May 19, and June 26, 2003. (Decl. of Pardini, ¶¶8-10, Exs. Z, AA, and BB.)

By letter dated July 9, 2003, Mr. Murphy demanded that AMCO pay Ms. Dougherty $45,000, in addition to the $30,000 she had already received in the settlement she reached with the other driver and the med-pay benefits paid by AMCO; Mr. Murphy included with the letter various documents in ostensible support of Plaintiff's claim. (Decl. of Mangone, ¶7, Ex. C; see also Ex. W at 81:19–82:1.) On July 29, 2003, Mr. Mangone wrote to Mr. Murphy, acknowledged receipt of Plaintiff's demand and the supporting materials, and advised that if additional information was necessary, he (Mr. Mangone) would contact Mr. Murphy to specifically request that information. (Ex. W, at 86:14–97:24; see also Ex. CC.)

On August 22, 2003, Mr. Mangone again wrote to Mr. Murphy to advise that he had

[1/] Plaintiff settled with the other driver's insurer for damage to her car. Hence, in her lawsuit against the other driver, she did not allege property damage. Also, property damage to her car was not included in the underinsured motorist claim she filed with AMCO.

LEWIS BRISBOIS BISGAARD & SMITH LLP
ONE SANSOME STREET, SUITE 1400
SAN FRANCISCO, CALIFORNIA 94104
TELEPHONE (415) 362-2580

completed the review of the materials he had sent, but needed additional information to complete his evaluation of the claim, particularly about Plaintiff's wage loss claim and future medical care. (Ex. D; see also Ex. W at 109:10–115:6.) On August 28, 2003, Mr. Murphy spoke by telephone with Mr. Mangone, advising that Plaintiff was not making a wage loss claim and that she had chosen not to have surgery to address certain injuries allegedly sustained in the auto accident. (Decl. of Mangone, ¶9.) Mr. Mangone asked whether Plaintiff's physicians believed that surgery was a medical necessity (i.e., that it was "inevitable," regardless of whether Plaintiff had yet opted to have it), Mr. Murphy stated that he would question Plaintiff's physicians and report back. (Decl. of Mangone, ¶9; see also Ex. W at 109:10–115:6.)

Mr. Mangone did not hear further from Mr. Murphy and so wrote to him on October 29, 2003 to renew his request for additional information. (Decl. of Mangone, ¶10, Ex. E.) Still hearing nothing further, Mr. Mangone wrote again to Mr. Murphy on November 26, 2003, and advised that based on the evaluation of the information submitted in support of Plaintiff's demand, AMCO did not believe that underinsured motorist coverage benefits were due under the Policy. Mr. Mangone again renewed his request for additional information from Plaintiff's physician. (Decl. of Mangone, ¶11, Ex. F.) Mr. Murphy did not respond to that letter. (Decl. of Mangone, ¶13.)

Over the next six months, Mr. Mangone wrote eight additional letters to Mr. Murphy, on December 13 and December 25, 2003, and January 15, February 4, March 29, April 15, May 6 and June 11, 2004, each of which sought the requested information regarding Plaintiff's physicians' assessment of whether surgery was a medical necessity, and none of which received the courtesy of a response from Mr. Murphy. (Decl. of Mangone, ¶12, Exs. G, H, I, J, K, L, M, and N.)[2]

Mr. Mangone still had not received any further information from Mr. Murphy when, on September 28, 2004, he wrote to Mr. Murphy to advise that AMCO was closing its file on

---

[2] At her deposition, Plaintiff was asked about each of the letters Mr. Mangone sent to her counsel, Mr. Murphy. (See Exs. E through N.) Plaintiff did not recall seeing any of the letters and did not know whether her counsel had responded to any of them. (See Ex. V., at 87:1–93:19.)

LEWIS BRISBOIS BISGAARD & SMITH LLP
ONE SANSOME STREET, SUITE 1400
SAN FRANCISCO, CALIFORNIA 94104
TELEPHONE (415) 362-2580

Plaintiff's underinsured motorist claim. (Decl. of Mangone, ¶13, Ex. O.) This letter, the *11th* sent by Mr. Mangone over the previous 11 months, triggered a response by Mr. Murphy. By letter dated November 4, 2004, Mr. Murphy advised AMCO that Plaintiff would exercise her right pursuant to the Policy's provisions to have her underinsured motorist claim submitted to binding arbitration. (Decl. of Mangone, ¶14, Ex. P.)

The parties conducted discovery and in early October 2005 agreed to have Alfred Chiantelli, Judge (ret.), act as arbitrator. (Decl. of Rolph, ¶¶3-4.) The arbitration hearing took place on January 26, 2006. (Decl. of Rolph, ¶4.) At the arbitration, Plaintiff's counsel argued that her general damages were worth between $125,000 and $175,000 and requested an award in that range (Decl. of Rolph, ¶5, Ex. Q); AMCO took the position that Plaintiff had been fully compensated by the $30,000 settlement with the other driver and AMCO's payment of med-pay benefits, and should take nothing additional by way of her underinsured motorist claim (Decl. of Rolph, ¶6).

On March 1, 2006, Judge Chiantelli issued his decision, awarding Plaintiff $107,874 (Decl. of Rolph, ¶7), which equaled the underinsured motorist coverage limit of Plaintiff's AMCO policy ($100,000), plus the total amount of her claimed medical costs ($7,874). On March 29, AMCO issued payment to Plaintiff in the amount of $72,874 (the arbitration award less the $30,000 Plaintiff received in settlement with the other driver and the med-pay limits of the AMCO policy.) (Decl. of Rolph, ¶8.)

## II. THE AMCO POLICY

The AMCO policy ("the Policy") listed as named insureds "Christine D. Rayburn[3/] and Malcolm W. Rayburn, Jr." (Decl. of Hoffman, ¶2, Ex. T (the AMCO policy), at p. 020017.) In pertinent part, the Policy provided as follows:

/ / /

/ / /

/ / /

---

3/ It is undisputed that named insured "Christine D. Rayburn" is Plaintiff Christine Dougherty.

LEWIS BRISBOIS BISGAARD & SMITH LLP
ONE SANSOME STREET, SUITE 1400
SAN FRANCISCO, CALIFORNIA 94104
TELEPHONE (415) 362-2580

LEWIS BRISBOIS BISGAARD & SMITH LLP
ONE SANSOME STREET, SUITE 1400
SAN FRANCISCO, CALIFORNIA 94104
TELEPHONE (415) 362-2580

[Ex. T, at p. 020020]

**PERSONAL AUTO POLICY**

**AGREEMENT**

In return for payment of the premium and subject to all the terms of this policy, we agree with you as follows:

. . .

[Ex. T, at p. 020023]

**PART B – MEDICAL PAYMENT COVERAGE**

**INSURING AGREEMENT**

A. We will pay reasonable expenses incurred for necessary medical and funeral services because of "bodily injury:"

1. Caused by accident; and

2. Sustained by an "insured

B. "Insured" as used in this Part means:

1. You . . .

. . .

[Ex. T, at p. 020025]

**PART C – UNINSURED MOTORISTS COVERAGE[4/]**

. . .

[Ex. T, at pp. 020047]

**UNINSURED MOTORISTS COVERAGE — CALIFORNIA REDUCED LIMITS APPLY FOR "BODILY INJURY" TO ANY PERSON, OTHER THAN YOU OR ANY "FAMILY MEMBER"**

**I. PART C — UNINSURED MOTORISTS COVERAGE**

Part C is replaced by the following:

**INSURING AGREEMENT**

A. We will pay compensatory damages which an "insured" is legally entitled to recover from the owner or operated of an "uninsured motor vehicle" because of:

---

4/ This language was replaced by the endorsement that is quoted immediately hereafter.

1. "Bodily injury" sustained by an "insured" and caused by an accident; . . ..

The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the "uninsured motor vehicle". . . .

B. "Insured" as used in this endorsement means:

1. You or any "family member".

. . .

D. "Uninsured motor vehicle" means a land motor vehicle or trailer of any type:

. . .

2. Which, with respect to damages for "bodily injury" only, is an underinsured motor vehicle. An underinsured motor vehicle is one which a liability bond or policy applies at the time of the accident but its limit for liability is less than the limit of liability for this coverage. . . .

. . .

[Ex. T, at p. 020049-020050]

**LIMIT OF LIABILITY**

**The limits of liability for you and "family members" and persons designated in the Schedule are different than for other persons.**

**Subject to the limit of liability as determined by paragraphs A and B below, the limit of Bodily Injury Liability shown in the Declarations for this coverage for each accident is the maximum amount we will pay to all "insureds" for all damages for "bodily injury" resulting from any one accident.**

A. Limit of Liability for Bodily Injury To You and "Family Members" and Persons Designated in the Schedule

The limit of Bodily Injury Liability show in the Declarations for this coverage for each person is the maximum amount we will pay for "bodily injury" sustained by any one person in any one accident, when that "bodily injury" is sustained by you or any "family member" or any person designated in the Schedule. That maximum amount includes any claim of other persons arising out of that "bodily injury."

. . .

E. The limit of liability shall be reduced by all sums:

1. Paid because of the "bodily injury" or "property

LEWIS BRISBOIS BISGAARD & SMITH LLP
ONE SANSOME STREET, SUITE 1400
SAN FRANCISCO, CALIFORNIA 94104
TELEPHONE (415) 362-2580

4832-3017-7282.1 6
NOTICE OF MOTION & MOTION OF DEFENDANT AMCO INS. CO. FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES - CASE NO. 07-01140 MHP

damage" by or on behalf of persons or organizations who may be legally responsible. This includes all sums paid under Part A of the policy; . . .

. . .

F. We will not make a duplicate payment under this coverage for the same element of loss that has been paid by or on behalf of persons or organizations who may be legally responsible. This includes all sums paid under Part A of the policy.

G. We will not make a duplicate payment under this coverage for the same element of loss that has been paid under any automobile medical payments coverage. This includes all sums paid under Part B of the policy.

. . .

[Ex. T, at p. 020051]

**ARBITRATION**

A. If we and an "insured" do not agree:

1. Whether that person is legally entitled to recover damages under this coverage; or

2. As to the amount of damages;

then the matter will be settled by arbitration. Such arbitration may be initiated by a written demand for arbitration made by either party. The arbitration shall be conducted by a single neutral arbitrator. . . .

B. Each party will:

1. Pay the expenses it occurs; and

2. Bear the expenses of the arbitrator equally.

C. Any decision of the arbitrator will be binding as to:

1. Whether the "insured" is legally entitled to recover damages; and

2. The amount of damages.

The Policy provided uninsured (and underinsured) motorist coverage limits of $100,000 per person and $300,000 per accident. The Policy also provided $5,000 in med-pay benefits per person per accident. (Ex. T, at p. 020017.)

///

LEWIS BRISBOIS BISGAARD & SMITH LLP
ONE SANSOME STREET, SUITE 1400
SAN FRANCISCO, CALIFORNIA 94104
TELEPHONE (415) 362-2580

LEWIS BRISBOIS BISGAARD & SMITH LLP
ONE SANSOME STREET, SUITE 1400
SAN FRANCISCO, CALIFORNIA 94104
TELEPHONE (415) 362-2580

## III. ARGUMENT

### A. Summary of Argument

AMCO moves for summary judgment on the ground that it did not breach any provision of the insurance contract with Plaintiff. AMCO further moves for summary judgment on the ground that, absent a breach of the insurance contract, as a matter of law it could not have breached the implied covenant of good faith and fair dealing (i.e., acted in "bad faith").

Alternatively, AMCO moves for partial summary judgment that Plaintiff is not entitled to recover punitive damages.

### B. AMCO Did Not Breach the Insurance Contract

#### 1. Introduction

AMCO contends that the undisputed facts establish, as a matter of law, that it did not breach the insurance contract, in that:

- AMCO did not deny that there was coverage for Plaintiff's underinsured motorist claim;
- AMCO did not withhold underinsured motorist coverage benefits that were due;
- AMCO did not refuse to arbitrate Plaintiff's underinsured motorist claim and did not refuse to select an arbitrator; and
- AMCO did not refuse to pay underinsured motorist benefits awarded to Plaintiff by the arbitrator.

#### 2. *Love v. Fire Insurance Exchange*

In *Love v. Fire Insurance Exchange*, 221 Cal.App.3d 1136 (1990), the California Court of Appeal for the Fourth Appellate District was presented with the principal question whether the insureds' causes of action arising from a denial of a property claim were time-barred; and, if the court determined that the insureds' causes of action were time-barred, it had to respond further to the insureds' argument that the insurer could nevertheless be successfully sued for bad-faith delay in handling the insureds' attempt to revive the claim seven years after it had been denied.

The *Love* court, in explaining the public policy rationale for the law's recognition of the tort of insurance bad faith, instructed that the question of whether benefits were actually due at a particular point in time was actually a question of whether the evidence would support a finding by

that the existence of the obligation should have been clear to the insurer:

> Because peace of mind and security are the principal benefits for the insured, the courts have imposed special obligations, consonant with these special purposes, seeking to encourage insurers promptly to process and pay claims. . . .
>
> These special duties, at least to the extent breaches thereof give rise to tort liability, find no counterpart in the obligations owed by parties to ordinary commercial contracts. The rationale for the difference in obligations is apparent. If an insurer were free of such special duties and could deny or delay payment of ***clearly owed debts*** with impunity, the insured would be deprived of the precise benefit the contract was designed to secure (i.e., peace of mind) and would suffer the precise harm (i.e., lack of funds in times of crisis) the contract was designed to prevent. [Citation.]

(*Love*, 221 Cal.App.3d at 1148 (emphasis added); approved by the California Supreme Court in *Waller v. Truck Ins. Exchange*, 11 Cal.4th 1, 35 (1995).)

### 3. No Debt Was Clearly Owed to Plaintiff

The undisputed facts establish that:

- On January 8, 2003, Plaintiff's attorney telephoned AMCO to advise that Plaintiff wished to file a claim for underinsured motorist benefits pursuant to her AMCO Personal Auto Policy.
- On January 9, 2003, AMCO opened a file regarding Plaintiff's claim.
- On February 4, 2003, Mr. Murphy sent to Mr. Mangone various documents in support of Plaintiff's underinsured motorist claim.
- On February 20, 2003, Mr. Mangone wrote to Mr. Murphy to acknowledge receipt of the information Mr. Murphy had sent and to request additional information from Mr. Murphy regarding whether Plaintiff was still receiving treatment for her injuries and whether Plaintiff had yet undergone surgery.
- Mr. Mangone renewed his request for additional information by writing letters to Mr. Murphy dated March 20, May 19, and June 26, 2003.
- By letter dated July 9, 2003, Plaintiff's attorney, Mr. Murphy, demanded that AMCO pay Plaintiff $45,000, in addition to the $30,000 she had already received in settlement with the other drive and the med-pay benefits paid to her by AMCO.
- Mr. Murphy included with that letter various documents regarding Plaintiff's medical condition, including the deposition of Plaintiff's treating physician, Dr. Sponzilli, taken in Plaintiff's lawsuit against the other driver.
- Mr. Mangone reviewed the deposition transcript of Dr. Sponzilli, but did not find any information regarding whether Dr. Sponzilli believed surgery was a "medical necessity," meaning that it was inevitable. Had he done so, then, whether or not Plaintiff had actually undergone the required surgery, Mr. Mangone would have

///

LEWIS BRISBOIS BISGAARD & SMITH LLP
ONE SANSOME STREET, SUITE 1400
SAN FRANCISCO, CALIFORNIA 94104
TELEPHONE (415) 362-2580

included surgery in his evaluation of Plaintiff's damages to determine whether she was entitled to underinsured motorist coverage benefits under the Policy.[5/]

- On August 22, 2003, Mr. Mangone wrote to Mr. Murphy to advise that he had completed the review of the materials Mr. Murphy had sent, but needed additional information to complete the evaluation of Plaintiff's claim, particularly with respect to Plaintiff's wage loss claim and future medical care.

- On August 28, 2003, Mr. Murphy and Mr. Mangone spoke by telephone. Mr. Murphy advised that Plaintiff was not making a wage loss claim and that she had chosen not to have surgery to address certain injuries sustained in the auto accident. Mr. Mangone asked whether Plaintiff's physician believed such surgery to be a medical necessity, and Mr. Murphy indicated that he would question Plaintiff's physician regarding that issue report back.

- Mr. Mangone did not hear further from Mr. Murphy and so wrote to him on October 29, 2003, asking whether he (Mr. Mangone) could be of assistance "in obtaining the report for [Plaintiff's physician] concerning the need for surgical intervention . . . ." (Ex. W, at 122:3-9; Decl. of Mangone, ¶10, Ex. E.)

- Mr. Mangone still did not hear further from Mr. Murphy, and so on November 26, 2003, he wrote to Mr. Murphy again to advise that based on its evaluation of the information submitted in support of Plaintiff's demand, AMCO did not believe that benefits were due pursuant to the underinsured motorist coverage of the Policy. Mr. Mangone renewed his earlier request for additional information from Plaintiff's physicians.

- Over the next six months, Mr. Mangone wrote eight additional letters to Mr. Murphy, each of which sought the requested information regarding Ms. Dougherty's physicians' assessment of whether surgery was a medical necessity, on December 13 and December 25, 2003, and January 15, February 4, March 29, April 15, May 6 and June 11, 2004.

- Mr. Murphy did not respond to any of those letters.

- Mr. Mangone still had not received any further information from Mr. Murphy when, on September 28, 2004, he wrote again to Mr. Murphy to advise that AMCO

///

///

---

[5/] At deposition, Mr. Mangone testified: "As far as I knew, she may have opted not to have surgery, but I didn't know whether or not that was a medical necessity, and that was the data I was looking for, as to whether or not the surgery was a medical necessity, but it can be a medical necessity and she can choose not to have the surgery, because that's her choice, so the evaluation would have to include the medical necessity, I guess, part of it. [¶] The surgery is an inevitable, whether she has it now or she's forced to have it eight years from now. It should be included in the evaluation to give the policyholder as much benefit as we possibly can for the client. . . . [¶] It would be one of those surgeries, if it's a medical necessity, she couldn't ignore it forever. Ultimately, eventually, she would have to have it. Say that she decides not to, it's still something, a future expense that she could incur, that she would incur and should be evaluated so she can be compensated for it." (Ex. W, at 111:2– 112:6.)

LEWIS BRISBOIS BISGAARD & SMITH LLP
ONE SANSOME STREET, SUITE 1400
SAN FRANCISCO, CALIFORNIA 94104
TELEPHONE (415) 362-2580

4832-3017-7282.1 10
NOTICE OF MOTION & MOTION OF DEFENDANT AMCO INS. CO. FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES - CASE NO. 07-01140 MHP

was closing its file on Plaintiff's underinsured motorist claim.[6]

- On November 4, 2004, more than 14 months after he last communicated substantively with AMCO regarding Plaintiff's underinsured motorist claim, Mr. Murphy sent a letter to advise Mr. Mangone that Plaintiff was exercising her right pursuant to the Policy's provisions to have her underinsured motorist claim submitted to binding arbitration.
- AMCO thereafter actively participated in discovery leading up to the arbitration, in the selection of an arbitrator, in the scheduling of the arbitration, and in the arbitration itself.
- On January 26, 2006, Plaintiff and AMCO proceeded to binding arbitration before Judge Chiantelli.
- On March 1, 2006, Judge Chiantelli issued his decision, awarding Plaintiff $107,874.
- On March 29, AMCO issued payment to Plaintiff in the amount due, $72,874.

These undisputed facts demonstrate that Plaintiff's attorney had for a period of many months failed to respond to many written requests and invitations by AMCO to present additional information to show that AMCO was under any contractual obligation to pay Plaintiff underinsured motorist coverage benefits in excess of the $35,000 she had already received ($30,000 from the settlement of her personal injury action, and $5,000 paid by AMCO under the Policy as the limit of insurance for medical payments coverage).

AMCO contends that these undisputed facts establish that AMCO did not "clearly" become indebted to Plaintiff for any additional amount of benefits until the statutory and contractual arbitration award in her favor was handed down in March 2006, in which the arbitrator found that the underinsured driver would have been found liable to Ms. Dougherty for $100,000 in general damages, in addition to the comparatively small amount of special medical damages. As the above-referenced undisputed facts show, AMCO promptly paid Plaintiff the amount of the arbitration award, less the amounts she had already received, after that award was handed down.

Therefore, inasmuch as AMCO did not "clearly owe" any debt to Plaintiff before the

---

[6] Asked at deposition why he had not suggested that Plaintiff and AMCO resolve the claim via mediation, Mr. Mangone testified: "[The subject of mediation] [j]ust never came up. I didn't get any contact from you [Mr. Murphy] to discuss any aspect of this case over, well, it was over 12 months; otherwise, I would have discussed mediation. (Ex. W, at 133:21-24.)

LEWIS BRISBOIS BISGAARD & SMITH LLP
ONE SANSOME STREET, SUITE 1400
SAN FRANCISCO, CALIFORNIA 94104
TELEPHONE (415) 362-2580

arbitration award was handed down, and no Policy benefit that was actually due, let alone "clearly owed," had been delayed or withheld before the arbitration award, AMCO did not breach the insurance contract.

**4. No Perceived Delay Attributable to AMCO Resulted in a Breach of the Insurance Contact**

The court in *McCormick v. Sentinel Life Ins. Co.*, 153 Cal.App.3d 1030 (1984), held that the insurer's delay in processing the insured's claim could be considered a breach of the insurance contract. In *McCormick*, plaintiff borrowed money from a credit union to buy a pickup truck and camper. Loan payments were to be made automatically from plaintiff's paycheck. In connection with the loan, plaintiff also purchased a credit disability insurance policy from Sentinel, as security for payment of the loan. The policy provided that in the event plaintiff became totally disabled Sentinel would make the payments on the loan for up to 30 months. Plaintiff later became disabled and submitted a claim to Sentinel for payments on the credit union loan; allegedly as a result of Sentinel's delay in adjusting plaintiff's claim, the pickup truck and camper were repossessed. (*Id.* at 1035, 1037.)

The appellate court reversed the trial court's grant of summary judgment in favor of Sentinel, stating:

> Here, Sentinel failed to conduct any investigation whatsoever. As a consequence of this failure [plaintiff] was exposed to the very risk which he purchased insurance to avoid. He lost his truck and camper because he was disabled and unable to meet the monthly payments. . . . In this case, and indeed we suspect in many cases, a lengthy delay in resolving a claim for insurance benefits will have the identical consequence for the insured as an outright denial of benefits.

(*McCormick*, at 1048, 1050.)

The *McCormick* case has no application here. Rather, here, AMCO did not delay its investigation of Plaintiff's claim; rather, it promptly undertook that investigation, requested information from Plaintiff, considered the information submitted, determined that that information did not justify payment of underinsured motorist coverage benefits, requested additional information, advised Plaintiff's counsel of the additional information necessary, received counsel's assurance that he would obtain and provide such additional information, then repeatedly contacted

LEWIS BRISBOIS BISGAARD & SMITH LLP
ONE SANSOME STREET, SUITE 1400
SAN FRANCISCO, CALIFORNIA 94104
TELEPHONE (415) 362-2580

4832-3017-7282.1
12
NOTICE OF MOTION & MOTION OF DEFENDANT AMCO INS. CO. FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES - CASE NO. 07-01140 MHP

counsel to renew its request for that information, which Plaintiff's counsel never did provide. Indeed, any delay in the resolution of Plaintiff's claim is the direct result of her own counsel's failure to do what he told AMCO he would do— obtain the requested information from Plaintiff's physician and advise AMCO of same.[7/]

Therefore, no delay attributable to AMCO resulted in any denial of Policy benefits to Plaintiff.

**5. That Plaintiff Demanded Arbitration Does Not Mean AMCO Breached the Insurance Contract**

In California, automobile insurance policies must provide coverage for insureds where the other driver has liability insurance, but with limits lower than the insured's own underinsured motorist coverage limits. (Cal. Ins. Code §11580.2(p).) This permits an insured to recover from her own insurer the difference between whatever amount is available from the negligent driver's liability insurance and the insured's own underinsured motorist coverage limits. "In short, the fundamental purpose of [Insurance Code] section 11580.2 is to provide the insured with the same insurance protections he would have enjoyed had the tortfeasor carried liability limits equal to [the] insured's underinsured motorist limits." (*Viking Ins. Co. v. State Farm Mut. Auto. Ins. Co.*, 17 Cal.App.4th 540, 548 (1993).)

Further, Insurance Code section 11580.2(f) requires that the insured and insurer submit to binding arbitration as to whether the insured is entitled to recover benefits under the policy *and* the amount of benefits to which the insured may be entitled. (See *Chrisman v. Sup. Ct.* (*Gen. Acc. Ins.*

---

[7/] AMCO anticipates that Plaintiff will argue that AMCO should have demanded that she submit to an independent medical examination if it needed additional information about her medical condition.

Asked at deposition why he had not required Plaintiff to submit to an independent medical examination, Mr. Mangone testified: "Independent medical examinations [are] intrusive, [] time consuming [and] stressful. [Plaintiff had] already been through all that. She's already had her stress, she's already had her inconvenience and so forth. No need to be poked and prodded when all [AMCO] needed was a simple note from Dr. Sponzilli explaining whether [] surgery was a medical necessity. [¶] I figured that would be a lot easier than sending her through an independent medical examination, and it was just a note that I was asking for." (Ex. W, at 114:19–115:6.)

LEWIS BRISBOIS BISGAARD & SMITH LLP
ONE SANSOME STREET, SUITE 1400
SAN FRANCISCO, CALIFORNIA 94104
TELEPHONE (415) 362-2580

4832-3017-7282.1 13
NOTICE OF MOTION & MOTION OF DEFENDANT AMCO INS. CO. FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES - CASE NO. 07-01140 MHP

*Co.*), 191 Cal.App.3d 1465 (1987), cited with approval in *Hartford Fire Ins. Co. v. Macri*, 4 Cal.4th 318, 332 (1992).)

The Policy did not require AMCO to accept Plaintiff's demand without investigation or to agree that Plaintiff's demand was justified after conducting its investigation. Rather, the Policy— and indeed, California law— contemplated the possibility that Plaintiff and AMCO would disagree on the amount, if any, of underinsured motorist benefits to which Plaintiff might be entitled, and provided the mechanism for that dispute to be resolved. Here, AMCO did not deny Plaintiff's demand that her claim be submitted to binding arbitration; rather, AMCO agreed to proceed in that manner, participated in discovery leading up to the arbitration hearing, participated in the selection of Judge Chiantelli as arbitrator, and participated in the arbitration hearing. Moreover, AMCO promptly paid the arbitration award after Judge Chiantelli issued his decision.

AMCO contends that any perceived delay in the resolution of Plaintiff's claim arising from her demand that her claim be submitted to binding arbitration cannot, as a matter of law, be construed to be a denial of Policy benefits or the basis for a breach of contract cause of action.

**C. Absent a Breach of the Insurance Contract, AMCO Did Not Act in "Bad Faith"**

As noted above, the *Love* court had to determine whether, even in the absence of a breach of the insurance contract, the insurer was nevertheless liable to the insureds for breach of the implied covenant of good faith and fair dealing. The court reasoned that the "bad faith" tort could be committed only if an underlying breach of contract was committed, *and* was committed unreasonably and not merely negligently:

> [T]here are at least two separate requirements to establish breach of the implied covenant: (1) benefits due under the policy must have been withheld; and (2) the reason for withholding benefits must have been unreasonable or without proper cause. [Citations.] Here, the undisputed facts show the ***threshold*** requirement is absent. ***No benefits due were withheld or delayed***, because the Loves' claim to benefits was already time barred.

(*Love*, 221 Cal.App.3d 1136, 1151-1152, emphases added.)

Thus, here, if Plaintiff cannot prove that benefits were due under the Policy, then she cannot prove a breach of the implied covenant. (*Love*, at 1151-1152.) Therefore, if judgment is rendered in favor of AMCO on the breach of contract cause of action, it must also be rendered in

LEWIS BRISBOIS BISGAARD & SMITH LLP
ONE SANSOME STREET, SUITE 1400
SAN FRANCISCO, CALIFORNIA 94104
TELEPHONE (415) 362-2580

LEWIS BRISBOIS BISGAARD & SMITH LLP
ONE SANSOME STREET, SUITE 1400
SAN FRANCISCO, CALIFORNIA 94104
TELEPHONE (415) 362-2580

favor of AMCO on the cause of action for breach of the implied covenant. (*Id.*)

As established above, AMCO did not breach the insurance contract: It did not deny underinsured motorist coverage; it accepted Plaintiff's claim; it evaluated Plaintiff's claim; it disagreed with Plaintiff about the value of her claim; it continually and repeatedly sought additional information regarding Plaintiff's medical condition so that it could, as necessary, re-evaluate the value of her claim; it closed its file only after Plaintiff, through her counsel, did not respond at all for nearly 15 months to AMCO's repeated requests and invitations for additional information; it accepted Plaintiff's demand to proceed to arbitration; it actively participated in the arbitration; and it paid the arbitration award.

Hence, inasmuch as AMCO did not breach the contract, it cannot, as a matter of law, be liable for an alleged breach of the implied covenant of good faith and fair dealing.

### D. Plaintiff Is Not Entitled to an Award of Punitive Damages

#### 1. Plaintiff Cannot Prove Oppression, Fraud, or Malice, Intent to Harm Or Despicable Conduct

Even if the Court concludes that triable issues of fact exist with regard to whether AMCO breached the insurance contract, it should grant partial summary judgment as to Plaintiff's prayer for punitive damages.

Plaintiff cannot recover punitive damages unless she proves by clear and convincing evidence either (a) that AMCO had an affirmative intention to harm her, or (b) that AMCO's handling of the claim was "despicable." This follows from the definitions of "oppression," "fraud," and "malice" in California Civil Code section 3294. "Oppression" requires that the defendant's conduct be "despicable." "Fraud" requires proof that the defendant intended to cause injury to the plaintiff. "Malice" may be based on either an intention to injure or upon "despicable" conduct. Further, "[p]unitive damages are proper only when the tortious conduct rises to levels of extreme indifference to the plaintiff's rights, a level which decent citizens should not have to tolerate." (*Flyer's Body Shop v. Ticor Title Ins. Co.*, 185 Cal.App.3d 1149, 1154 (1986), emphasis added.)

To prove an intent to harm, Plaintiff must prove that AMCO committed "an act conceived

in a spirit of mischief or with criminal indifference towards the obligations owed to others." (*Mock v. Michigan Millers Mut. Ins. Co.*, 4 Cal.App.4th 306, 328 (1992).) "Despicable" conduct is conduct which is "so vile, base, contemptible, miserable, wretched, or loathsome that it would be looked down upon and despised by ordinary decent people." (*College Hosp., Inc. v. Superior Court*, 8 Cal.4th 704, 725 (1994) (internal brackets omitted).) In 1987, the Legislature amended Section 3294 to require "despicable" conduct so as to impose a "substantive limitation on punitive damage awards." (*College Hospital, Inc.*, 8 Cal.4th at 725.)

**2. Plaintiff's Evidence Must Be "Clear and Convincing"**

The "clear and convincing evidence" requirement, added by the Legislature in 1987, was also intended as a substantive limitation on punitive damage awards. (*Stewart v. Truck Ins. Exchange*, 17 Cal.App.4th 468, 481-482 and fn. 27 (1993).) When determining the viability of a punitive damages claim on a motion for summary adjudication, the court must view the evidence in light of the "clear and convincing" standard of proof. (*Basich v. Allstate Ins. Co.*, 87 Cal.App.4th 1112, 1121 (2001), emphasis added.) Evidence is "clear and convincing" when it is "'so clear as to leave no substantial doubt'" or "'sufficiently strong to command the unhesitating assent of every reasonable mind.'" (*Shade Foods, Inc. v. Innovative Products Sales & Marketing, Inc.*, 78 Cal.App.4th 847, 891 (2000), quoting *In re Angelina P.*, 28 Cal.3d 908, 919 (1981).)

**3. Punitive Damages May Be Recovered Against an Insurer Only For Conduct That Goes Beyond "Bad Faith"**

In the insurance context, an insured cannot recover punitive damages unless the insurer's conduct goes *beyond* that ordinarily characterized as "bad faith." Accordingly, even if it is determined that an insurer is liable for "bad faith" due to the unreasonable handling of a claim, it does not follow that the insurer is liable for punitive damages. (See *Mock v. Michigan Millers Mut. Ins. Co.*,4 Cal.App.4th at 328.) In reversing a jury award of punitive damages in a first party insurance case, one California Court of Appeal held:

> [T]he actions of [the insurance company] may be found to be negligent (failing to follow up information provided by the insured), overzealous (taking an unnecessary deposition under oath of the insured), legally erroneous (relying on an endorsement which was not shown to have been delivered), and callous (failing to communicate). There was

LEWIS BRISBOIS BISGAARD & SMITH LLP
ONE SANSOME STREET, SUITE 1400
SAN FRANCISCO, CALIFORNIA 94104
TELEPHONE (415) 362-2580

> nothing done, however, which could be described as evil, criminal, recklessly indifferent to the rights of the insured, or with a vexatious intention to injure.

(*Tomaselli v. Transamerica Ins. Co.*, 25 Cal.App.4th at 1288.)

In light of the enhanced burden of proof necessary to recover punitive damages, courts in insurance cases routinely find a failure of proof on punitive damages claims, even where "bad faith" is found to be present. (See *e.g., Basich v. Allstate Ins. Co.*, 87 Cal.App.4th at 1121 (affirming summary judgment); *Shade Foods, Inc. v. Innovative Products Sales & Marketing, Inc.*, 78 Cal.App.4th at 892 (reversing jury award); *Tomaselli v. Transamerica Ins. Co.*, 25 Cal.App.4th at 1288 (1994) (reversing jury award); *Stewart v. Truck Ins. Exchange*, 17 Cal.App.4th at 482-484 (reversing order granting new trial on punitive damages after non-suit).)

LEWIS BRISBOIS BISGAARD & SMITH LLP
ONE SANSOME STREET, SUITE 1400
SAN FRANCISCO, CALIFORNIA 94104
TELEPHONE (415) 362-2580

### 4. Plaintiff Cannot Offer Clear and Convincing Evidence to Show Oppression, Fraud Or Malice By AMCO

This case represents nothing more than a dispute concerning whether Plaintiff had been adequately compensated for her injuries by the amounts she had already received from the settlement she reached in her lawsuit against the other driver in the underlying auto accident and the payments she received under the med-pay provisions of the Policy.

Plaintiff's boilerplate allegations in support of her punitive damage claim are that AMCO "acted without due regard for and in reckless and conscious disregard of the medical, physical, emotional and financial circumstances of and potentially adverse consequences to plaintiff" and that AMCO "pursued this course of despicable conduct intentionally, maliciously, in conscious disregard of the rights of plaintiff, fraudulently, and/or with reckless disregard of the likelihood of causing plaintiff extreme detriment . . . ." (RFJN, Ex. U (Complaint), ¶¶26-27).) She offers no specific facts supporting these conclusory allegations.

Indeed, Plaintiff's allegations are not consistent with the undisputed facts. AMCO agreed that the Policy provided underinsured motorist coverage and AMCO accepted Plaintiff's underinsured motorist claim. Based on its evaluation of Plaintiff's claim, however, AMCO determined that the value of her claim did not exceed the $30,000 she received in settlement of her lawsuit against the other driver and the med-pay benefits she received from AMCO, and therefore

took the position that no "new" money was due to be paid to Plaintiff under the Policy. When Plaintiff disputed its position, AMCO accepted Plaintiff's demand to proceed to arbitration, actively participated in discovery and cooperated in the selection of an arbitrator and the scheduling of the arbitration hearing. AMCO also participated in the arbitration hearing, and, after the arbitrator announced his decision, AMCO paid to Plaintiff the amount due after deducting from the arbitrator's award the monies already paid to Plaintiff in settlement with the other driver and the limits of the med-pay benefits of the AMCO policy. Therefore, AMCO did nothing which could even arguably approach satisfying the standard for punitive damages, and thus Plaintiff is not entitled to an award of punitive damages as a matter of law.

## IV. CONCLUSION

Based on the foregoing, AMCO respectfully requests that the Court grant this motion and enter judgment in favor of AMCO and against Plaintiff.

Alternatively, AMCO respectfully requests that the Court grant AMCO's motion for partial summary judgment and issue an order that Plaintiff is not entitled to recover punitive damages as against AMCO.

Dated: March 19, 2008

Respectfully submitted,

LEWIS BRISBOIS BISGAARD & SMITH LLP

By ______________________
Julian J. Pardini
Stephen J. Liberatore
Attorneys for Defendant
AMCO INSURANCE COMPANY

LEWIS BRISBOIS BISGAARD & SMITH LLP
ONE SANSOME STREET, SUITE 1400
SAN FRANCISCO, CALIFORNIA 94104
TELEPHONE (415) 362-2580