LAW OFFICES OF STEPHEN M. MURPHY
STEPHEN M. MURPHY (SBN # 103768)
JEREMY A. GRAHAM (SBN # 234166)
180 Montgomery Street, Suite 940
San Francisco, CA 94104
Tel:  (415) 986-1338
Fax: (415) 986-1231

LAW OFFICES OF DAVID M. PORTER
DAVID M. PORTER (SBN # 124500)
44 Montgomery Street, Suite 2500
San Francisco, CA 94104
Tel: (415) 982-8600
Fax: (415) 391-7808

Attorneys for Plaintiff
CHRISTINE DOUGHERTY

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTINE DOUGHERTY, <br><br> Plaintiff, <br><br> v. <br><br> AMCO INSURANCE COMPANY and DOES ONE through TWENTY, Inclusive, <br><br> Defendants. <br> _____ | NO. C 07-01140 MHP <br><br> **DECLARATION OF THOMAS J. CORRIDAN IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT** <br><br> Date: April 28, 2008 <br> Time: 2:00 p.m. <br> Judge: Hon. Marilyn Hall Patel <br> Dept.: 15 |

I, THOMAS J. CORRIDAN, do declare under penalty of perjury as follows:

　　1.　　I am over the age of eighteen (18) years and am competent to testify in a court of law.  I have been retained by Christine Dougherty and her attorney, Stephen

---

DECLARATION OF THOMAS J. CORRIDAN IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

1  M. Murphy, as an insurance claims procedures consultant and expert witness. I have
2  been asked to review documents and offer opinions regarding industry standards for
3  insurance claims practices and procedures, as well as regarding the reasonableness
4  of AMCO's handling of Christine Dougherty's Underinsured Motorist claim.

5       2.    I have had over forty-seven years of experience in adjusting
6  underinsured motorist and bodily injury liability claims under automobile policies. This
7  includes approximately thirty years of experience adjusting claims for underinsurance
8  motorist coverage (UIMC) under California auto policies, such as the one at issue in
9  this case.

10       3.    I have attended and conducted seminars on the application of
11  automobile insurance policies to underinsured motorist claims in California. I have not
12  only have adjusted thousands of such claims, but have also taught the standards for
13  evaluation and investigation of these claims in many scenarios. I did so almost daily
14  when I was employed with both State Farm Mutual Insurance Automobile Liability
15  Insurance Company and also while an Executive Director in Claims with United
16  Services Automobile Association (USAA) in its home office and in its Western
17  Regional Office in Sacramento California, as noted in my curriculum vitae, a true and
18  correct copy of which is attached hereto as Exhibit A.

19       4.    As a result of my years of experience, as well as attending insurance
20  industry seminars, reading insurance industry publications, and participating in
21  professional associations, I have become knowledgeable of industry standards that
22  claims supervisors and adjusters should apply in evaluating, administering, and
23  otherwise handling insurance claims, including underinsured motorist claims such as
24  the one at issue in this case. These principles are often referred to in the insurance
25  industry as "best practices." It is these principles that I have applied day-to-day in
26  connection with the claims that I have handled and supervised.

1  During my career, as well as to the present, insurers customarily trained their claims adjusters on relevant case law as well as on the California Fair Claims Practices statute, Insurance Code section 790.03(h), and applicable regulations to ensure that the insurer's claims handling practices were consistent with an insurer's legal duties and obligations to its insureds, including an insurer's duties and obligations under the implied covenant of good faith and fair dealing. I note that AMCO provided a copy of the California Fair Claims Practices statute to its adjusters, including Mr. Mangone.

5. Since retiring from USAA in 1997, I have served as an expert witness and consultant in various settings. I have been approved to testify as an expert in both Federal and State Courts, with appearances in over twenty-five trials. I have provided expert witness services to both plaintiffs and defendants in over two hundred cases, have testified at numerous depositions, and have been accepted in several State and Federal Courts in California as an expert witness on claims handling issues. Many, if not most, of these cases involved issues of liability and punitive damages for breach of the implied covenant of good faith and fair dealing.

6. In this matter, I do not intend to testify on the law, and this declaration does not offer legal opinions. The opinions I have rendered are based upon my understanding of the claims principles involved, the best practices in the industry, and how these principles and best practices should be applied on a day-to-day basis to underinsured motorist claims such as the one at issue in this case. My opinions offered in this Declaration are based on my knowledge, training and experience in handling, reviewing and evaluating bodily injury claims, including those pertaining to Underinsured Motorist claims in California.

7. I have reviewed the following materials in arriving at my opinions:

    a) Defendant's Motion for Summary Judgment; Declaration of Julian Pardini Esq. in Support of AMCO's Motion for Summary Judgment

with Exhibits; Declaration of Darbie Hoffman in Support of AMCO's Motion for Summary Judgment with Exhibits; Declaration of Jeffrey Mangone in Support of AMCO's Motion for Summary Judgment with Exhibits; Declaration of Renton Rolph in Support of AMCO's Motion for Summary Judgment with Exhibits.

  b) AMCO's Colossus Guidelines, Medical Abbreviations, PCRO Colossus Unit Workflow Guidelines, Colossus Hints, Exempt Claim Categories, Impairments and Red Flags, Impairment Evaluations.

  c) AMCO's Request for Judicial Notice in Support of its Motion for Summary Judgment with Exhibits.

  d) Deposition of Ernest H. Sponzilli MD taken November 26, 2002.

  e) Deposition of Jeffrey V. Mangone dated October 8, 2007 with Exhibits.

  f) Claim file electronically generated note entries. Bates Nos. 010082 – 010124.

  g) California Fair Claims Regulations Title 10 Chapter 5; Sub Chapter 7.5

  h) Deposition of Jason Wartach dated 3/4/08 with Exhibits.

  i) Deposition of Michael McKeever dated March 6, 2008 with Exhibits.

  8. My understanding of the basic facts is as follows: This lawsuit had its genesis in an auto accident which occurred on April 17, 2001 in Novato, California. AMCO insured Christine Dougherty, while operating her insured auto, was struck by a vehicle that failed to yield to her right of way. Ms. Dougherty complained of neck and right shoulder symptoms.

The cervical MRI on March 1, 2002 showed "at the level of C5-6, there is a mild right paracentral disc protrusion effacing the ventral cord with mild secondary central canal stenosis without neural foraminal stenosis. At C6-7, there is mild protrusion centrally with mild central canal stenosis without neural foraminal stenosis." The MRI of the right shoulder showed: 1) "partial undersurface articular surface tear of the supraspinatus adjacent to an area of erosion in the greater tuberosity;" 2) "mild acromioclavicular joint arthrosis with sclerosis;" and 3) "mild glenhumeral joint effusion."

As a result of the accident, the liability insurer for the driver of the adverse vehicle, USAA, paid its liability limits of $30,000 in settlement of Ms. Dougherty's injury claims. USAA, as well as AMCO, considered the at-fault party to be the USAA insured with no fault attributable to Ms. Dougherty. Due to the seriousness of her injuries and continued pain and suffering, Ms. Dougherty presented a claim for payment under the Underinsured Motorist provisions of her auto policy in the amount of $45,000. AMCO denied any payment to Ms. Dougherty under her underinsured motorist coverage, maintaining that she was adequately compensated by the $30,000 settlement with the at-fault driver.

9.     Based on my review of the materials identified in Paragraph 7 above, as well as my own training and experience in the insurance industry, I have arrived at several opinions, as set forth below:

a)  Uninsured Motorist and Underinsured Motorist claims presented to insurers under automobile policies in California are first-party claims and, as such, are governed by the insurance industry best practices described above. In handling such claims, an insurance company is required to give equal consideration to the interests of its insured as it gives to its own interests.  Failure to do so violates the best practices and the insurer's duties and obligations under the implied covenant of good faith and

DECLARATION OF THOMAS J. CORRIDAN IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

5

fair dealing.

b) When handling first-party claims, insurers must reasonably investigate, evaluate and offer benefits provided by their policies. The materials I have reviewed clearly show that AMCO failed to perform its required duties and obligations to its insured, Christine Dougherty. Its claims handling practices generally, and specifically as they were applied to Ms. Dougherty's claim, fell below industry and California standards for best practices and fair claim processing.

c) In general, AMCO relied on a Colossus program with flawed input and output. The input was flawed because the program failed to consider certain treatments and conditions, many of which were involved in this claim. For example, Colossus failed to consider acupuncture treatment, deposition testimony, the existence of two protruding cervical discs (rather than only one), and the insured's subjective complaints regarding her shoulder. The output was flawed because the program was tuned to reflect average pre-litigation settlements by AMCO and its parent company and not average jury verdicts, arbitration awards, or post-litigation settlements in the relevant venue. Moreover, AMCO's claims supervisor and adjusters were not properly trained on these flaws and limitations in the Colossus program. As such, AMCO's reliance on Colossus for evaluating such claims violated best practices and was unreasonable since the system was set up to produce unreasonable and biased evaluations.

d) To comply with industry best practices, AMCO was required to make a fair and objective evaluation of its insured's claim. This it did not do. Specifically with regard to Ms. Dougherty's claim, AMCO failed to make a fair and objective evaluation despite being provided adequate information and documentation on the claim by the summer of 2003. From my review of the medical information and documentation provided, I believe a reasonable insurer in AMCO's position, applying best practices,

1  would have recognized that Ms. Dougherty's $45,000 demand was well within the
2  range of acceptable value for her claim and paid the claim. In particular, AMCO had
3  objective findings from MRIs showing two protruding cervical discs impinging on the
4  spinal cord and a torn rotator cuff of the right shoulder. In my opinion Ms. Dougherty's
5  $45,000 demand was at the low end of the value for this claim and AMCO's failure to
6  pay her demand, or even make her a settlement offer, violated its duties to its insured.

7  Consistent with its general policies and procedures for handling both third-party
8  and first-party bodily injury claims, AMCO made an arbitrary and biased evaluation
9  based upon Colossus claims evaluation software.  As utilized by AMCO, the Colossus-
10 based assessment of bodily injury claims, including Ms. Dougherty's claim, was
11 patently inaccurate. In Ms. Dougherty's case Colossus produced a settlement range of
12 less than $35,000, the amount she had already received, including the $5,000 med-
13 pay benefit. This figure should have been recognized by an experienced claims
14 adjuster, such as Jeffrey Mangone, to be unreasonably low. Nevertheless, according
15 to his deposition testimony he was not given any authority to offer an amount above
16 the Colossus range.

17 e) Instead of paying Ms. Dougherty's claim, AMCO sought additional
18 medical documentation that would clarify the necessity of surgical intervention
19 recommended by Ms. Dougherty's treating physician, Dr. Sponzilli, but which she
20 elected not to undergo. In my view, Dr. Sponzilli's deposition adequately addressed the
21 issue of surgery. Nevertheless, AMCO took the position that such additional
22 documentation was the sole basis that would justify any payment under its
23 underinsured motorist coverage. This position under the facts of this claim was
24 patently unreasonable.  AMCO knew that Ms. Dougherty had enduring symptoms of
25 pain and had already undergone prolonged treatment. The information and
26 documentation provided to AMCO by Ms. Dougherty indicated that her claim had

significant value based on her injuries themselves and independent of the need for future surgery.

   f) Thus, AMCO's opinions regarding Ms. Dougherty's claim were unreasonable. However, if AMCO thought its opinions were correct, it should have conducted a prompt, unbiased, and thorough investigation into what it considered questionable medical issues surrounding Ms. Dougherty's injury claims. A reasonable investigation would have included 1) obtaining an interview with the treating doctor by using a release form signed by the insured, 2) seeking an independent medical examiner's review of the medical records, 3) scheduling an independent medical examination of Ms. Dougherty; 4) interviewing Ms. Dougherty or requesting an Examination Under Oath as allowed under its insurance policy.  None of these important investigative methods was done. Rather, AMCO sat back and requested that its insured's attorney obtain this information.  AMCO's behavior in this regard was objectively unreasonable. AMCO owed a duty to its insured to thoroughly investigate her claim and violated that duty by attempting to push the burden of the investigation onto the insured's attorney, who had already provided adequate information.

   g) According to AMCO's policies, Colossus was to be used as a tool to facilitate claim settlements.  In Ms. Dougherty's case, however, it was used as the sole evaluation process for establishing the claim value.  Not only was the system misused as to purpose, but AMCO selected only a very narrow class of claims to establish its database setting the acceptable range of settlement for a particular injury. This database included only those claims which AMCO and its affiliated companies settled prior to litigation. Jason Wartach testified on behalf of AMCO that the Colossus database contained no jury verdict information, no arbitration awards, and no information regarding claims settled after litigation had been commenced.

   h)  The Colossus report and related data input for Ms. Dougherty's claim

1 is not available. However, from the information that is available, it is apparent that

2 Colossus produced an unreasonable settlement range for Ms. Dougherty's claim. It is

3 also apparent that, as a matter of general policy, AMCO utilized Colossus in such a

4 way that it should have known that Colossus would consistently produce settlement

5 ranges that were unreasonably low.

6        i) The company had received a reasonable settlement demand but

7 refused to make any settlement offer, where liability was reasonably clear, stating that

8 Ms. Dougherty had been adequately compensated by USAA's $30,000 liability

9 settlement and the $5,000 she had received pursuant to her AMCO policy's med-pay

10 provisions. There are many sources generally available within the insurance industry

11 to assist in the evaluation of bodily injury claims. These include standard publications,

12 such as Jury Verdicts, Mealey's Evaluator, and others, that project arbitration awards

13 and jury verdicts and promote an understanding of reasonable settlement ranges.

14 AMCO used none of these tools to evaluate Ms. Dougherty's claim. It is not surprising

15 that the Arbitration Award was far in excess of the zero-value attached to the claim by

16 AMCO.

17        j) AMCO takes the position that it did not deny Ms. Dougherty's claim,

18 but rather, accepted Ms. Doughtery's demand that the dispute as to the value of her

19 claim be resolved in arbitration. In fact, AMCO denied Ms. Dougherty's settlement

20 demand outright and offered nothing in response. It is clear that AMCO denied Ms.

21 Dougherty's claim and withheld reasonable claim benefits due under the policy.

22        k) AMCO's claim file reflects its acceptance that the accident was clearly

23 the responsibility of the adverse driver, Glenn Osmidoff. Yet, at arbitration, AMCO

24 claimed that the accident was "entirely [Ms. Dougherty's] fault." This defense was

25 patently unreasonable and was not the product of any investigation described in the

26 claim file. In raising this defense, AMCO clearly placed its own interests ahead of the

DECLARATION OF THOMAS J. CORRIDAN IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

9

1  interests of its insured, Ms. Dougherty.

2    l)  In summation, AMCO's evaluation, investigation, and handling of Ms. Dougherty's claim was far below industry standards and best practices and failed to comply with California's Fair Claims Practice standards and therefore violated AMCO's duty of good faith and fair dealing toward its insured.

  I make this declaration of my own personal knowledge.  I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct and that this Declaration was executed this 7th day of April, 2008 at Auburn, California.

  _____/s/ Thomas J. Corridan_____
  THOMAS J. CORRIDAN

## ATTESTATION PURSUANT TO GENERAL ORDER 45

I, STEPHEN M. MURPHY, hereby declare as follows:

I am one of the attorneys of record for Plaintiff Christine Dougherty in this action and am duly licensed to practice law in the State of California and in the U.S. District Court for the Northern District of California.

I hereby attest that concurrence from declarant Thomas J. Corridan has been obtained in the filing of this Declaration.

I declare under the penalty of perjury under the laws of the Untied States of America that the foregoing is true and correct and, if called as a witness, I could testify competently thereto.

Executed at San Francisco, California, this 7th day of April, 2008.

                                              /s/ Stephen M. Murphy
                                              STEPHEN M. MURPHY

# EXHIBIT A
to Declaration of
Thomas J. Corridan

## Corridan & Associates
11356 Foxtail Court Auburn CA 95602
Tel. 530 885 6104

## CURRICULUM VITAE

### THOMAS J CORRIDAN

**1997 - Present**
   Self-employed doing business as Corridan & Associates providing Insurance Claims Consultation, Claims Analysis and Expert Witness services to Insurers and Insureds; California Licensed Independent Adjuster and Manager
- Performs quality control audits for insurers and Independent Adjusting companies. Serves as consultant for Claims organizational formats, salary structures, and staffing requirements.
- Provides consulting services to vendors of insurance claims related products, and assists in the preparation of marketing plans and presentations to the Insurance Industry.
- Organizes, participates and critiques Claims training programs, and continuing legal professional seminars dealing with Insurance claims issues.
- Has qualified as an Expert Witness in both Federal and State Courts on Insurance Claims Practices and Procedures; Insurance Agents and Brokers Responsibilities; Breach of the Covenant of Good Faith; Fair Claims Practice Standards; Employment Standards and Management of Claims Personnel.
- Has appeared as a witness at Arbitrations and Mediations, has been a panelist at Educational Seminars on topics of Uninsured Motorist claims handling, Avoiding Bad Faith, "The duty to defend", Insurance Company Operations; "The Appraisal Process.
- Offers Trial Support, and Discovery Assistance for Insurance Litigation matters.
- Presently a member of the American Bar Association with specialty in the Torts-Insurance Practices section; Membership in the Defense Research Institute.

**Insurance Claims Experience**

1992 - 1997
   **Executive Director of Litigation** - *USAA Western Region*
   Responsible for 1st and 3rd party coverage interpretations; settlement evaluations of major damage cases; litigation management; insurance fraud claims decisions; duty to defend, investigate and indemnify; compliance with Unfair Claims Practice; E & O claims against attorneys, agents and adjusters; selection and performance reviews of panel counsel.
   Managed a section of Litigation Supervisors and Claim Attorneys.
   **Arbitrator-Appraiser**
   Special Arbitrator - Arbitration Forums Inc. regarding insurance coverage and insurance contract disputes; experience with proceedings under appraisal clause of property insurance policies.  Consultant to California Department of Insurance on Litigation Management Procedures.

1991- 1992
   **Associate Claim Counsel** - *USAA*
   Litigation Management of extra contractual lawsuits; counseled regional offices regarding cases with damage exposure in excess of their authority; participation on claims policy matters; extensive work on earth movement coverage issues in Texas and California environmental claims issues reviewed for coverage; arson and fraud case management; claims quality, conducted lawsuit management and attorney fee bill audits.

## CURRICULUM VITAE
(Continued)

1985 - 1990
    **Insurance Divisional Claims Superintendent** - *State Farm Fire & Casualty Co.*
    Responsible for all claims personnel, all claims activity from personal and commercial lines of insurance for the resolution of clams against State Farm Fire & Casualty Company in Louisiana. Heavy commercial lines claim work from contractors liability, general liability policies as well as personal and commercial umbrella policies and 1st and 3rd party "bad faith" case management. Responsible for selection and performance reviews of panel counsel and other vendors and service providers. Managed catastrophe claims operations for major disasters in the State of Louisiana.

1980 - 1985
    **Insurance Claims Superintendent** - *State Farm Fire & Casualty Co. (Northern California Region)*
    Responsible for claims personnel, claims activity and resolution of all fire and casualty claims with emphasis on general liability, 1st party homeowner claims, concurrent cause issues and earth movement coverage issues. Severe injury cases with high dollar value handled under personal and commercial umbrella policies.

1978 - 1980
    **Associate Claim Counsel** - *State Farm Fire & Casualty Co. (Bloomington, IL)*
    Responsible for legal research, coverage opinions and review of agents E & O claims with professional liability carrier, review agents commitments for coverage and estoppel issues.

1970 - 1978
    **Claims Superintendent** - *State Farm Fire & Casualty Co. (Northern California Region)*
    Heavy commercial 1st and 3rd party insurance claims management. Responsible for Northern California area.

1968 - 1970
    **Claims Superintendent** - *State Farm Auto (Santa Clara, California Office)*
    Responsible for resolution of auto related claims, including uninsured motorist and 3rd party material damage.

1963 - 1968
    **Litigation Specialist/BI Adjuster** - *State Farm Insurance (San Francisco, CA)*

1960 - 1963
    **Multi-Line Adjuster** - *Liberty Mutual Insurance (San Francisco, CA)*

**EDUCATION & PROFESSIONAL COURSES**:

    B.S. Degree, University of San Francisco - 1960

    J.D. Degree, John F. Kennedy University - 1970

    Associate in Claims, Insurance Institute of America - 1986

    Associate in Management, Insurance Institute of America - 1989

    Workers' Compensation Claims Administration, Industrial Claims Association of San Francisco. Certificate of Course Completion.

    <u>Continuing Legal Education Courses</u>: Rutter Group, California Continuing Education of the Bar Seminars, Defense Research Institute, Northern and Southern California Associations of Defense Counsel Seminars.

## CURRICULUM VITAE
## (Cont)

**SEMINAR PRESENTATIONS:**

Avoiding Conflicts of Interest in the Defense of Insurance Clients.  Northern California Association of Defense Counsel - 1984

The Duty to Defend - Northern California Association of Defense Counsel - 1996.

Insurance Company Operations - Northern California Association of Defense Counsel - 1996.

Pre-Suit Arbitration and Alternative Dispute Resolution; American Arbitration Assn. 1996

The Covenant of Good Faith and Fair Dealing in the Adjustment of Property and Casualty Claims.  Benchmark Educational Programs, 1999.

Mediations and Arbitration - American Arbitration Association, Sacramento - 1996.

The Appraisal Process under 1st Party Property Claims – Orange County California Bar Association; 1996

The Covenant of Good Faith in the Management Uninsured Motorist Claims.  National Business Forums Inc. 2000

Insurance Company Operations - Northern California Association of Defense Counsel- 2001

Northern California Claims Association Annual Bad Faith Seminar 2002.

The Insurance Claims Process – Northern California Association of Defense Counsel Seminar for new Practitioners of Insurance Litigation. – 2003.

Insurance Industry use of Computer Systems in the evaluation of Bodily Injury Claims – California Association of Consumer Attorneys – 2000

**Expert testimony:**

Deposition testimony in excess of 300 cases; Court room testimony in State and Federal Courts in over 30 cases.