LAW OFFICES OF STEPHEN M. MURPHY
STEPHEN M. MURPHY (SBN # 103768)
JEREMY A. GRAHAM (SBN # 234166)
180 Montgomery Street, Suite 940
San Francisco, CA 94104
Tel:   (415) 986-1338
Fax:  (415) 986-1231

LAW OFFICES OF DAVID M. PORTER
DAVID M. PORTER (SBN # 124500)
44 Montgomery Street, Suite 2500
San Francisco, CA 94104
Tel: (415) 982-8600
Fax: (415) 391-7808

Attorneys for Plaintiff
CHRISTINE DOUGHERTY

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| CHRISTINE DOUGHERTY, | ) | NO. C 07-01140 MHP |
| | ) | |
| Plaintiff, | ) | **DECLARATION OF DAVID M. PORTER** |
| | ) | **IN SUPPORT OF MOTION FOR** |
| v. | ) | **SUMMARY ADJUDICATION** |
| | ) | |
| | ) | Date:    June 9, 2008 |
| AMCO INSURANCE COMPANY | ) | Time:    2:00 p.m. |
| and DOES ONE through TWENTY, | ) | Judge:  Hon. Marilyn Hall Patel |
| Inclusive, | ) | Dept.:   15 |
| | ) | |
| Defendants. | ) | |
| | ) | |
| _____ __ ) | | |

I, DAVID M. PORTER, do declare under penalty of perjury as follows:

    1.    I am an attorney admitted to practice law in the State of California and in

the Northern District of California, and am one of the attorneys of record for the

Plaintiff in the above-referenced matter.

2.      I represented plaintiff in the underlying action against the underinsured motorist and in her claim for underinsured motorist coverage against defendant AMCO Insurance Company.

3.      I was present at the arbitration hearing before the Honorable Alfred Chiantelli (retired) on January 26, 2006.  Defendant AMCO was represented in the arbitration proceedings by H. Renton Rolph, Esq.  At the arbitration hearing, Judge Chiantelli asked Mr. Rolph how much he thought Plaintiff's claim was worth were it assumed that Plaintiff bore no liability for the auto accident; Mr. Rolph replied that at most her underinsured motorist claim would be worth $20,000.

4.      Attached hereto as Exhibit A is a true and correct copy of Defendant AMCO's arbitration brief signed by Mr. Rolph.  This same document was previously filed as Exhibit R to Mr. Rolph's Declaration in support of AMCO's Motion for Summary Judgment.

5.      Attached hereto as Exhibit B is a true and correct copy of Judge Chiantelli's Arbitration Award issued on March 1, 2006.  This same document was previously filed as Exhibit S to Mr. Rolph's Declaration in support of AMCO's Motion for Summary Judgment.

6.      Attached hereto as Exhibit C is a true and correct copy of AMCO Personal Auto Policy No. PPA 0008899321-1, including al attachments and endorsements thereto, effective from October 27, 2000, to October 27, 2001, issued to Christine D. Rayburn and Malcolm W. Rayburn, Jr.  This same document was produced by Defendant AMCO in the arbitration proceedings as Bates Nos. 020001-020063 and was previously filed as Exhibit T to the Declaration of Darbie Hoffman in support of AMCO's Motion for Summary Judgment.

7.      Attached hereto as Exhibit D is a true and correct copy of correspondence from Plaintiff's counsel, Stephen M. Murphy, to AMCO's adjuster,

Jeffrey Mangone, dated July 9, 2003.  Enclosed with this letter were copies of the documents described therein.  The enclosures identified and described in the letter are not part of Exhibit D.  This same document was previously filed as Exhibit C to the Declaration of Jeffrey Mangone in support of AMCO's Motion for Summary Judgment.

8.      Attached hereto as Exhibit E is a true and correct copy of correspondence from AMCO's adjuster, Jeffrey Mangone, to Plaintiff's counsel, Stephen M. Murphy, dated August 22, 2003.  This same document was previously filed as Exhibit F to the Declaration of Jeffrey Mangone in support of AMCO's Motion for Summary Judgment.

9.      Attached hereto as Exhibit F is a true and correct copy of correspondence from AMCO's adjuster, Jeffrey Mangone, to Plaintiff's counsel, Stephen M. Murphy, dated September 28, 2004.  This same document was previously filed as Exhibit O to the Declaration of Jeffrey Mangone in support of AMCO's Motion for Summary Judgment.

10.     Attached hereto as Exhibit G is a true and correct copy of correspondence from Plaintiff's counsel, Stephen M. Murphy, to AMCO's adjuster, Jeffrey Mangone, dated November 4, 2004.  This same document was previously filed as Exhibit P to the Declaration of Jeffrey Mangone in support of AMCO's Motion for Summary Judgment.

11.     Attached hereto as Exhibit H is a true and correct copy of excerpts from the transcript of the deposition of Jason Wartach taken by Plaintiff's counsel in this matter on March 4, 2008 and Exhibits thereto.

//

//

//

//

1    I make this declaration of my own personal knowledge. I declare under penalty

2    of perjury under the laws of the United States of America and the State of California

3    that the foregoing is true and correct.

4    Executed this 29th day of April, 2008 at San Francisco, California.

5

6                                    _____/s/ David M. Porter_____
                                     DAVID M. PORTER

7

8

9

10

11                    **ATTESTATION PURSUANT TO GENERAL ORDER 45**

12    I, STEPHEN M. MURPHY, hereby declare as follows:

13    I am one of the attorneys of record for Plaintiff Christine Dougherty in this action
      and am duly licensed to practice law in the State of California and in the U.S. District

14    Court for the Northern District of California.

15    I hereby attest that concurrence from attorney and declarant David M. Porter
      has been obtained in the filing of this Declaration.

16

17    I declare under the penalty of perjury under the laws of the Untied States of
      America that the foregoing is true and correct and, if called as a witness, I could testify
      competently thereto.

18    Executed at San Francisco, California, this 29th day of April, 2008.

19

20                                   _____/s/ Stephen M. Murphy_____
                                     STEPHEN M. MURPHY

21

22

23

24

25

26

# EXHIBIT A
## to (Second) Declaration of David M. Porter

002806300842

H. Renton Rolph / State Bar No. 73457
JAMES & McCLELLAN
One Front Street, Suite 1250
San Francisco, CA 94111
Telephone:   (415) 837-3820
Fax:            (415) 837-3835

Attorney for Respondent
AMCO Insurance Company

## IN RE: THE UNINSURED MOTORIST CLAIM

CHRISTINE DOUGHERTY,                          ——— None Assigned

    Claimant,

vs.                                                          **AMCO INSURANCE COMPANY'S
                                                                ARBITRATION BRIEF**

AMCO  INSURANCE COMPANY,

    Respondent.                                 Arbitrator: Judge Alfred Chiantelli
                                                                Date: 1/26/06

_____/

Respondent AMCO Insurance Company submits its Brief:

## I STATEMENT OF FACTS

This is an underinsured motorist's case arising from an auto accident in Novato, CA on 4/17/2001.  AMCO Insurance Company insured the 1969 Porsche 912 being driven by Claimant Christine Dougherty.  On 4/17/01 at about 4:00 p.m. claimant made  a left turn at the intersection of San Marin Drive and Simmons Lane in Novato. Claimant was westbound on San Marin Drive and entered the left turn lane in order to turn left onto southbound Simmons Lane. Facing claimant on eastbound San Marin Drive  side by side in two lanes  were two stopped pick up trucks.  A white truck was in

010831

002806 3008 3

eastbound lane number one and a green truck in eastbound lane number two. The driver of the green truck was Glenn Osmidoff.

While making her left turn in front of these two vehicles, claimant's Porsche collided with the green truck driven by Osmidoff. Claimant Dougherty did not activate her left turn signal before and during her left turn. This point is not disputed.

Omsidoff was insured by USAA with a policy limit of $30,000. In December 2002 USAA paid this amount to Ms. Dougherty in exchange for a complete release of Osmidoff. Dougherty then submitted this claim to her own carrier AMCO.

## II APPLICABLE LAW

California's uninsured motorist statute has contained the fault principle from its inception. Fault on the part of the uninsured or underinsured motorist is a prerequisite to the insured's recovery on the policy. The insurer is not required to cover all losses but only losses resulting from bodily injury that the insured "shall be legally entitled to recover as damages...from the owner or operator of the uninsured motor vehicle." Insurance Code section 11580.2(a)(1). In addition to showing that the uninsured motorist was not at fault, the insurer has all tort defenses available to it to defeat an uninsured motorist claim. In Sorenson v Allied (1980) 112 Cal.App.3d 717, 169 Cal. Rptr. 441 the court held that the defense of comparative fault of the insured is available to the insurer.

An insured is limited to a maximum recovery of the face amount of the policy less all permissible reductions and credits. Jarrett v Allstate Insurance Co. (1962) 209 Cal.App. 2d 804, 26 Cal Rptr. 231. Insurance Code section 11580.2(e) provides that recoverable damages shall be reduced by amounts paid under the

010832

002806 300844

1  automobile medical payments insurance. Claimant Dougherty received $5,000 medical

2  payments coverage under her policy.

### III  DISCUSSION

4      AMCO submits the deposition of Glenn Osmidoff in which Osmidoff stated

5  that he came to a full stop at the stop sign and then proceeded. He testified that he saw

6  claimant's red Porsche in the left turn lane and that she did not have her left turn signal

7  on.

9      CVC section 21801(a) provides:

10  "The driver of a vehicle intending to turn to the left...shall yield the right of
way to all vehicles approaching from the opposite direction which are close enough to
11  constitute a hazard at any time during the turning movement and shall continue to yield
the right of way to the approaching vehicles until the left turn ...can be made with
12  reasonable safety."

14      The law requires that left turners yield to all vehicles coming from the

15  opposite direction who are close. The law says nothing about who arrives or stops first

16  at the intersection or whether all vehicles are stopped. Clearly the vehicle being driven

17  by Osmidoff was close enough to constitute a hazard for claimant. Claimant admits that

18  she saw Osmidoff's truck at the intersection. Therefore, Osmidoff had the right of way

19  and claimant was required to yield to both trucks before she made her left turn. This

20  remains true even if the white truck yielded to claimant. A left turner must make sure

21  that all lanes of approaching traffic are clear and safe, not just the first one. Osmidoff

22  had no duty to yield to claimant and, obviously, he chose not to do so. Therefore,

23  AMCO submits that this accident was    entirely claimant's fault. The damage to

24  claimant's Porsche was to right rear corner as will be shown by photographs. This

25  damage suggests that she almost made it across both lanes of traffic. However, almost

010833

002806 300845

1    is not good enough. Claimant should have yielded to all approaching traffic close

2    enough to pose a hazard. Quite simply, she did not do so.

3         AMCO submits that USAA   did not analyze this case correctly in

4    deciding to pay its limit.

5                              DAMAGES

6         The photographs show that this was a minor to moderate impact.

7    Claimant was able to get out of her car unassisted and drive her Porsche home and

8    required no medical assistance either that day or during the following week. She

9    actually did not go to see a doctor for a week.  According to plaintiff's letter brief,

10   plaintiff incurred medical bills of "over $7,000." of which AMCO has paid $5,000.  In

11   answering interrogatories  in  February 2005 claimant said her medical bills totaled

12   $7874.

13

14        Claimant was pregnant in April 2001 and gave birth to a healthy son

15   named Wesley, now age four,  on 12/17/2001. The pregnancy and the unborn child

16   were  unaffected by this accident. Claimant does not claim that her unborn child was

17   harmed in this accident or that the pregnancy became problematic as a result of this

18   accident.  In the months after this accident, claimant continued to perform her work as a

19   self-employed bookkeeper until December 2001 when she sold the business to a friend.

20   This sale was due to the birth of Wesley and his needs.

21

22        Claimant has specifically declined to have surgery on her back or

23   shoulder. Claimant is not claiming any future surgery costs.

24        Claimant had a major auto accident in 1999 when her Chevy Tahoe

25   skidded off the road on ice near Mammoth and hit a tree. After this accident she was

4

010834

1  hospitalized for several days and told that she had sustained multiple compression

2  fractures in her lumbar spine and a broken sternum. Actually records show that she

3  sustained a fracture of the T-12 vertebrae and a torn meniscus in her knee.

### CONCLUSION

5          AMCO submits that because claimant was entirely at fault for this

6  accident, she is not entitled to any recovery under her policy with AMCO. If the

7  arbitrator concludes that Glenn Osmidoff was also partially at fault, AMCO submits that

8  claimant has already been fully compensated by USAA's $30,000 and AMCO's $5,000

9  in medical payments coverage. In either event, AMCO respectfully requests an award

10 in its favor and that claimant take nothing.

13 Dated: January 26, 2006          JAMES & McCLELLAN

15                              By _____

16                                    H. Renton Rolph
                                   Attorney for Respondent
17                                 AMCO Insurance Company

5

010835

# EXHIBIT B
## to (Second) Declaration of David M. Porter

Sent By: ADR Services;                    415 772 0960;        Mar-1-06  1:23PM;          Page 4/11

002843700201

Hon. Alfred G. Chiantelli
ADR Services, Inc.
50 Fremont Street, Suite 2110
San Francisco, California 94105
(415) 772-0900
(415) 772-0960 (Fax)

IN RE: ARBITRATION BETWEEN

CHRISTINE DOUGHERTY

    Claimant,

vs.

AMCO INSURANCE COMPANY

    Respondent.

ADRS Case No. 05-4159-AGC

ARBITRATION AWARD

The above entitled matter came on regularly for an Arbitration hearing on Thursday, January 26, 2006, before Hon. Alfred G. Chiantelli, Judge of the Superior Court, Retired. the Arbitrator duly designated by the parties. Stephen M. Murphy of the Law Offices of Stephen M. Murphy appeared as counsel for Claimant and H. Renton Rolph of James & McClellan appeared as counsel for Respondent. The matter was presented and submitted for decision.

This is an underinsured motorist claim which involves the following issues: (1) whether the insured is entitled to recover damages under the underinsured motorist's policy and (2) if so, the amount of damages.

Claimant filed a lawsuit against Glenn Osmidoff, the driver of a green truck involved in the April 17, 2001 vehicular collision with Claimant's car. This third party case was settled for the limits of Mr. Osmidoff's USAA insurance policy, $30,000. There is no issue of underinsurance coverage in this case. This underinsurance claim is pursuant to the AMCO Insurance Company Policy issued to claimant.

-1-

010838

002843700202

1    The limits of Claimant's underinsurance policy limits are unknown because Claimant's

2    motion in limine for exclusion of any evidence or, mention of the limits of Claimant's

3    underinsured motorist policy was granted. Weinberg v. Safeco (2004) 114 Cal.App.4th 1075.

4    The Arbitrator having considered the evidence and arguments of counsel makes the

5    following Arbitration Award:

6    The Claimant has met her burden of proving her case against Respondent by a

7    preponderance of evidence and has proven damages in the amount of $107,874, however,

8    pursuant to the terms of Claimant's policy, Respondent is entitled to a $35,000 offset which is

9    the result of the $30,000 USAA settlement of Claimant's underlying third party lawsuit and

10   Respondent's $5,000 payment under medical payment coverage.

11   **Claimant is awarded $72,874 in total damages.** Claimant had $7,874 in medical bills.

12   There is no claim for loss of earnings. She is entitled to general damages which is reasonable

13   compensation for the pain and suffering she endured from the accident through the birth of her

14   child, her recuperation period and present permanent condition.

15   This case arises out of a two vehicle accident. On April 17, 2001, at approximately 4:00

16   p.m., Claimant was driving a 1969 Porche and came to a complete stop at a posted stop sign at

17   the intersection of San Marin Drive and Simmons Lane in Novato, California. Claimant entered

18   the left turn lane in order to turn left from westbound San Marin Drive onto southbound

19   Simmons Lane. Facing Claimant on eastbound San Marin Drive side by side in two lanes were

20   two pickup trucks. A white truck was in the number one eastbound lane and a green truck in the

21   eastbound number two lane was driven by Mr. Glen Osmidoff. Claimant believed she was at the

22   stop sign before the two trucks stopped at their stop sign. Without using an appropriate left turn

23   signal, Claimant made her left turn onto Simmons Lane. The white truck stopped for her but the

24   green truck continued through the intersection. Claimant yelled out her window, honked her horn

25   and had almost completed her left turn when the right rear portion of her vehicle was struck. The

     vehicle sustained $7,000 in property damages.

-2-

010839

002843700203

Photographs show that this was a minor to moderate impact. Claimant was able to get out of her car unassisted and was able to drive her vehicle home. She did not see a doctor for a week. Her pregnancy and her unborn child was unaffected by this accident and gave birth to a healthy son on December 17, 2001. Claimant continued to work as a self-employed bookkeeper until December, 2001 when she sold the business. Claimant has declined to have surgery on her back or shoulder and this award was issued with the opinion that the claimant will not have any related surgery in the near future.

During her first appointment on April 24, 2001 with Dr. Ernest Sponzilli, a pain management and physical medicine specialist, at Mt. Tam Orthopedics, she complained of neck, shoulder and upper back pain. Dr. Sponzilli held off taking any x-rays until claimant could find out if she was pregnant. The initial diagnosis was a possible cervical disk herniation, cervical soft tissue strain and rotator cuff strain. Physical therapy and acupuncture offered little relief. On February 15, 2002, x-rays were taken and MRIs were conducted on March 1, 2002. The cervical MRI showed a disc protrusion at C5-C6 effacing the ventral cord. At C6-C7 there is a mild protrusion "centrally with mild central canal stenosis without neural foraminal stenosis.

The right shoulder showed "partial under surface articular surface tear of the supraspiratus adjacent to the area of erosion in the greater tuberosity." He also found mild acromioclavicular joint arthrosis with scleroses and mild glenhumeral joint effusion. Dr. Sponzilli prescribed additional physical therapy as well as anti-inflammatory medications. Surgery was not an option for Claimant who had just given birth a few months earlier.

Claimant followed up with physical therapy and acupuncture (12 treatments by RN, Paul Aboud of Mt. Tam Orthopedics). Claimant only received temporary relief from such treatments. A consultation with orthopedist, Dr. Mark Lawler, resulted in Claimant's rejection of recommended shoulder surgery. Her last visit with Dr. Lawler was in March 2004.

As a result of coaching and playing baseball, Claimant had experienced pain in the right shoulder ten years before the accident. This injury resolved itself before the April 2001 accident.

-3-

010840

002843700204

1   She was able to resume coaching baseball and engage in her regular sports activities. Claimant

2   also fractured her lower spine in an automobile accident in April of 1999, however, the fracture

3   was resolved by August of 1999. This accident did not involve any injuries to her neck or right

4   shoulder.

5        Her symptoms continue to have restrictions on her usual activities. Dr. Sponzilli opined

6   that Claimant's neck and shoulder injuries were caused by the April 2001 automobile accident.

7   There are no medical records to indicate that Claimant had been receiving treatment of either

8   condition prior to the accident. Claimant was not having neck or right shoulder problems before

9   this accident and started complaining of these problems right after this accident.

10      The March 1, 2002 MRI scan was done at Marin Magnetic Imaging and Dr. David Stoller

11   interpreted the study and found as to the right shoulder a tear of the supraspinatus tendon. The

12   report of the cervical spine showed a C5-C6, C6-C7 disk protrusions which were mild. These

13   changes Dr. Sponzilli testified would not have been seen in a person of Claimant's age. So these

14   injuries would not be age-related. Claimant was 42 years of age at the time the MRI was taken.

15      Although Claimant's active life (child care, athletics, gardening, etc.) has been reduced,

16   she has undergone some moderate improvement as evidenced by the acupuncture notes and Dr.

17   Sponzelli's deposition testimony. Faced with the option of a shoulder arthoscopy or for the

18   cervical spine a facet joint block followed by a rhizotomy, Claimant has chosen to live with the

19   pain.

20      As to liability, there is ample evidence that Glen Osmidoff was negligent when he struck

21   the rear portion of Claimant's vehicle. To find otherwise is to ignore that (1) Claimant had

22   almost completed her left turn when her car was struck (2) the white truck acknowledged

23   Claimant's right of way, (3) an independent witness, Darrell Wayne Anderson, believed the

24   driver of the green truck was looking to his left as though talking to the driver in the white truck

25   and felt it was the driver of the green truck that caused the collision by failing to yield the right

     of way to the red porche (4) Glen Osmidoff, the driver of the green truck, did not contest the

-4-

010841

Sent By: ADR Services;                    415 772 0950;        Mar-1-06  1:29rm;        Page 2/...

002843700205

1  citation for violating California's Vehicle Code 21800 a -- failure to yield to a vehicle close

2  enough to constitute a hazard while entering a roadway and (5) even if Claimant did not give an

3  appropriate signal as required by vehicle code section 22107, it is doubtful that Glen Osmidoff

4  would have seen the signal. This accident would have happened even if the left hand signal was

5  given by the Claimant. He acknowledges what the independent witness saw. He was

6  momentarily distracted by recognizing "Dean" in the truck next to him, waved at him at some

7  point and he was saying something or yelling something out at his open window, (6) Whether a

8  vehicle will be affected by a driver turning left and whether, in the exercise of ordinary care, a

9  driver should have given the appropriate signal to indicate an intention to make the left turn is a

10  question of fact for a fact finder. (1943) McDevitt v. Rogers 58 Cal.App.2d. 307; Day v. General

11  Petroleum (1939) 32 Cal.App.2d. 220. Because Claimant was in a left turn only lane there is no

12  question of her intention to turn left. From all the facts there is no evidence that Claimant entered

13  the intersection from the wrong side of the highway, "cut a corner", traveled at an excessive

14  speed or failed to ascertain that all lanes were free of approaching vehicles.

15      A driver of a left-turning vehicle may not be declared contributorily negligent as a matter

16  of law in assuming that he or she could make the left turn before the other automobile reached

17  the intersection. McCoulou v. Vijar (1931) 212 Cal.49. It does not appear from all the factual

18  evidence that the green and white truck presented a hazard to the Claimant so that in turning left

19  she had to yield the right of way to oncoming traffic.

20      This award is in full settlement of all claims submitted to this arbitration.

Dated March 1, 2006

*Alfred G. Chiantelli* (signature)

23  Hon. Alfred G. Chiantelli (Ret)

24  **ARBITRATOR**

25

-5--

010842

# EXHIBIT C
## to (Second) Declaration of David M. Porter



**Allied**
Insurance
a Nationwide® company
*On Your Side™*

**AGENCY - 84 - 35720**
HRH OF NORTHERN CALIFORNIA
NOVATO CA 94945

AMCO INSURANCE COMPANY
701 5TH AVE
DES MOINES IA 50391-2000

RAYBURN, CHRISTINE D.
RAYBURN JR, MALCOLM W.
2 SINALOA CT
NOVATO CA 94947-3837

**PERSONAL AUTO POLICY NUMBER**

PPA 0008899321-1

*QUESTIONS, CHANGES OR TO REPORT A CLAIM* . . . . Call us toll free at *1-800-282-1446*
   7:00 a.m. - 9:00 p.m. (CST) Monday through Friday
   8:00 a.m. - 4:30 p.m. (CST) Saturday
   You can use our toll free number to report a claim at any time -- day or night.

*IMPORTANT INFORMATION ABOUT YOUR POLICY* . . . .

- **ID Cards.** Attached at the end of this packet. Separate at perforations and place in each auto.

- **Special Notices.** These notices, when included, point out specific items concerning your policy.

- **Coverage and Endorsement Forms.** Provides policy and coverage information.

- **Billing.** Any premiums which are unpaid will be billed separately. Pay from that bill rather than this policy.

*YOUR DISCOUNTS* . . . .

Your premium shown on the declarations page reflects savings because you qualified for these discounts or special rating.

   Persistency Discount - Length of time insured.
   Air Bag Discount
   Good Driver Discount

Multi-Car - More than one auto with us.
Anti-Theft Device

*Get the Allied Extra ... four free coverages ... and big discounts!*

When you purchase your auto and home insurance (Homeowners Insurance HO-2, 3, 5, or 6, or a Farm Property policy covering your "residence premises") with us, you automatically have Allied Extra Coverages without additonal charge. And, you'll save with discounts on both home and auto. Allied Extra Coverages include:

   Emergency Lockout Coverage - Up to $50 when locked out of your auto or dwelling.
   Special Deductible Provision - One deductible applies for auto and dwelling losses from the same event.
   Air Bag Replacement - Replacement in the event of accidental deployment of an air bag.
   Auto Death Indemnity - $10,000 benefit for an accident when wearing a seat belt (named insured and spouse).

JL0003S (12-99)

DIRECT BILL   78NU 07044

R  618521618    934

020001

**DRIVERS AND AUTOS CURRENTLY SHOWN FOR YOUR POLICY . . . .**

Please advise immediately if this listing is incorrect.

| | DOB | DL NUMBER | MARRIED? | SEX |
|---|---|---|---|---|
| RAYBURN, CHRIS | 01/12/60 | N7079548 | M | F |
| RAYBURN JR, MALCOLM W. | 05/24/71 | A1716864 | M | M |

| AUTO | ANNUAL MILEAGE | USAGE | DRIVER -- PRINCIPAL OR HIGHEST RATED |
|---|---|---|---|
| 86 HONDA | 20000 | PLEASURE/DRIVEN TO WORK UNDER 3 MILES | RAYBURN, CHRIS |
| 99 CHEVLT | 12000 | PLEASURE/DRIVEN TO WORK UNDER 3 MILES | RAYBURN, CHRIS |
| 67 VOLKS | 1000 | PLEASURE/DRIVEN TO WORK UNDER 3 MILES | RAYBURN JR, MALCOLM W. |

**CUSTOMER SERVICE QUALITY CONTROL**

Claim and policy service calls to Allied are randomly monitored in order to enhance the quality of service provided by Allied. If you do not wish to have your call monitored, please indicate this when placing your call.

DIRECT BILL    7BNU  07044

R

935

020002

★★★★★★★★   **IMPORTANT INSURANCE INFORMATION**   ★★★★★★★★

**EVIDENCE OF INSURANCE IS REQUIRED WITH
REGISTRATION RENEWAL**

Effective January 1, 1997, you are required to have liability insurance to register your vehicle. When you renew your vehicle registration you will be required to submit evidence of insurance with your payment for the renewal transaction. Evidence can be in the form of your insurance ID card (a photocopy is acceptable). Evidence of insurance is not required with registration renewal of off-highway vehicles, trailers, vessels, of if you file a planned non-operation (PNO) on the vehicle. If you do not have evidence of insurance, contact your insurance company.

Motor Carriers of property as defined in CVC34601 may provide a statement that the carrier has evidence of insurance on file for this vehicle with PUC or DMV pursuant to CVC34630.

You may be requested by a peace officer to show evidence of insurance during a traffic stop or at an accident. Each owner is required to carry written evidence of liability insurance in each vehicle. Note: Comprehensive and Collision insurance covers your damages only, and does not meet the liability insurance requirement.

Vehicle Code Sections: 4000.37, 16020, and 16028.

**DOCUMENTS SUBMITTED TO DMV WILL NOT BE RETURNED**

REG 890 (NEW 12/95)

**IN 0002 (03-97)**

PPA 0008899321-1        02/13/07              **INSURED COPY**              R              78      938

020003

\*\*\*\*\*\*\*\*\*  **IMPORTANT INSURANCE INFORMATION**  \*\*\*\*\*\*\*\*\*

### Motor Vehicle Accident and Violation Information and/or Consumer Credit Information

Information necessary to update your records relative to motor vehicle accident and violation information and/or Consumer Credit information comes from these sources:

- Our own files relative to accidents while insured with us.

- Support organizations that provide information from other sources, such as State Motor Vehicle Records.

If we obtain information from support organizations, you have the right to review such information and to request that any incorrect information be corrected, amended or deleted. You may contact this firm directly or submit a request in writing within 60 days for a copy of the report.

For Motor Vehicle Violation information contact:

> Choice Point Insurance Consumer Center
> P.O. Box 105108
> Atlanta, GA  30348-5108
> 1-800-456-6004

For Motor Vehicle Accident Information contact:

> C.L.U.E. National Consumer Service Center
> Choice Point Services Inc.
> P.O. Box 105108
> Atlanta, GA  30348-5108
> 1-800-456-6004

For Consumer Credit Information contact:

> Trans Union Consumer Relations
> 2 Baldwin Place
> P.O. Box 1000
> Chester, PA  19022
> 1-800-888-4213

**IN 0263 (11-99)**

PPA 0008899321-1        02/13/07        **INSURED COPY**        R        7B    937

020004

********** IMPORTANT INSURANCE INFORMATION **********

## NOTICE OF INSURANCE INFORMATION PRACTICES

### AND

### SPECIAL GOOD DRIVER NOTICE

When you apply for insurance, you entrust us with some personal information about yourself. Like you, we are concerned with your privacy and its protection. Therefore, we want you to know about our procedures for protecting your privacy, and your rights and responsibilities regarding recorded information about you. As our customer, we want you to understand how we gather information, how we protect it, and how you can help insure its accuracy.

### WHAT KIND OF INFORMATION IS COLLECTED ABOUT YOU

Most of our information comes directly from you. In most cases, your application provides all of the information we need to evaluate you or your property for insurance. Should we need additional information or want to verify information you have given us, we will contact you.

Sometimes, we may not be able to obtain all the information we need directly from you. In that case, we may obtain information from outside sources at our own expense. For example, with auto insurance, we routinely obtain a record of accidents and violations from your State Motor Vehicle Department.

In some instances, we will have your insurance agent or our service representatives obtain the additional information we need. However, it is common for an insurance company to ask an independent source, such as "consumer reporting agencies" to help verify information and add to information given on an application. Such reports are used to help us decide if you qualify for the insurance you have applied for.

The information we receive about you from an independent reporting agency will be treated in the same confidential way in which we treat the information you gave us on your application. However, the information collected by the agency may be retained by them and later shared with others who use these reports. It will be given to others only to the extent permitted by law.

### WHAT WE DO WITH INFORMATION ABOUT YOU

Information we collect about you will not generally be given to anyone without your consent, except when the disclosure is necessary for us to conduct our business. In that case we will share information about you without your prior consent to the extent permitted by law. Generally, information will be disclosed without your prior consent only to persons or organizations having a business interest in an insurance transaction involving you, have a contract with us to perform part of our insurance function, or have some other business relationship with us.

We must, for example, exchange some information about you with our agents, investigators, appraisers, attorneys and other persons who are or will become involved in processing your application and servicing your policy or any claims you may make. We may also share information with persons or organizations who need the information to perform a business, professional or insurance function for us. Information about you may also be given to other insurance companies, agents or consumer reporting agencies in connection with not only this application or policy but in connection with any application or policy. For example, we would share information about you with another company that may reinsure your policy or with other companies with whom you have had other insurance policies.

IN 0521 (07-94)

PPA 0008899321-1        02/13/07                    INSURED COPY                    R          78    938

Page 1 of 2

020005

## FOR YOUR INFORMATION
## RETAIN FOR YOUR RECORDS

We also routinely give out information about you to insurance-support organizations that are established to collect such information for the purpose of detecting and preventing insurance crimes or fraudulent claims.

We may also give our affiliated companies some information about you for their use in marketing insurance products or services.

There will be other occasions, even though they are infrequent, in which information about you may be disclosed without your prior authorization. We may give information to the State Insurance Department in connection with their regulation of our business, and to other governmental or law enforcement authorities to protect our legal interest or in cases of suspected fraud or illegal activities. We would also disclose information if ordered by a subpoena, search warrant or other court order, and if otherwise required by any federal, state or local law.

### HOW YOU CAN REVIEW RECORDED INFORMATION ABOUT YOU

You have the right to review recorded information about you contained in our files. If you have any questions about what information we may have on file, please write us. We will need your complete name, address, date of birth, and all policy numbers under which you are insured. Tell us what information you would like to receive. Within 30 business days of receipt of your request, we will inform you of the nature of recorded information requested. At that time, we will also tell you the identity of the persons or organizations to whom we have disclosed this information in the preceding two years. We will also give you the name and address of any consumer reporting agency who prepared a report about you so that you can contact them to get a copy of that report.

There are some kinds of information, however, that we are not required to give you access to. This type of information is generally collected when we evaluate a claim under an insurance policy or when the possibility of a lawsuit exists.

### IF YOU DISAGREE WITH OUR RECORDS

If, after reviewing the information provided, you believe it is incorrect, please notify us. Tell us what is inaccurate and why. You have the right to request that we correct, amend or delete information that you feel is incorrect.

Upon receiving your request, we will investigate the information you think is incorrect. We will take action within 30 business days whereby, if we agree with you, we will make the necessary corrections, amendments or deletions. We will also notify persons or organizations to whom we have previously disclosed the inaccurate information of the change. Insurance-support organizations to whom we systematically reveal information will also be informed of the change.

If we disagree with you, we will notify you and give you our reasons for refusing to correct, amend or delete the information you feel is incorrect. If you are not satisfied by our refusal and the reasons, we will ask you to send us a concise statement of what you believe is the correct information and why you disagree with our refusal to correct it. When we receive your statement, we will place it in our file and send a copy of it to persons and organizations to whom we have previously disclosed or systematically disclose information. If we make any subsequent disclosure of information in your file, we will also disclose your statement.

### YOUR PRIVACY IS OUR CONCERN

We gather information about our customers only in the interest of providing them with quality services at fair prices. We're committed to the careful handling of personal information. If, after reading this notice, you have any questions about what's in your files, contact your Agent or service representative for the address of the office servicing your area.

### SPECIAL GOOD DRIVER NOTICE

An insurer which refuses to provide coverage to an applicant who is a "Good Driver" must provide the applicant with a written statement of the reasons it denied coverage. In general, under California Law a Good Driver is a person who has not had more than one violation point or more than one at-fault accident resulting in only property damage in the last three years.

IN 0521 (07-94)

PPA 0008899321-1       02/13/07                 INSURED COPY              R            Page 2 of 2

78   939

020006

\*\*\*\*\*\*\*\*\*\*  **IMPORTANT INSURANCE INFORMATION**  \*\*\*\*\*\*\*\*\*\*

## EXPLANATION OF THE EFFECT OF ACCIDENTS AND CONVICTIONS ON THE COST OF INSURANCE
### DRIVING SAFETY RECORD PLAN
(Section 489, California Insurance Code)

The Plan under which your policy is rated uses past experience (accidents and convictions) as part of the determination of your premium cost. The point system described below has been established under which those drivers that have no accidents or convictions receive the lowest premiums. Higher premiums are charged for other drivers based upon the number of points they have accumulated during the experience period of three years immediately preceding the effective date of the policy.

The Driving Record Sub-Classification assigned to the automobile appears in the Declarations as the 6th digit under "Class" and reflects the number of points accumulated during the experience period and assigned under the Plan. (Sub-Classification 0 means no points have been assigned; Sub Classification 1 means one point has been assigned for an accident or V for a conviction, etc.)

Driving Record Points

1.  Convictions

    Points shall be assigned for convictions during the experience period for motor vehicle violations of the applicant or any other current resident operator as follows:

    a.  Five points shall be assigned for conviction of:

        1)  Driving while intoxicated, "open bottle", or any other violation involving the use of intoxicating liquor or narcotic drugs (includes "deferred sentence" involving license suspension or revocation for a drug or alcohol related occurrence); or

        2)  failure to stop and report when involved in an accident; or

        3)  homicide or assault arising out of the operation of a motor vehicle; or

        4)  driving during a period while license is suspended or revoked; or

        5)  permitting an unlicensed operator to drive; or

        6)  loaning an operator's license to an unlicensed operator, or making a false statement in an application for license or registration, or procuring a license or registration through impersonation whether for himself/herself or another;

        7)  engaging in, aiding or abetting in, a spontaneous or prearranged speed contest; or

        8)  reckless driving.

    b.  Two points shall be assigned for a conviction for any passing violation, including passing on the wrong side, on a hill or curve, or in a no passing zone.

    c.  With respect to any other conviction for a moving traffic violation one point shall be assigned.

        EXCEPTION:

        Convictions for the following shall not be regarded as moving traffic violations:

IN 0531 (12-99)

020007

1) any motor vehicle "equipment" requirement of the motor vehicle and traffic laws, except brakes, nor

2) failure to display proper number plates provided such plates are in existence; nor

3) failure to have in possession operator's or chauffeur's license provided there is one in existence; nor

4) failure to sign or display registration card.

2. Accidents

Points shall be assigned for each accident that occurred involving Bodily Injury, Property Damage or Collision during the experience period, involving the applicant or any other driver listed on the policy.

a. Two points are assigned for each auto accident that results in bodily injury or death.

NOTE: Bodily injury in this case excludes medical payments claims that do not result from the actual operation of an auto.

b. One point is assigned for each accident that results in total property damage to all property including his/her own, regardless of whether or not an insurance claim was filed, resulting in damages:

1) In excess of $500 if such accident occurred prior to October 1, 1994.

2) In excess of $750 if such accident occurred on or after October 1, 1994.

EXCEPTIONS: No points are assigned for accidents:

a. Involving unlisted operators who are named insureds or drivers under a separate policy with our Company. The point will follow the driver over to the other policy.

b. Involving unlisted operators who are neither residents of the insureds household nor regular operators of his or her auto.

c. Occurring under the following circumstances:

1) The auto is lawfully parked. However, if the parked auto rolls from the parked position, the accident is charged to the person who parked the auto.

2) For involvement in an accident as a result of which (a) a court judgement declared the operator of another vehicle involved in the accident to have been 51% or more negligent; or (b) a reimbursement of at least 51% in settlement of the insured's damage was obtained from, or on behalf of, the owner or operator of another vehicle involved in the accident, or

3) The auto is struck in the rear by another vehicle and the insured has not been convicted of a moving traffic violation in connection with the accident.

4) The operator of the other auto involved in the accident was convicted of a moving traffic violation and the insured was not convicted of any such violation.

5) The auto operated by the insured is struck by a "hit-and-run" vehicle, providing the accident is reported to the proper authorities within 24 hours by the applicant or resident operator.

6) The accident was caused by direct contact with animals or fowl.

7) The accident was caused by direct contact with flying gravel, missiles, or falling objects.

8) The accident occurred while using the auto in response to an emergency if the operator of the auto at the time of accident was a paid or volunteer member of any Police or Fire Department, First Aid Squad, or any law enforcement agency. This exception does not include an accident occurring after the auto ceases to be used in response to such emergency.

3. Points shall not be assigned for both accidents and convictions which are incurred through the same incident. The points assigned shall be for either the accident or conviction; whichever is subject to the greater number of assignable points.

IN 0531 (12-99)

4. Refund of Surcharged Premium

If a point has been assigned as a result of an accident and it is subsequently learned that the accident falls under one of the exceptions enumerated in the rule, the Company shall refund to the insured the increased portion of the premium generated by the accident surcharge.

5. Driving Safety Record

The Driving Safety Record shall be determined from the number of Driving Record Points accumulated during the experience period by the driver who has the highest rating factor. The total points for an operator are applied only to the auto to which he or she is associated.

## YOUR RIGHT TO BE INFORMED OF ANY INCREASE
## IN PREMIUM DUE TO ACCIDENTS OR CONVICTIONS

In accordance with Section 489 of the California Insurance Code, you have the right to be informed, upon request, of any increase in the premium in whole or in part, charged by virtue of involvement in any accident or conviction by you or any operator of the motor vehicle. YOUR AGENT OR COMPANY REPRESENTATIVE WILL BE HAPPY TO ANSWER QUESTIONS ABOUT YOUR AUTO INSURANCE POLICY.

020009

## GOOD DRIVER DISCOUNT POLICY

In addition to the rating required under the Driving Safety Record Plan, Sections 1861.02 and 1861.025 of the California Insurance Code provide for a special 20% Good Driver Discount. In order to qualify for a Good Driver Discount Policy, the following criteria must be met.

1. To be eligible for the Good Driver Discount, all drivers must meet the following requirements:

   a. No drivers licensed less than 3 years.  (Note:  If a motorcycle is involved, each named insured must have had a motorcycle license for the last 3 years).

      EXCEPTION:  Drivers who obtained their experience other than in the United States or Canada but with at least the previous 18 months in the United States or Canada.

   b. No drivers convicted of any of the following violations during the last 3 years.

      1)  Failure to stop in the event of an accident.  (12810 (a), 20001, 20002)

      2)  Driving under influence of intoxicating liquors or drugs.  (12810 (b), 23152, 23153)

      3)  Reckless driving.  (12810 (c), 23103, 23104)

      4)  Manslaughter in the driving of a vehicle.  (12810 (d), 192 (c) Penal Code)

      5)  Evading a Peace Officer:  Reckless Driving.  (12810 (d), 2800.2, 2800.3)

      6)  Driving the wrong way or in an incorrect lane on a divided highway.  (12810 (d), 21651 (b))

      7)  Driving in excess of 100 mph. (12810 (d), 22348 (b))

      8)  Speed contests.  (12810 (d), 23109 (a), 23109 (c))

      9)  License/routes involving transportation of explosives.  (12810 (d), 31602)

   c. No drivers convicted of two or more of these violations (or accidents) during the last 3 years:

      1)  Any traffic conviction other than under B. above:  (1861.025 (b), 12810 (e))

      2)  Any PD (PD and/or Collision) accident.  (1861.025 (b) (1)

   d. No driver with more than one dismissal of a conviction relating to controlled substances during the last 3 years.  (1861.025 (b) (2), 1803.5, 1808.7)

   e. No driver under the age of 21 convicted of driving with BAC of .05 or more during the last 7 years and on or after 01-01-96.  (1861.025 (b) (3), 23140 (a), 23140 (b))

   f. No drivers principally at fault in an accident involving BI during the last 3 years.  (1861.025 (b) (3))

   g. No driver convicted of driving with a BAC of .08 or using a drug, if addicted, during the last 7 years and on or after 01-01-96.  (1861.025 (b) (3), 23152)

   h. No driver convicted of driving under the influence of any alcoholic beverage and/or drug causing bodily injury to any person other than the driver.  (1861.025 (b) (3), 23153)

   i. No driver convicted of violation of Section 192(c) (3) of the Penal Code, driving under the influence but without gross negligence. (192 (c) (3) Penal Code, 23140, 23152, 23153)

   j. No driver convicted of gross vehicle manslaughter while intoxicated.  (191.5 Penal Code)

2. This discount applies on a per vehicle basis to all coverages.

3. Accidents and/or violations occurring after the policy is written will not affect the rating until renewal (much the same as the Driving Safety Record Plan.)

4. Drivers with accidents and/or violations added to the vehicle will cause the vehicle to lose the Good Driver Discount.

Note:  The first digit of the Classification Code appearing on the Declarations Page identifies the following:

   G = Means eligible for Good Driver Discount.

   N = Means not eligible for Good Driver Discount.

**IN 0531 (12-99)**

020010

★★★★★★★★    **IMPORTANT INSURANCE INFORMATION**    ★★★★★★★★

### NOTICE OF LIMITS OF FUTURE COVERAGE

Section 11580.09 of the California Insurance Code requires a notice stating "limits of future coverage". "Limits of future coverage" means specified reasons for which an insurance company may cancel or refuse to renew the policy or increase the premium for the same coverage. This notice is to provide this information.

### CANCELLATION OR NONRENEWAL

Cancellation or nonrenewal of this policy shall be effective only if based on one or more of the following reasons:

1. Non-payment of premium.

2. Fraud or material misrepresentation affecting the policy or insured.

3. A substantial increase in the hazard insured against.

### PREMIUM INCREASES

The premium for coverage(s) under this policy may be increased due to the following reasons, as applicable:

1. Accident involvement (at-fault) by drivers in the household.

2. Conviction of motor vehicle violations of drivers in the household.

3. A change in, an addition of, or deletion of, a covered auto.

4. A change in, an addition of, or deletion of, a covered person or driver under the policy.

5. A change in the location where a covered auto is garaged.

6. A change in how the covered auto is used.

7. A change in the type or value of a covered auto.

8. A change in these characteristics:

    a. Age, sex, marital status of drivers in the household.
    b. Length of driving experience.

9. Claims paid to you or to others on your behalf, or claims paid because of damage to your covered auto.

10. A change in the policy coverages.

11. An overall increase in premiums applicable to California policyholders.

Some premium increases may result from reasons that are not specified in Items 1. through 11. above that are both lawful and not unfairly discriminatory.

THIS NOTICE DOES NOT PROVIDE COVERAGE (ONLY YOUR POLICY PROVIDES COVERAGE) NOR SHOULD IT BE CONSTRUED TO REPLACE ANY PROVISION OF THE POLICY. YOU SHOULD READ YOUR POLICY FOR COMPLETE DETAILS ON THE COVERAGES PROVIDED. IN THE EVENT OF ANY CONFLICT BETWEEN THE POLICY AND THIS NOTICE, THE PROVISIONS OF THE POLICY SHALL PREVAIL.

**IN 0532 (01-91)**

PPA 0008899321-1       02/13/07                **INSURED COPY**              R              78      944

020011

\*\*\*\*\*\*\*\*\*    **IMPORTANT INSURANCE INFORMATION**    \*\*\*\*\*\*\*\*\*

### CONSUMER COMPLAINTS AND INFORMATION

IF YOU SHOULD HAVE ANY QUESTIONS OR PROBLEMS WITH THIS POLICY PLEASE FIRST CONTACT YOUR AGENT OR A COMPANY REPRESENTATIVE. IF AFTER DOING SO WE HAVE FAILED TO PRODUCE A SATISFACTORY SOLUTION TO YOUR PROBLEM YOU MAY CONTACT THE CALIFORNIA DEPARTMENT OF INSURANCE AT 1-800-927-4357 OR WRITE THEM AT:

STATE OF CALIFORNIA
DEPT. OF INSURANCE
CONSUMER ASSISTANCE
300 SOUTH SPRING STREET
LOS ANGELES, CA 90013

### AVAILABILITY OF SPECIAL DISCOUNTS OR RATING
### IMPORTANT INSURANCE INFORMATION

(Section 11580.15, California Insurance Code)

Pursuant to special California Insurance Code requirements, you are notified of the following discounts or special rating that are available for eligible policyholders:

Good Student Classification — Reduced premiums for private passenger autos with youthful operators maintaining special scholastic standards.

Mature Driver Improvement Course Credit — A 5% credit applies to Liability premiums for eligible drivers completing an approved motor vehicle accident prevention course.

Multi-Car Classification — 20% discount applies when we insure two or more private passenger autos.

Anti-Theft Device Credit — Reduced premiums for private passenger autos equipped with an ACTIVE or PASSIVE DISABLING Anti-Theft Device.

Air Bag Discount — A 30% discount will be applied to Medical Payment premiums for all autos equipped with air bag(s) conforming to the federal crash protection requirements.

Anniversary Discount — Reduced premiums for continuous years of coverage with ALLIED GROUP.

Multi-Policy Discount — A 15% discount for eligible policyholders when we also provide a Homeowners Policy.

Driving Safety Record Plan — This plan rewards drivers with good driving records on private passenger autos.

Good Driver Discount — A 20% discount for eligible policyholders meeting the Good Driver criteria as outlined in Section 1861 of the California Insurance Code.

You may already receive one or more of these discounts or special rating. If you desire information relative to any item, please contact your ALLIED Group Agent or a Company Representative.

IN 0542 (10-97)

PPA 0008899321-1      02/13/07            INSURED COPY            R            78    945

★★★★★★★★    **IMPORTANT INSURANCE INFORMATION**    ★★★★★★★★

### CALIFORNIA AUTOMOBILE PREINSURANCE INSPECTION REQUIREMENT

The California Automobile Preinsurance Inspection Law became effective May 1, 1992. This mandatory inspection law was enacted to help reduce the high cost of auto insurance by preventing payment for inflated or fraudulent claims. Basically, the law requires the inspection of autos before new policies can be issued or before additional or re-placement autos can be added to existing policies. The law further provides exceptions whereby inspections can be waived.

PLEASE NOTE THAT INSPECTIONS ARE NOT REQUIRED FOR AUTOS CURRENTLY ON YOUR POLICY AND THAT WE INSURED PRIOR TO MAY 1, 1992.

In order to assure compliance with the law, we recommend the following:

- Please contact us as soon as possible after you purchase or acquire any new or used vehicle.

- We will advise you if an inspection is necessary (there are exceptions).

- You will have seven days from the date you wish coverage to begin to obtain the inspection.

- Information as to how to obtain the inspection will be provided.

- Inspections will be completed at no charge to you.

- If you purchase a new auto (not a used auto) from a licensed dealer, the bill of sale or "window sticker" showing all equipment and costs, may substitute for the inspection.

Please contact us you have questions.

**IN 0542 (10-97)**

PPA 0008899321-1        02/13/07                    INSURED COPY                    R              78      946

020013

**★★★★★★★★**    **IMPORTANT NOTICE INFORMATION**    **★★★★★★★★**

This is a notice of clarification of coverage in your Personal Auto Policy.  The area within the policy that has been clarified is highlighted below.

**PART D - COVERAGE FOR DAMAGE TO YOUR AUTO**

Clarification of Coverage

The Collision and Other Than Collision section of your policy has been revised to clarify that coverage is not provided for any loss in market or resale value (sometimes referred to as "diminution in value") which may result from a direct and accidental loss to your auto.

This change does not affect the way premium is determined for either private passenger type auto or recreational vehicles.

THIS NOTICE DOES NOT PROVIDE COVERAGE (ONLY YOUR POLICY PROVIDES COVERAGE) NOR SHOULD IT BE CONSTRUED TO REPLACE ANY PROVISION OF THE POLICY.  YOU SHOULD READ YOUR POLICY FOR COMPLETE DETAILS ON THE COVERAGES PROVIDED.  IN THE EVENT OF ANY CONFLICT BETWEEN THE POLICY AND THIS NO-TICE, THE PROVISIONS OF THE POLICY SHALL PREVAIL.

**IN 0590 (02-00)**

PPA 0008899321-1    02/13/07    INSURED COPY    R    78    947

020014

**\*\*\*\*\*\*\*\*\*\*  IMPORTANT INSURANCE INFORMATION  \*\*\*\*\*\*\*\*\*\***

### HOW YOUR INSURANCE PREMIUM IS DEVELOPED

Many factors are taken into consideration in the development of auto insurance premiums. These include:

- Autos — The original cost, repairability, age, annual mileage, body type, performance and how they are used.
- Drivers — Driving experience, sex, marital status, good student, accident prevention courses and driving records.
- Miscellaneous -- Multiple autos and multiple policies, length of time and Farm Bureau membership.

The application of these factors will result in driver classification factors and the placement of autos into Rating Plans.

### EXPLAINING CHANGES IN YOUR RENEWAL PREMIUM

Premiums for renewal policies on occasion will reflect adjustments based upon one or more of the following:

- Changes of coverages, limits, autos, drivers, driver ages and marital status, age of the autos, etc.
- Changes in the statewide rates as authorized for your state.
- Changes in the driving records, ie. accidents and violations, of the drivers of your autos.

The overall premium change from your last policy or renewal is:    **$.00**

### THE EFFECT OF DRIVING RECORDS ON YOUR PREMIUM

The driving record of all drivers in your household are used in determining your auto insurance premium. The existence of accidents and violations will increase your premium.

| | | | |
|---|---|---|---|
| 01/01/99 | PROP DAMAGE ACCID.IN EXCESS OF | RAYBURN, CHRIS | 1 POINTS |
| 01/12/00 | STOP SIGN/SIGNAL VIOLATION | RAYBURN JR, MALCOLM W. | 1 POINTS |

Points are combined for all drivers associated with each auto. These points determine the appropriate surcharge, based upon the accumulated points, as applied to the premiums.

For your policy:                                  Surcharge Factor

| 86 | HONDA | 1 POINTS | 1.15 |
| 99 | CHEVLT | 1 POINTS | 1.15 |

These factors will apply for a period of three years beginning with the first renewal following the accident or violation.

SN 0559C (12-99)

PPA 0008899321-1     02/13/07     **INSURED COPY**     R     **Page 1 of 2**   78   948

020015

## YOUR RIGHT TO BE INFORMED OF ANY INCREASE
## IN PREMIUM DUE TO ACCIDENTS OR CONVICTIONS

In accordance with Section 489 of the California Insurance Code, you have the right to be informed, upon request, of any increase in the premium in whole or in part, charged by virtue of involvement in any accident or conviction by you or any operator of the motor vehicle.  YOUR AGENT OR COMPANY REPRESENTATIVE WILL BE HAPPY TO ANSWER QUESTIONS ABOUT YOUR AUTO INSURANCE POLICY.

SN 0559C (12-99)

PPA 0008899321-1          02/13/07              INSURED COPY                 R          Page 2 of 2

                                                                                        78      949

020016



**AMCO INSURANCE COMPANY**
701 5TH AVE
DES MOINES IA 50391-2000
1-515-280-4211

**PERSONAL AUTO POLICY**

AGENCY 001   **HRH OF NORTHERN CALIFORNIA**
NOVATO CA 94945-5057

DECLARATIONS   AMENDED

| POLICY NUMBER |
| --- |
| **PPA 0008899321-1** |
| ACCOUNT NUMBER |
| 618521618 |

Policy Period
From: **10/27/00** To: **10/27/01**
12:01 A.M. Standard Time
Effective Date of Change

NAMED INSURED AND ADDRESS
**RAYBURN, CHRISTINE D.
RAYBURN JR, MALCOLM W.
2 SINALOA CT
NOVATO CA 94947-3837**

## COVERAGE AND LIMITS OF LIABILITY (In Dollars)
Coverage is provided where a premium or limit of liability is shown for coverage.

| VEHICLE | BODILY INJURY | | PROPERTY DAMAGE | MEDICAL PAYMENTS | PERSONAL INJURY PROTECTION | UNINSURED MOTORISTS | | | |
|---|---|---|---|---|---|---|---|---|---|
| | EACH PERSON | EACH ACCIDENT | EACH ACCIDENT | EACH PERSON | OPTION | EACH PERSON | EACH ACCIDENT | | |
| 1 | 100,000 | 300,000 | 50,000 | 5,000 | | | | | |
| 4 | 100,000 | 300,000 | 50,000 | 5,000 | | 100,000 | 300,000 | | |
| 5 | 100,000 | 300,000 | 50,000 | 5,000 | | 100,000 | 300,000 | | |
| | | | | | | 100,000 | 300,000 | | |

| VEHICLE | DAMAGE TO YOUR VEHICLE | | TOWING | RENT RE TRN EXP | |
|---|---|---|---|---|---|
| | Other Than Collision Loss | Collision Loss | | | |
| | Actual Cash Value Minus Deductible | | PER DISABLE-MENT | PER DAY/ MAXIMUM | |
| 1 | 500 | 500 | 50 | 30/ 900 | |
| 4 | 500 | 500 | 50 | 30/ 900 | |
| 5 | | | | | |

## PREMIUMS (In Dollars)

| VEH | BODILY INJURY | PROPERTY DAMAGE | MEDICAL PAYMENTS | PERSONAL INJURY PROTECTION | UNINSURED MOTORISTS | | | DAMAGE TO YOUR VEHICLE | | TOWING | RENT RE TRN EXP |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | Other Than Collision Loss | Collision Loss | | |
| 1 | 305.52 | 195.12 | 31.54 | | 77.50 | | | 41.18 | 163.56 | 3.20 | 19.20 |
| 4 | 261.32 | 166.98 | 19.32 | | 66.42 | | | 69.60 | 325.72 | 3.20 | 19.20 |
| 5 | 155.18 | 99.34 | 16.12 | | 39.82 | | | | | | |

| VEH | | | | | COLLISION DEDUCTIBLE BUY BACK | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | | | | | | | | | | | |
| 4 | | | | | 7.88 | | | | | | |
| 5 | | | | | 7.88 | | | | | | |

| VEH | Total Premium Each Vehicle | Other Miscellaneous Endorsements Requiring Premium: | | | | | |
|---|---|---|---|---|---|---|---|
| | | No. | | Sub-Total | | $ | 2,094.80 |
| 1 | 844.70 | | $ | Other Endorsements/Fees | | $ | |
| 4 | 939.64 | | $ | | | $ | |
| 5 | 310.46 | | $ | Full Term Premium | | $ | 2,094.80 |
| | | | $ | Add'l Premium | | $ | |
| | | | | Return Premium | | $ | |

**THIS IS NOT A BILL - SEE YOUR BILLING STATEMENT**
Page 1 of 2

DIRECT BILL   78NU   07044

**AMCO INSURANCE COMPANY**
Countersigned by - Authorized Representative

R   618521618   78   950

020017

## DESCRIPTION OF VEHICLE

| VEH | Year | Trade Name | Body Type and Model | Identification Number | Cost/New | Max Value | HP | CC's | Class |
|-----|------|-----------|---------------------|----------------------|----------|-----------|-----|------|-------|
| 1 | 1986 | HONDA | 4 DOOR | JHMBA5430GC088837 | | | | | G11121 |
| 4 | 1999 | CHEVLT | 4 DOOR | 1GNEK13R9XR150279 | | | | | G1112V |
| 5 | 1967 | VOLKS | 2 DOOR | 367178038 | | | | | G11420 |

## ALTERNATE GARAGING LOCATIONS

| VEH | Year | Make | Body Type and Model | Address |
|-----|------|------|---------------------|---------|
| 1 | 1986 | HONDA | ACCORD LX | |
| 4 | 1999 | CHEVLT | TAHOE BASE | |
| 5 | 1967 | VOLKS | SQUARE BAC | |

## ENDORSEMENTS

Endorsements forming a part of this policy: IN0002 (0397) IN0263 (1199) IN0521 (0794) IN0531 (1299) IN0532 (0191)
IN0542 (1097) IN0590 (0200) AA0001 (0986) AA0001A (1098) AA0007 (1192) AA0008A (1199) AA0073 (0697) AA0078 (0995)
AA0169 (1299) AA0170 (0398) AA0303 (0699) AA0488 (0398) PP0305 (0886) SN0559C (1299)

Loss Payee:    4    US FIRST FEDERAL CREDIT UNION        BLOOMINGTON MN 55425-1642

951

020018

AA 0001 (09-86)

## PERSONAL AUTO POLICY - QUICK REFERENCE

|  |  | Beginning On Page |
|---|---|---|
| **DECLARATIONS PAGES** |  |  |
| Your Name and Address | Your Auto or Trailer |  |
| Policy Period | Coverages and Amounts of Insurance |  |
| QUICK REFERENCE |  | 1 |
| AGREEMENT |  | 2 |
| DEFINITIONS |  | 2 |

**PART A - LIABILITY COVERAGE**

| | | |
|---|---|---|
| Insuring Agreement | Out of State Coverage | 3 |
| Supplementary Payments | Financial Responsibility | |
| Exclusions | Required | |
| Limit of Liability | Other Insurance | |

**PART B - MEDICAL PAYMENTS COVERAGE**

| | | |
|---|---|---|
| Insuring Agreement | Limit of Liability | 5 |
| Exclusions | Other Insurance | |

**PART C - UNINSURED MOTORISTS COVERAGE**

| | | |
|---|---|---|
| Insuring Agreement | Other Insurance | 7 |
| Exclusions | Arbitration | |
| Limit of Liability | | |

**PART D - COVERAGE FOR DAMAGE TO YOUR AUTO**

| | | |
|---|---|---|
| Insuring Agreement | Payment of Loss | 9 |
| Transportation Expenses | No Benefit to Bailee | |
| Exclusions | Other Insurance | |
| Limit of Liability | Appraisal | |

**PART D-1 - TOWING AND LABOR COSTS COVERAGE**

| | | |
|---|---|---|
| Insuring Agreement | Limit of Liability | 11 |

**PART D-2 - RENTAL REIMBURSEMENT**

| | | |
|---|---|---|
| Insuring Agreement | Limit of Liability | 11 |

**PART E - DUTIES AFTER AN ACCIDENT OR LOSS**

| | | |
|---|---|---|
| General Duties | Additional Duties for Uninsured Motorists Coverage | 12 |
| Additional Duties for Coverage for Damage to Your Auto | | |

**PART F - GENERAL PROVISIONS**

| | | |
|---|---|---|
| Bankruptcy | Policy Period and Territory | 12 |
| Changes | Termination | |
| Fraud | Transfer of Your Interest | |
| Legal Action Against Us | in This Policy | |
| Our Right to Recover Payment | Two or More Auto Policies | |

**MEXICAN INSURANCE LIMITED**

|  |  |
|---|---|
|  | 14 |

Includes copyrighted material of Insurance Services Office Inc. with its permission.
Copyright, Insurance Services Office, Inc., 1985

## READ YOUR POLICY CAREFULLY

This policy is a **legal contract** between you (the insured) and us (the company). The policy has been:
- designed for your easy reference.
- simplified, to make it more understandable and easier to read.
- arranged, to better display the available coverages.

This policy itself sets forth, in detail, the rights and obligations of both you and us. IT IS THEREFORE IMPORTANT THAT YOU READ YOUR POLICY CAREFULLY.

AA 0001 (09-86)

020019

AA 0001 (09-86)

**PERSONAL AUTO POLICY**

## AGREEMENT

In return for payment of the premium and subject to all the terms of this policy, we agree with you as follows:

## DEFINITIONS

A. Throughout this policy, "you" and "your" refer to:
 1. The "named insured" shown in the Declarations; and
 2. The spouse if a resident of the same household.
B. "We", "us" and "our" refer to the Company providing this insurance.
C. For purposes of this policy, a private passenger type auto or pickup or van shall be deemed to be owned by a person if leased:
 1. Under a written agreement to that person; and
 2. For a continuous period of at least 6 months.
Other words and phrases are defined. They are in quotation marks when used.
D. "Bodily injury" means bodily harm, sickness or disease, including death that results.
E. "Business" includes trade, profession or occupation.
F. "Family member" means a person related to you by blood, marriage or adoption who is a resident of your household. This includes a ward or foster child.
G. "Occupying" means in, upon, getting in, on, out or off.
H. "Property damage" means physical injury to, destruction of or loss of use of tangible property.
I. "Trailer" means a vehicle designed to be pulled by a:
 1. Private passenger auto; or
 2. Pickup or van.
 It also means a farm wagon or farm implement while towed by a vehicle listed in 1. or 2. above.
J. "Your covered auto" means:
 1. Any vehicle shown in the Declarations.
 2. Any of the following types of vehicles on the date you, or a corporation of which you are the sole owner, become the owner:
 a. a private passenger auto; or
 b. a pickup or van.
 This provision (J.2.) applies only if:
 a. you, or a corporation of which you are the sole owner, acquire the vehicle during the policy period;
 b. you ask us to insure it within 30 days after you, or a corporation of which you are the sole owner, become the owner; and
 c. with respect to a pickup or van, no other insurance policy provides coverage for that vehicle.
 If the vehicle you, or a corporation of which you are the sole owner, acquire replaces one shown in the Declarations, it will have the same coverage as the vehicle it replaced. You must ask us to insure a replacement vehicle within 30 days only if:
 a. you wish to add or continue Coverage for Damage to Your Auto; or
 b. it is a pickup or van used in any "business" other than farming or ranching.
 If the vehicle you, or a corporation of which you are the sole owner, acquire is in addition to any shown in the Declarations, it will have the broadest coverage we now provide for any vehicle shown in the Declarations.
 3. Any "trailer" you, or a corporation of which you are the sole owner, own.
 4. Any auto or "trailer" you, or a corporation of which you are the sole owner, do not own while used as a temporary substitute for any other vehicle described in this definition which is out of normal use because of its:
 a. breakdown; d. loss; or
 b. repair; e. destruction.
 c. servicing;

020020

## PART A - LIABILITY COVERAGE

### INSURING AGREEMENT

A.  We will pay damages for "bodily injury" or "property damage" for which any "insured" becomes legally responsible because of an auto accident. Damages include pre-judgment interest awarded against the "insured". We will settle or defend, as we consider appropriate, any claim or suit asking for these damages. In addition to our limit of liability, we will pay all defense costs we incur. Our duty to settle or defend ends when our limit of liability for this coverage has been exhausted. We have no duty to defend any suit or settle any claim for "bodily injury" or "property damage" not covered under this policy.

B.  "Insured" as used in this Part means:
1.  You and any "family member" for the ownership, maintenance or use, including loading or unloading, of any auto or "trailer".
2.  Any person using, including loading and unloading, "your covered auto". This provision (B.2.) does not apply to any person other than:
   a.  you or any "family member;"
   b.  your employees; or
   c.  a lessee or borrower or any of their employees,
   while moving property to or from a "covered auto".
3.  For "your covered auto," any person or organization but only with respect to legal responsibility for acts or omissions of a person for whom coverage is afforded under this Part.
4.  For any auto or "trailer," other than "your covered auto," any other person or organization but only with respect to legal responsibility for acts or omissions of you or any "family member" for whom coverage is afforded under this Part. This provision (B.4.) applies only if the person or organization does not own or hire the auto or "trailer."

C.  The following are not "insureds" under Part A of the policy:
1.  The United States of America or any of its agencies.
2.  Any person with respect to bodily injury or property damage resulting from the operation of an auto by the person as an employee of the United States Government if the provisions of Section 2679 of Title 28, United States Code (Federal Tort Claims Act), as amended, require the Attorney General of the United States to defend that person in any civil action or proceeding which may be brought for the bodily injury or property damage.

### SUPPLEMENTARY PAYMENTS

In addition to our limit of liability, we will pay on behalf of an "insured:"

1.  Up to $250 for the cost of bail bonds required because of an accident, including related traffic law violations. The accident must result in "bodily injury" or "property damage" covered under this policy.
2.  Premiums on appeal bonds and bonds to release attachments in any suit we defend.
3.  Interest accruing after a judgment is entered in any suit we defend. Our duty to pay interest ends when we offer to pay that part of the judgment which does not exceed our limit of liability for this coverage.
4.  Up to $50 a day for loss of earnings, but not other income, because of attendance at hearings or trials at our request.
5.  Other reasonable expenses incurred at our request.

### EXCLUSIONS

A.  We do not provide Liability Coverage for any person:
1.  Who intentionally causes "bodily injury" or "property damage."
2.  For damage to property owned or being transported by that person.
3.  For damage to property:
   a.  rented to;
   b.  used by; or

AA 0001 (09-86)

020021

   c.   in the care of;
that person.
This exclusion (A.3.) does not apply to damage to a residence or private garage.

4. For "bodily injury" to an employee of that person during the course of employment. This exclusion (A.4.) does not apply to "bodily injury" to a domestic employee unless workers' compensation benefits are required or available for that domestic employee.

5. For that person's liability arising out of the ownership or operation of a vehicle while it is being used to carry persons or property for a fee. This exclusion (A.5.) does not apply to a share-the-expense car pool.

6. While employed or otherwise engaged in the "business" of:

   a.   selling;
   b.   repairing;
   c.   servicing;
   d.   storing; or
   e.   parking;

vehicles designed for use mainly on public highways. This includes road testing and delivery. This exclusion (A.6.) does not apply to the ownership, maintenance or use of "your covered auto" by:

   a.   you;
   b.   any "family member;" or
   c.   any partner, agent or employee of you or any "family member."

7. Maintaining or using any vehicle while that person is employed or otherwise engaged in any "business" (other than farming or ranching) not described in Exclusion A.6. This exclusion (A.7.) does not apply to the maintenance or use of a:

   a.   private passenger auto;
   b.   pickup or van that you own; or
   c.   "trailer" used with a vehicle described in a. or b. above.

8. Using a vehicle without a reasonable belief that that person is entitled to do so.

9. For "bodily injury" or "property damage" for which that person:

   a.   is an insured under a nuclear energy liability policy; or
   b.   would be an insured under a nuclear energy liability policy but for its termination upon exhaustion of its limit of liability.

A nuclear energy liability policy is a policy issued by any of the following or their successors:

   a.   American Nuclear Insurers;
   b.   Mutual Atomic Energy Liability Underwriters; or
   c.   Nuclear Insurance Association of Canada.

B.   We do not provide Liability Coverage for the ownership, maintenance or use of:

1. Any motorized vehicle having fewer than four wheels.

2. Any vehicle,other than "your covered auto," which is:

   a.   owned by you; or
   b.   furnished or available for the regular use of any person designated in the Declarations as a named insured or spouse of such person.

3. Any vehicle, other than "your covered auto," which is:

   a.   owned by an "family member;" or
   b.   furnished or available for the regular use of any "family member."

However, this exclusion (B.3.) does not apply to your maintenance or use of any vehicle which is:

   a.   owned by a "family member;" or
   b.   furnished or available for the regular use of a "family member."

C.   We do not provide Liability Coverage:

1. For bodily injury to any fellow employee of an "insured" arising out of and in the course of his or her employment. This exclusion does not apply to bodily injury to you or any family member's fellow employees.

2. For any person's liability resulting from the handling of property:

   a.   Before it is moved from the place where it is accepted by an "insured" for movement into or onto "your covered auto;" or
   b.   After is is moved from "your covered auto" to the place where it is finally delivered by an "insured."

3. For any person's liability resulting from the movement of property by a mechanical device (other than a hand truck) not attached to "your covered auto."

020022

AA 0001 (09-86)

## LIMIT OF LIABILITY

A.  The limit of liability shown in the Declarations for this coverage is our maximum limit of liability for all damages resulting from any one auto accident. This is the most we will pay regardless of the number of:
1.   "Insureds;"
2.   Claims made;
3.   Vehicles or premiums shown in the Declarations; or
4.   Vehicles involved in the auto accident.
B.  We will apply the limit of liability to provide any separate limits required by law for bodily injury and property damage liability.  However, this provision (B.) will not change our total limit of liability.

## OUT OF STATE COVERAGE

If an auto accident to which this policy applies occurs in any state or province other than the one in which "your covered auto" is principally garaged, we will interpret your policy for that accident as follows:

A.  If the state or province has:
1.   A financial responsibility or similar law specifying limits of liability for "bodily injury" or "property damage" higher than the limit shown in the Declarations, your policy will provide the higher specified limit.
2.   A compulsory insurance or similar law requiring a nonresident to maintain insurance whenever the nonres-ident uses a vehicle in that state or province, your policy will provide at least the required minimum amounts and types of coverage.
B.  No one will be entitled to duplicate payments for the same elements of loss.

## FINANCIAL RESPONSIBILITY

When this policy is certified as future proof of financial responsibility, this policy shall comply with the law to the extent required.

## OTHER INSURANCE

If there is other applicable liability insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide for a vehicle you do not own shall be excess over any other collectible insurance.

## PART B - MEDICAL PAYMENTS COVERAGE

## INSURING AGREEMENT

A.  We will pay reasonable expenses incurred for necessary medical and funeral services because of "bodily injury:"
1.   Caused by accident; and
2.   Sustained by an "insured."
We will pay only those expenses incurred within 3 years from the date of the accident.
B.  "Insured" as used in this Part means:
1.   You or any "family member:"
a.   while "occupying;" or
b.   as a pedestrian when struck by;
a motor vehicle designed for use mainly on public roads or a trailer of any type.
2.   Any other person while "occupying" "your covered auto."

AA 0001 (09-86)

020023

AA 0001 (09-86)

## EXCLUSIONS

We do not provide Medical Payments Coverage for any person for "bodily injury":

1. Sustained while "occupying" any motorized vehicle having fewer than four wheels.
2. Sustained while "occupying" "your covered auto" when it is being used to carry persons or property for a fee. This exclusion (2.) does not apply to a share-the-expense car pool.
3. Sustained while "occupying" any vehicle located for use as a residence or premises.
4. Occurring during the course of employment if workers' compensation benefits are required or available for the "bodily injury."
5. Sustained while "occupying," or when struck by, any vehicle (other than "your covered auto") which is:
   a. owned by you; or
   b. furnished or available for the regular use of any person designated in Declarations as a named insured or the spouse of such person.
6. Sustained while "occupying," or when struck by, any vehicle (other than "your covered auto") which is:
   a. owned by any "family member;" or
   b. furnished or available for the regular use of any "family member."
   However, this exclusion (6.) does not apply to you.
7. Sustained while "occupying" a vehicle without a reasonable belief that that person is entitled to do so.
8. Sustained while "occupying" a vehicle when it is being used in the "business" of an "insured." This exclusion (8.) does not apply to "bodily injury" sustained while "occupying" a:
   a. private passenger auto;
   b. pickup or van that you own; or
   c. "trailer" used with a vehicle described in a. or b. above.
9. Caused by or as a consequence of:
   a. discharge of a nuclear weapon (even if accidental);
   b. war (declared or undeclared);
   c. civil war;
   d. insurrection; or
   e. rebellion or revolution.
10. From or as a consequence of the following, whether controlled or uncontrolled or however caused:
   a. nuclear reaction;
   b. radiation; or
   c. radioactive contamination.

## LIMIT OF LIABILITY

A. The limit of liability shown in the Declarations for this coverage is our maximum limit of liability for each person injured in any one accident. This is the most we will pay regardless of the number of:
1. "Insureds;"
2. Claims made;
3. Vehicles or premiums shown in the Declarations; or
4. Vehicles involved in the accident.
B. Any amounts otherwise payable for expenses under this coverage shall be reduced by any amounts paid or payable for the same expense under Part A or Part C.
C. No payment will be made unless the injured person or that person's legal representative agrees in writing that any payment shall be applied toward any settlement or judgment that person receives under Part A or Part C.

## OTHER INSURANCE

If there is other applicable auto medical payments insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide with respect to a vehicle you do not own shall be excess over any other collectible auto insurance providing payments for medical or funeral expenses.

020024

## PART C - UNINSURED MOTORISTS COVERAGE

### INSURING AGREEMENT

A.  We will pay damages which an "insured" is legally entitled to recover from the owner or operator of an "uninsured motor vehicle" because of "bodily injury:"
    1.  Sustained by an "insured;" and
    2.  Caused by an accident.
The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the "uninsured motor vehicle."
Any judgment for damages arising out of suit brought without our written consent is not binding on us.

B.  "Insured" as used in this Part means:
    1.  You or any "family member."
    2.  Any other person "occupying" "your covered auto."
    3.  Any person for damages that person is entitled to recover because of "bodily injury" to which this coverage applies sustained by a person described in 1. or 2. above.

C.  "Uninsured motor vehicle" means a land motor vehicle or trailer of any type:
    1.  To which no bodily injury liability bond or policy applies at the time of the accident.
    2.  To which a bodily injury liability bond or policy applies at the time of the accident. In this case its limit for bodily injury liability must be less than the minimum limit for bodily injury liability specified by the financial responsibility law of the state in which "your covered auto" is principally garaged.
    3.  Which is a hit and run vehicle whose operator or owner cannot be identified and which hits:
        a.  you or any "family member;"
        b.  a vehicle which you or any "family member" are "occupying;" or
        c.  "your covered auto."
    4.  To which a bodily injury liability bond or policy applies at the time of the accident but the bonding or insuring company:
        a.  denies coverage; or
        b.  is or becomes insolvent.
However, "uninsured motor vehicle" does not include any vehicle or equipment:
    1.  Owned by or furnished or available for the regular use of any person designated in the Declarations as a named insured or any "family member."
    2.  Owned or operated by a self-insurer under any applicable motor vehicle law.
    3.  Owned by any governmental unit or agency.
    4.  Operated on rails or crawler treads.
    5.  Designed mainly for use off public roads while not on public roads.
    6.  While located for use as a residence or premises.

### EXCLUSIONS

A.  We do not provide Uninsured Motorists Coverage for "bodily injury" sustained by any person:
    1.  While "occupying," or when struck by, any motor vehicle owned by you or any "family member" which is not insured for this coverage under this policy. This includes a trailer of any type used with that vehicle.
    2.  If that person or the legal representative settles the "bodily injury" claim without our consent.
    3.  While "occupying" "your covered auto" when it is being used to carry persons or property for a fee. This exclusion (A.3.) does not apply to a share-the-expense car pool.
    4.  Using a vehicle without a reasonable belief that that person is entitled to do so.

B.  This coverage shall not apply directly or indirectly to benefit any insurer or self-insurer under any of the following or similar law:
    1.  workers' compensation law; or
    2.  disability benefits law.

PPA 0008899321-1    02/13/07        INSURED COPY        R    

        78    958

020025

## LIMIT OF LIABILITY

A.  The limit of liability shown in the Declarations for this coverage is our maximum limit of liability for all damages resulting from any one accident. This is the most we will pay regardless of the number of:
1.  "Insured's;"
2.  Claims made;
3.  Vehicles or premiums shown in the Declarations; or
4.  Vehicles involved in the accident.

B.  Any amount otherwise payable for damages under this coverage shall be reduced by all sums:
1.  Paid because of the "bodily injury" by or on behalf of persons or organizations who may be legally responsible. This includes all sums paid under Part A; and
2.  Paid or payable because of the "bodily injury" under any of the following or similar law:
   a.  workers' compensation law; or
   b.  disability benefits law.

C.  Any payment under this coverage will reduce any amount that person is entitled to recover for the same damages under Part A.

## OTHER INSURANCE

If there is other applicable similar insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide with respect to a vehicle you do not own shall be excess over any other collectible insurance.

## ARBITRATION

A.  If we and an "insured" do not agree:
1.  Whether that person is legally entitled to recover damages under this Part; or
2.  As to the amount of damages;
either party may make a written demand for arbitration. In this event, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction.

B.  Each party will:
1.  Pay the expenses it incurs; and
2.  Bear the expenses of the third arbitrator equally.

C.  Unless both parties agree otherwise, arbitration will take place in the county in which the "insured" lives. Local rules of law as to procedure and evidence will apply. A decision agreed to by two of the three arbitrators will be binding as to:
1.  Whether the "insured" is legally entitled to recover damages; and
2.  The amount of damages. This applies only if the amount does not exceed the minimum limit for bodily injury liability specified by the financial responsibility law of the state in which "your covered auto" is principally garaged. If the amount exceeds that limit, either party may demand the right to a trial. This demand must be made within 60 days of the arbitrator's decision. If this demand is not made, the amount of damages agreed to by the arbitrators will be binding.

020026

AA 0001 (09-86)

## PART D - COVERAGE FOR DAMAGE TO YOUR AUTO

### INSURING AGREEMENT

A.  We will pay for direct and accidental loss to "your covered auto" or any "non-owned auto," including their equipment, minus any applicable deductible shown in the Declarations. We will pay for loss to "your covered auto" caused by:
1.  Other than "collision" only if the Declarations indicate that Other Than Collision Coverage is provided for that auto.
2.  "Collision" only if the Declarations indicate that Collision Coverage is provided for that auto.
If there is a loss to a "non-owned auto," we will provide the broadest coverage applicable to any "your covered auto" shown in the Declarations.

B.  "Collision" means the upset of "your covered auto" or its impact with another vehicle or object.
Loss caused by the following is considered other than "collision:"

1.  Missiles or falling objects;
2.  Fire;
3.  Theft or larceny;
4.  Explosion or earthquake;
5.  Windstorm;
6.  Hail, water or flood;
7.  Malicious mischief or vandalism;
8.  Riot or civil commotion;
9.  Contact with bird or animal; or
10. Breakage of glass.

If breakage of glass is caused by a "collision," you may elect to have it considered a loss caused by "collision."

C.  "Non-owned auto" means any private passenger auto, pickup, van or "trailer" not owned by or furnished or available for the regular use of you or any "family member" while in the custody of or being operated by you or any "family member." However, "non-owned auto" does not include any vehicle used as a temporary substitute for a vehicle you own which is out of normal use because of its:

1.  Breakdown;
2.  Repair;
3.  Servicing;
4.  Loss; or
5.  Destruction.

### TRANSPORTATION EXPENSES

In addition, we will pay up to $15 per day, to a maximum of $450 for transportation expenses incurred by you. This applies only in the event of the total theft of "your covered auto." We will pay only tranportation expenses incurred during the period:

1.  Beginning 48 hours after the theft; and
2.  Ending when "your covered auto" is returned to use or we pay for its loss.

### EXCLUSIONS

We will not pay for:

1.  Loss to "your covered auto" which occurs while it is used to carry persons or property for a fee. This exclusion (1.) does not apply to a share-the-expense car pool.
2.  Damage due and confined to:
    a.  wear and tear;
    b.  freezing;
    c.  mechanical or electrical breakdown or failure; or
    d.  road damage to tires.
    This exclusion (2.) does not apply if the damage results from the total theft of "your covered auto."
3.  Loss due to or as a consequence of:
    a.  radioactive contamination;
    b.  discharge of any nuclear weapon (even if accidental);
    c.  war (declared or undeclared);
    d.  civil war;
    e.  insurrection; or
    f.  rebellion or revolution.

AA 0001 (09-86)

020027

AA 0001 (09-86)

4. Loss to equipment designed for the reproduction of sound. This exclusion (4.) does not apply if the equipment is permanently installed in "your covered auto" or any "non-owned auto".

5. Loss to tapes, records or other devices for use with equipment designed for the reproduction of sound.

6. Loss to a camper body or "trailer" you own which is not shown in the Declarations. This exclusion (6.) does not apply to a camper body or "trailer" you:
   a. acquire during the policy period; and
   b. ask us to insure within 30 days after you become the owner.

7. Loss to any "non-owned auto" or any vehicle used as a temporary substitute for a vehicle you own, when used by you or any "family member" without a reasonable belief that you or that "family member" are entitled to do so.

8. Loss to:
   a. business or office equipment; or
   b. articles which are sales samples or used in exhibitions.

9. Loss to any of the following or their accessories:
   a. citizens band radio;
   b. two way mobile radio;
   c. telephone; or
   d. scanning monitor receiver.
   This exclusion (9.) does not apply if the equipment is permanently installed in the opening of the dash or console of "your covered auto" or any "non-owned auto". This opening must be normally used by the auto manufacturer for the installation of a radio.

10. Loss to equipment designed or used for the detection or location of radar.

11. Loss to any "non-owned auto" being maintained or used by any person while employed or otherwise engaged in the "business" of:
   a. selling;
   b. repairing;                                          d. storing; or
   c. servicing;                                          e. parking;
   vehicles designed for use on public highways. This includes road testing and delivery.

12. Loss to any "non-owned auto" being maintained or used by any person while employed or otherwise engaged in any "business" not described in exclusion 11. This exclusion (12.) does not apply to the maintenance or use by you or any "family member" of a "non-owned auto" which is a private passenger auto or "trailer".

## LIMIT OF LIABILITY

A. Our limit of liability for loss will be the lesser of the:
   1. Actual cash value of the stolen or damaged property; or
   2. Amount necessary to repair or replace the property.
   However, the most we will pay for loss to any "non-owned auto" which is a "trailer" is $500.

B. An adjustment for depreciation and physical condition will be made in determining actual cash value at the time of loss.

## PAYMENT OF LOSS

We may pay for loss in money or repair or replace the damaged or stolen property. We may, at our expense, return any stolen property to:

   1. You; or
   2. The address shown in this policy.

If we return stolen property we will pay for any damage resulting from the theft. We may keep all or part of the property at an agreed or appraised value.

AA 0001 (09-86)

PPA 0008899321-1         02/13/07                    INSURED COPY                    R            **Page 10 of 15**

78      961

020028

AA 0001 (09-86)

## NO BENEFIT TO BAILEE

This insurance shall not directly or indirectly benefit any carrier or other bailee for hire.

## OTHER INSURANCE

If other insurance also covers the loss we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide with respect to a "non-owned auto" or any vehicle used as a temporary substitute for a vehicle you own shall be excess over any other collectible insurance.

## APPRAISAL

A. If we and you do not agree on the amount of loss, either may demand an appraisal of the loss. In this event each party will select a competent appraiser. The two appraisers will select an umpire. The appraisers will state separately the actual cash value and the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:
   1. Pay its chosen appraiser; and
   2. Bear the expenses of the appraisal and umpire equally.
B. We do not waive any of our rights under this policy by agreeing to an appraisal.

## PART D-1 - TOWING AND LABOR COSTS COVERAGE

### INSURING AGREEMENT

We will pay for towing and labor costs incurred each time "your covered auto" or any "non-owned auto" is disabled. The labor must be performed at the place of disablement.

### LIMIT OF LIABILITY

Our maximum limit of liability for loss is $50 for each time "your covered auto" is disabled. However, we will pay for towing and labor costs only if the Declarations indicate that Towing and Labor Costs Coverage is provided.

## PART D-2 - RENTAL REIMBURSEMENT

### INSURING AGREEMENT

When there is a loss to one of "your covered autos" we will reimburse you for expenses you incur to rent a substitute auto. This coverage applies only if:

   1. The auto is withdrawn from normal use for more than 24 hours, and
   2. The loss is caused by "collision" or covered under Part D of this policy.
   3. The Declarations indicate that  Rental Reimbursement Coverage is provided.

However, this coverage does not apply when there is a total theft of the auto.

AA 0001 (09-86)

PPA 0008899321-1          02/13/07                    INSURED COPY              R          **Page 11 of 15**

                                                                                          78      962

020029

AA 0001 (09-86)

## LIMIT OF LIABILITY

Our payment will be limited to that period of time reasonably required to repair or replace the auto. We will pay up to $15 per day to a maximum of $450.

## PART E - DUTIES AFTER AN ACCIDENT OR LOSS

A. We must be notified promptly of how, when and where the accident or loss happened. Notice should also include the names and addresses of any injured persons and of any witnesses.
B. A person seeking any coverage must:
  1. Cooperate with us in the investigation, settlement or defense of any claim or suit.
  2. Promptly send us copies of any notices or legal papers received in connection with the accident or loss.
  3. Submit, as often as we reasonably require:
    a. to physical exams by physicians we select. We will pay for these exams.
    b. to examination under oath and subscribe the same.
  4. Authorize us to obtain:
    a. medical reports; and
    b. other pertinent records.
  5. Submit a proof of loss when required by us.
C. A person seeking Uninsured Motorists Coverage must also:
  1. Promptly notify the police if a hit and run driver is involved.
  2. Promptly send us copies of the legal papers if a suit is brought.
D. A person seeking Coverage for Damage to Your Auto must also:
  1. Take reasonable steps after loss to protect "your covered auto" and its equipment from further loss. We will pay reasonable expenses incurred to do this.
  2. Promptly notify the police if "your covered auto" is stolen.
  3. Permit us to inspect and appraise the damaged property before its repair or disposal.

## PART F - GENERAL PROVISIONS

## BANKRUPTCY

Bankruptcy or insolvency of the "insured" shall not relieve us of any obligations under this policy.

## CHANGES

This policy contains all the agreements between you and us. Its terms may not be changed or waived except by endorsement issued by us. If a change requires a premium adjustment, we will adjust the premium as of the effective date of change.
We may revise this policy form to provide more coverage without additional premium charge. If we do this your policy will automatically provide the additional coverage as of the date the revision is effective in your state.

## FRAUD

We do not provide coverage for any "insured" who has made fraudulent statements or engaged in fraudulent conduct in connection with any accident or loss for which coverage is sought under this policy.

## LEGAL ACTION AGAINST US

**AA 0001 (09-86)**

020030

A. No legal action may be brought against us until there has been full compliance with all the terms of this policy. In addition, under Part A, no legal action may be brought against us until:
   1. We agree in writing that the "insured" has an obligation to pay; or
   2. The amount of that obligation has been finally determined by judgment after trial.
B. No person or organization has any right under this policy to bring us into any action to determine the liability of an "insured."

## OUR RIGHT TO RECOVER PAYMENT

A. If we make a payment under this policy and the person to or for whom payment was made has a right to recover damages from another we shall be subrogated to that right. That person shall do:
   1. Whatever is necessary to enable us to exercise our rights; and
   2. Nothing after loss to prejudice them.
   However, our rights in this paragraph (A.) do not apply under Part D, against any person using "your covered auto" with a reasonable belief that that person is entitled to do so.
B. If we make a payment under this policy and the person to or for whom payment is made recovers damages from another, that person shall:
   1. Hold in trust for us the proceeds of the recovery; and
   2. Reimburse us to the extent of our payment.

## POLICY PERIOD AND TERRITORY

A. This policy applies only to accidents and losses which occur:
   1. During the policy period as shown in the Declarations; and
   2. Within the policy territory.
   The policy territory is:
   1. The United States of America, its territories or possessions;
   2. Puerto Rico; or
   3. Canada.
   This policy also applies to loss to, or accidents involving, "your covered auto" while being transported between their ports.

## TERMINATION

A. **Cancellation.**  This policy may be cancelled during the policy period as follows:
   1. The named insured shown in the Declarations may cancel by:
      a. returning this policy to us; or
      b. giving us advance written notice of the date cancellation is to take effect.
   2. We may cancel by mailing to the named insured shown in the Declarations at the address shown in this policy:
      a. at least 10 days notice:
         1) if cancellation is for nonpayment of premium; or
         2) if notice is mailed during the first 60 days this policy is in effect and this is not a renewal or continuation policy; or
      b. at least 20 days notice in all other cases.
   3. After this policy is in effect for 60 days, or if this is a renewal or continuation policy, we will cancel only:
      a. for nonpayment of premium; or
      b. if your driver's license or that of:
         1) any driver who lives with you; or
         2) any driver who customarily uses "your covered auto;"
      has been suspended or revoked.  This must have occurred:
         1) during the policy period; or
         2) since the last anniversary of the original effective date if the policy period is other than 1 year.

020031

AA 0001 (09-86)

B. **Nonrenewal.** If we decide not to renew or continue this policy, we will mail notice to the named insured shown in the Declarations at the address shown in this policy. Notice will be mailed at least 20 days before the end of the policy period.

C. **Automatic Termination.** If we offer to renew or continue and you or your representative do not accept, this policy will automatically terminate at the end of the current policy period. Failure to pay the required renewal or continuation premium when due shall mean that you have not accepted our offer.

If you obtain other insurance on "your covered auto," any similar insurance provided by this policy will terminate as to that auto on the effective date of the other insurance.

D. **Other Termination Provisions.**
 1. If the law in effect in your state at the time this policy is issued, renewed or continued:
 a. requires a longer notice period;
 b. requires a special form of or procedure for giving notice; or
 c. modifies any of the stated termination reasons;
 we will comply with those requirements.
 2. We may deliver any notice instead of mailing it. Proof of mailing of any notice shall be sufficient proof of notice.
 3. If this policy is cancelled, you may be entitled to a premium refund. If so, we will send you the refund. The premium refund, if any, will be computed according to our manuals. However, making or offering to make the refund is not a condition of cancellation.
 4. The effective date of cancellation stated in the notice shall become the end of the policy period.

## TRANSFER OF YOUR INTEREST IN THE POLICY

A. Your rights and duties under this policy may not be assigned without our written consent. However, if a named insured shown in the Declarations dies, coverage will be provided for:
 1. The surviving spouse if resident in the same household at the time of death. Coverage applies to the spouse as if a named insured shown in the Declarations; and
 2. The legal representative of the deceased person as if a named insured shown in the Declarations. This applies only with respect to the representative's legal responsibility to maintain or use "your covered auto."
B. Coverage will only be provided until the end of the policy period.

## TWO OR MORE AUTO POLICIES

If this policy and any other auto insurance policy issued to you by us apply to the same accident, the maximum limit of our liability under all the policies shall not exceed the highest applicable limit of liability under any one policy.

## MEXICAN INSURANCE LIMITED

## WARNING - MEXICAN AUTOMOBILE LIABILITY INSURANCE

An automobile accident in the Republic of Mexico is a criminal offense as well as a civil matter. If you are found guilty of causing the accident, your auto is impounded and you can also be detained. Unless you have automobile liability and property damage insurance written by a Mexican Insurance Company, you may spend many hours or days in jail if you have an accident in Mexico. Insurance coverage should be secured from a company licensed under the laws of Mexico to write such insurance in order to avoid complications and some other penalties possible under the laws of Mexico, including the possible impoundment of your auto.

AA 0001 (09-86)

020032

AA 0001 (09-86)

**LIMITED MEXICAN COVERAGE**

The coverage provided under Parts A and D of the policy also applies to accidents and losses which occur during the policy period as shown in the Declarations, and within that part of the Republic lying not more than 25 statute miles from the boundary line of the United States of America. However, any original suit for damages for bodily injury or property damage must be brought against you within the United States of America. This coverage shall be excess over any other available insurance.

020033

## AMCO INSURANCE COMPANY

**IN WITNESS WHEREOF** the Company has caused this policy to be signed by its president and secretary and countersigned on the declarations page by a duly authorized representative of the company.

SECRETARY

PRESIDENT

## ALLIED PROPERTY AND CASUALTY INSURANCE COMPANY

**IN WITNESS WHEREOF** the Company has caused this policy to be signed by its president and secretary and countersigned on the declarations page by a duly authorized representative of the company.

SECRETARY

PRESIDENT

## DEPOSITORS INSURANCE COMPANY

**IN WITNESS WHEREOF** the Company has caused this policy to be signed by its president and secretary and countersigned on the declarations page by a duly authorized representative of the company.

SECRETARY

PRESIDENT

AA 0001A (10-98)

PPA 0008899321-1      02/13/07                INSURED COPY                R              78      967

AA 0007 (11-92)

# CHANGES PROVISION

PART F - GENERAL PROVISIONS

The CHANGES Provision under Part F is replaced by the following:

CHANGES

A.  Premium Changes

The premium for this policy is based on information we have received from you or other sources.  You agree:

1.  that if any of this information material to the development of the policy premium is incorrect, incomplete or changed, we may adjust the premium accordingly during the policy period.

2.  to cooperate with us in determining if this information is correct and complete, and to advise us of changes in this information.

Any adjustment of your premium will be made using the rules in effect at the time of the change.

Premium adjustment may be made as the result of a change in:

1.  autos insured by the policy, including changes in use.

2.  drivers, driver's age or driver's marital status.

3.  coverages or coverage limits.

4.  rating territory.

5.  eligibility for discounts or other premium credits.

B.  Coverage Changes

We may revise your policy coverages to provide more protection without additional premium charge.  If we do this and you have the coverage which is changed, your policy will automatically provide the additional coverage as of the date the revision is effective in your state.  Otherwise, this policy contains all of the coverage agreements between you and us.  Its terms may not be changed or waived except by an endorsement issued by us.

**ALLIED EXTRA COVERAGES**

When you have in effect a Home Enterprise policy, a policy of Homeowners Insurance (Form HO-2, 3 or 6) or a Farm Property policy covering your "residence premises", as defined in the Farm Property policy with an ALLIED Group Company, ALLIED Extra Coverages will apply in accordance with the following provisions:

**Emergency Lockout Coverage**

We will reimburse you up to $50 for reasonable expense incurred for the services of a locksmith to gain entry into "your covered auto" or "dwelling" subject to these provisions:

1. Your door key or key entry pad has been lost, stolen or locked in "your covered auto" or "dwelling" and you are unable to enter such auto or dwelling; or

2. Your key or key entry pad has been lost or stolen and you have changed the lock to prevent an unauthorized entry; and

3. Original copies of receipts for services of a locksmith must be provided before reimbursement is payable.

For the purposes of this coverage:

1. "Your covered auto" shall mean any auto described in the Declarations for which a premium charge indicates either Part A - LIABILITY COVERAGE or Part D - COVERAGE FOR DAMAGE TO YOUR COVERED AUTO applies.

2. "Dwelling" shall mean the residence premises insured under your Home Enterprise policy, Homeowners Insurance (Form HO-2, 3 or 6), or a Farm Property policy covering your "residence premises", as defined in the Farm Property policy.

**Special Deductible Provision**

If the same event results in direct or accidental loss to any "your covered auto" and to property insured under your Home Enterprise policy, Homeowners Insurance (Forms HO-2, 3 or 6) or a Farm Property policy covering your "residence premises", as defined in the Farm Property policy, the largest deductible applicable to any such auto or property sustaining loss or damage shall apply only once to all covered loss.

This provision applies only if the combined loss or damage exceeds the higher of the applicable deductibles.

The application of this provision shall not serve to reduce your recovery to less than the amount you would have received under individual policies.

For the purpose of this coverage "your covered auto" shall mean any auto described in the Declarations for which a premium charge indicates Part D - COVERAGE FOR DAMAGE TO YOUR COVERED AUTO applies.

**Air Bag Replacement Coverage**

We will pay for reasonable expenses incurred in replacing an air bag in "your covered auto" that deploys without the auto being involved in an accident.

For the purpose of this coverage "your covered auto" shall mean any auto described in the Declarations for which a premium charge indicates Part D - COVERAGE FOR DAMAGE TO YOUR COVERED AUTO applies.

This coverage applies only if you submit proper receipts for expenses claimed under this coverage.

**Auto Death Indemnity**

In the event of your death we shall pay the amount of $10,000 in accordance with these provisions:

AA 0008A (11-99)

020036

1. Death must result directly and independently of all other causes from "bodily injury" caused by accident and sustained by you while "occupying" "your covered auto".

2. You must be wearing a seat belt at the time of the accident.

3. If "your covered auto" is a motorcycle, you must be wearing a helmet at the time of the accident.

4. Death must occur within 90 days after the accident.

For the purpose of this coverage "your covered auto" shall mean any auto described in the Declarations for which a premium charge indicates Part A - LIABILITY COVERAGE applies.

This insurance does not apply to:

1. Loss caused by or resulting from disease except pus forming infection which shall occur through "bodily injury" to which this insurance applies.

2. Suicide, sane or insane, or to any attempt thereat.

3. Death due to war, whether or not declared, civil war, insurrection, rebellion or revolution, or to any act or condition incident to any of the foregoing.

The following Conditions will apply:

1. Policy Provisions: None of the Insuring Agreements, Exclusion or Conditions of the policy shall apply to the insurance afforded by this coverage except Part F - GENERAL PROVISIONS entitled "Policy Period and Territory", "Fraud", "Changes", "Legal Action Against Us" and "Termination".

2. Notice of Claim: When loss covered hereunder occurs, written notice thereof shall be given by the beneficiary, or someone on his or her behalf, to us or any of our authorized agents as soon as practicable.

3. Proof of Claim; Medical Reports: As soon as practicable, the beneficiary or someone on his or her behalf, shall give us written proof claim, under oath if required; and shall after each request from us execute authorization to enable us to obtain medical reports and copies of records.

   Proof of claim shall be made upon forms furnished by us unless we shall have failed to furnish such forms within 15 days after receiving notice of claim.

4. Payment of Death Indemnity; Autopsy: If the decedent person be survived by a spouse who was a resident of the same household at the time of the accident, this benefit is payable to such spouse; otherwise, this benefit is payable to the decedent person's estate.

   We shall have the right and opportunity to make an autopsy where it is not forbidden by law.

AA 0073 (06-97)

## WAIVER OF COLLISION DEDUCTIBLE

The following provision is added to Part D - Coverage For Damage To Your Auto:

**WAIVER OF COLLISION DEDUCTIBLE**

When there is a loss to "your covered auto" insured for Collision Coverage under this policy, we will pay the full Collision deductible if:

1. The loss involves an "uninsured motor vehicle", as that term is defined in Items 1. and 4. of the "uninsured motor vehicle" definition in the Uninsured Motorists Coverage endorsement.

2. You are legally entitled to recover the full amount of the loss from the owner or operator of the "uninsured motor vehicle"; and

3. A specific premium charge in the Declarations indicates that the Waiver of Collision Deductible provision applies to that vehicle.

Subject to the above, if you are legally entitled to recover only a percentage of the loss, we will pay that percentage of your deductible. However, if the amount of the loss is less than your deductible, we will pay the percentage of the loss you are legally entitled to recover.

In no event will we pay more than the amount of the loss.

The Arbitration and Duties After An Accident Or Loss provisions on the Uninsured Motorists Coverage endorsement apply to the Waiver of Collision Deductible provision.

AA 0073 (06-97)

PPA 0008899321-1          02/13/07                    **INSURED COPY**                    R              78      971

020038

AA 0078 (09-95)

**RENTAL REIMBURSEMENT/TRANSPORTATION EXPENSES**

The provisions and exclusions that apply to Parts D and D-2 also apply to this endorsement except as changed by this endorsement.

When there is a loss to one of "your covered autos" described in the Declarations for which a specific premium charge indicates that Rental Reimbursement/Transportation Expenses coverage is afforded.

A.   Under Part D-2 Rental Reimbursement we will reimburse you for expenses you incur to rent a substitute auto. This coverage applies only if:

1.   The auto is withdrawn from use for more than 24 hours, and

2.   The loss is caused by "collision", or covered under Part D of this policy.

However, this coverage does not apply when there is a total theft of the auto.

Our payment will be limited to that period of time reasonably required to repair or replace the auto.  We will pay up to $30 per day to a maximum of $900.

B.   The Transportation Expenses provision of Part D is replaced by the following:

In addition, we will pay up to $30 per day, to a maximum of $900, for transportation expenses incurred by you. This applies only in the event of the total theft of "your covered auto".  We will pay only transportation expenses incurred during the period:

1.   Beginning 48 hours after the theft; and

2.   Ending when "your covered auto" is returned to use or we pay for its loss.

This endorsement must be attached to the Change Endorsement when issued after the policy is written.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Copyright, Insurance Services Office, Inc., 1986

AA 0078 (09-95)

PPA 0098899321-1       02/13/07           INSURED COPY              R            78      972

020039

AA 0169 (12-99)

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**AMENDMENT OF POLICY PROVISIONS - CALIFORNIA**

**I. DEFINITIONS**

   A. Paragraph A. is replaced by the following:

      A. Throughout this policy, "you" and "your" refer to:

         1. Any "named insured" shown in the Declarations; and

         2. Any spouse if a resident of the same household.

   B. Paragraph J. is amended as follows:

      1. Item 1. is replaced by the following:

         J. "Your covered auto" means:

            1. Any vehicle shown in the Declarations.

            This provision does not apply to:

               a. A vehicle shown in the Declarations after ownership of that vehicle has been transferred to another person or organization other than another "family member" by you, a corporation of which you are the sole owner, or a "family member".

               b. A vehicle shown in the Declarations that you, a corporation of which you are the sole owner, or a "family member" have been leasing, after the leasing agreement has been terminated, unless ownership of that vehicle is transferred by the lessor, to you, a corporation of which you are the sole owner or a "family member".

      2. The following is added to Item 2:

         c. A motor home.

      3. Item 4. is replaced by the following:

         4. Any auto, motor home or "trailer" you, or a corporation of which you are the sole owner, do not own while used as a temporary substitute for any other vehicle described in this definition which is out of normal use because of its:

            a. Breakdown;    d. Loss; or

            b. Repair;       e. Destruction.

            c. Servicing;

   C. The following definition is added:

      K. "Diminution in value" means the actual or perceived loss in market or resale value which results from a direct and accidental loss.

**II. PART A - LIABILITY COVERAGE** Part A is amended as follows:

   A. The following exclusions are added.

      1. We do not provide Liability Coverage for "bodily injury" to:

         a. A "permissive user", or

020040

AA 0169 (12-99)

    b.   Any person who is related by blood, marriage or adoption to a "permissive user" and who is a member of the "permissive user's" household.

This exclusion does not apply to you or any "family member".

For the purposes of this exclusion, "permissive user" is defined as any person using, including loading and unloading, "your covered auto" with a reasonable belief that that person is entitled to do so.

   2.   We do not provide Liability Coverage for "bodily injury" to you or any "family member" whenever the ultimate benefits of that indemnification accrue directly to you or any "family member".

B.   The Other Insurance provision is replaced by the following:

**OTHER INSURANCE**

If there is other applicable liability insurance:

   1.   Any insurance we provide for a vehicle you do not own shall be excess over any other collectible insurance if the vehicle is insured under a policy affording coverage to a named insured engaged in the "business" of:

| | | | |
|---|---|---|---|
| a. | Selling; | e. | Testing; |
| b. | Repairing; | f. | Road testing; |
| c. | Servicing; | g. | Parking; or |
| d. | Delivering; | h. | Storing; |

motor vehicles. This applies only if an "insured":

   a.   Is operating the vehicle; and

   b.   Is neither the person engaged in such "business" nor that person's employee or agent.

   2.   Any insurance we provide for a vehicle you own shall be excess of that of:

   a.   A person engaged in the business of:

| | | | |
|---|---|---|---|
| 1) | Selling; | 5) | Testing; |
| 2) | Repairing; | 6) | Road testing; |
| 3) | Servicing; | 7) | Parking; or |
| 4) | Delivering; | 8) | Storing; |

motor vehicles, if the accident occurs while the vehicle is being operated by that person or that person's employee or agent; or

   b.   An owner, tenant or lessee of premises on which loss arising out of the loading or unloading of the vehicle occurs.

   3.   We will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits.

**III.  PART B - MEDICAL PAYMENTS COVERAGE**

Part B is amended as follows:

A.   Paragraph C. of the limit of Liability provision of Part B is replaced by the following:

AA 0169 (12-99)

020041

C.  No payment will be made unless the injured person or that person's legal representative agrees in writing that any payment shall be applied toward any settlement or judgment that person receives under Part A.

B.  The Other Insurance provision is replaced by the following:

**OTHER INSURANCE**

Any payment we make under this coverage to an "insured" shall be excess over:

1.  Other available valid and collectible automobile medical payments insurance;

2.  Premises insurance affording benefits for medical expenses;

3.  Individual, blanket or group accident, disability or hospitalization insurance;

4.  Any medical, surgical, hospital or funeral services benefit or reimbursement plan;

5.  Any health maintenance organization or preferred provider organization plan; or

6.  Any benefits paid or payable under the provisions of any workers' compensation law, disability benefits or any similar law.

## IV. PART D - COVERAGE FOR DAMAGE TO YOUR AUTO

Part D is amended as follows:

A.  The Definition of "non-owned auto" is replaced by the following:

C.  "Non-owned auto" means any private passenger auto, pickup, van, motor home, or "trailer" not owned by or furnished or available for the regular use of you or any "family member" while in the custody of or being operated by you or any "family member". However, "non-owned auto" does not include any vehicle used as a temporary substitute for a vehicle you own which is out of normal use because of its:

1.  Breakdown;

2.  Repair;

3.  Servicing;

4.  Loss; or

5.  Destruction.

B.  The following EXCLUSION is added:

13.  We will not pay for:
Loss to "your covered auto" or any "non-owned auto" due to "diminution in value".

C.  The following is added to the Payment of Loss provision:

If we have paid a loss for damage to "your covered auto", we will take appropriate deductions from any payment due you for any subsequent loss for damage to the same covered auto, unless you furnish us with proof that the prior damage has been repaired.

## V. PART F - GENERAL PROVISIONS

Part F is amended as follows:

A.  The Our Right to Recover Payment provision is amended as follows:

**OUR RIGHT TO RECOVER PAYMENT**

Paragraph A of this provision does not apply to Part B.

B.  The Termination provision is replaced by the following:

**AA 0169 (12-99)**

020042

AA 0169 (12-99)

## TERMINATION

**Cancellation.** This policy may be cancelled during the policy period as follows:

1. The named insured shown in the Declarations may cancel by:

   a. Returning this policy to us; or

   b. Giving us advance written notice of the date cancellation is to take effect.

2. We may cancel by mailing to the named insured shown in the Declarations at the last known address:

   a. At least 10 days notice if cancellation is for nonpayment of premium; or

   b. At least 20 days notice in all other cases.

3. If this policy has been in effect for less than 60 days and it is not a renewal or continuation policy, we will cancel only:

   a. For nonpayment of premium;

   b. In the event of fraud or material misrepresentation affecting the policy or insured; or

   c. If there has been a substantial increase in the hazard insured against.

4. After this policy has been in effect for 60 days, or if this is a renewal or continuation policy, we will cancel only for the reasons as listed in Paragraph 3. In addition to these reasons, and not as a limitation thereof, we will also cancel:

   a. If your driver's license or that of:

      1) Any driver who lives with you; or

      2) Any driver who customarily uses "your covered auto";

      has been suspended or revoked. This must have occurred:

      1) During the policy period; or

      2) If this policy is a renewal or continuation, during its policy period or the 180 days immediately preceding its effective date.

   b. In the event of discovery of fraud by you in pursuing a claim under the policy provided that we do not rescind the policy.

   c. In the event of discovery of material misrepresentation of any of the following information concerning you or any resident of your household who customarily operates a "your covered auto":

      1) Safety record;

      2) Annual miles driven in prior years;

      3) Number of years of driving experience;

      4) Record of prior auto insurance claims, if any; or

      5) Any other factor found by the commissioner to have a substantial relationship to the risk of loss.

**Nonrenewal.** If we decide not to renew or continue this policy we will mail notice to the named insured shown in the Declarations at the address shown in this policy. Notice will be mailed at least 30 days before the end of the policy period. We will only nonrenew this policy if one or more of the reasons as listed in Paragraphs 3. or 4. of Cancellation exists.

AA 0169 (12-99)

020043

AA 0169 (12-99)

**Automatic Termination.** If we offer to renew or continue and you or your representative do not accept, this policy will automatically terminate at the end of the current policy period. Failure to pay the required renewal or continuation premium when due shall mean that you have not accepted our offer.

If you obtain other insurance on "your covered auto", any similar insurance provided by this policy will terminate as to that auto on the effective date of the other insurance.

**Other Termination Provisions.**

1. We may deliver any notice instead of mailing it. Proof of mailing of any notice shall be sufficient proof of notice.

2. If this policy is cancelled, you may be entitled to a premium refund. If so, we will send you the refund. The premium refund, if any, will be computed according to our manuals. However, making or offering to make the refund is not a condition of cancellation.

3. The effective date of cancellation stated in the notice shall become the end of the policy period.

This endorsement must be attached to the Change Endorsement when issued after the policy is written.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Copyright, Insurance Services Office, Inc. 1991

AA 0169 (12-99)

PPA 0008899321-1        02/13/07                  INSURED COPY              R              Page 5 of 5

78      977

020044

AA 0170 (03-98)

## AMENDMENT OF LIMITS OF LIABILITY
### REDUCED LIMITS FOR PERSONS OTHER THAN YOU OR FAMILY MEMBERS

The Limit of Liability provision in Part A – Liability Coverage is replaced by the following:

**LIMIT OF LIABILITY**

The limits of liability for you and "family members" and persons designated in the Schedule are different than for other persons.

Subject to the limit of liability as determined by paragraphs A and B below, the limit of Bodily Injury Liability shown in the Declarations for this coverage for each accident is the maximum amount we will pay on behalf of all "insureds" for all damages for "bodily injury" resulting from any one accident.

A.   Limit of Liability For You, Any "Family Member" and for Persons Designated in the Schedule

The limit of liability shown in the Declarations for each person for Bodily Injury Liability Coverage is the maximum amount we will pay on behalf of you or any "family member" or any person designated in the Schedule of this Endorsement for "bodily injury" sustained by any person in any one accident.  That maximum amount includes any claim of other persons arising out of that "bodily injury".

Subject to this limit for each person, the limit of liability shown in the Declarations for each accident for Bodily Injury Liability Coverage is the maximum limit of liability for all damages for "bodily injury" resulting from any one accident.

The limit of liability shown in the Declarations for each accident for Property Damage Liability Coverage is the maximum we will pay on behalf of you or any "family member" or any person designated in the Schedule of this Endorsement for all "property damage" resulting from any one accident.

B.   Limit of Liability For Any "Insured" Other Than You, or A "Family Member" or A Person Designated in the Schedule

The maximum amount we will pay on behalf of any "insured" other than you or a "family member" or any person designated in the Schedule on this Endorsement for "bodily injury" sustained by any one person in any one accident is $15,000. That maximum amount includes any claim of other persons arising out of that "bodily injury".

Subject to this limit for each person, the maximum amount we will pay on behalf of any "insured" other than you or a "family member" or any person designated in the Schedule in this Endorsement for all damages for "bodily injury" resulting from any one accident is $30,000.

The maximum amount we will pay on behalf of any "insured" other than you or a "family member" or any person designated in the Schedule in this Endorsement for all "property damage" resulting from any one accident is $5,000.

C.   The limit of liability determined by paragraphs A or B above is the most we will pay regardless of the number of:

1.   "Insureds";

2.   Claims made;

3.   Vehicles or premiums shown in the Declarations;

4.   Vehicles involved in the accident;

5.   Policies involved; or

6.   Premiums paid.

### SCHEDULE

AA 0170 (03-98)

PPA 0008899321-1          02/13/07                    INSURED COPY                         R                78      978

020045

AA 0303 (06-99)

## TOWING AND LABOR COSTS COVERAGE

Part D-1 - Towing and Labor Costs Coverage is replaced by the following:

We will pay towing and labor costs incurred each time "your covered auto" or any "non-owned auto" is disabled, up to the amount shown in the Declarations as applicable to that vehicle.  If a "non-owned auto" is disabled, we will provide the broadest towing and labor costs coverage applicable to any "your covered auto" shown or in the Declarations.  We will only pay for labor performed at the place of disablement.

This form must be attached to the Change Endorsement when issued after the policy is written.

Includes copyrighted material of Insurance Services Office, Inc.  with its permission.

Copyright, Insurance Services Office, Inc. 1985

AA 0303 (06-99)

PPA 0008899321-1      02/13/07                   INSURED COPY                  · R                    78      979

020046

AA 0488 (03-98)

## UNINSURED MOTORISTS COVERAGE - CALIFORNIA
### REDUCED LIMITS APPLY FOR "BODILY INJURY" TO ANY PERSON, OTHER THAN YOU OR ANY "FAMILY MEMBER"

**I.   PART C - UNINSURED MOTORISTS COVERAGE**

Part C is replaced by the following:

**INSURING AGREEMENT**

A.   We will pay compensatory damages which an "insured" is legally entitled to recover from the owner or operator of an "uninsured motor vehicle" because of:

    1.   "Bodily injury" sustained by an "insured" and caused by an accident; and

    2.   "Property damage" caused by an accident if the Declarations indicates that "property damage" Uninsured Motorists Coverage applies to that auto. Only items 1 and 4 under the definition of "uninsured motor vehicle" apply to "property damage".

The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the "uninsured motor vehicle". With respect to coverage under item 2. of the definition of "uninsured motor vehicle", we will pay only after the limits of liability under any applicable bonds or policies have been exhausted by payment of judgments or settlements.

Any judgment for damages arising out of a suit brought without our written consent is not binding on us.

B.   "Insured" as used in this endorsement means:

    1.   You or any "family member".

    2.   Any other person "occupying" "your covered auto".

    3.   Any person for damages that person is entitled to recover because of "bodily injury" to which this coverage applies sustained by a person in 1. or 2. above.

However, with respect to coverage for "bodily injury", "insured" does not include any person who sustains "bodily injury" while "your covered auto" is being used as a public or livery conveyance. This exception does not apply to a share-the-expense car pool.

C.   "Property damage" as used in this endorsement means injury to or destruction of "your covered auto". However, "property damage" does not include:

    1.   Loss of use of "your covered auto"; or

    2.   Damage to personal property contained in "your covered auto".

D.   "Uninsured motor vehicle" means a land motor vehicle or trailer of any type:

    1.   To which no liability bond or policy applies at the time of the accident.

    2.   Which, with respect to damages for "bodily injury" only, is an underinsured motor vehicle. An underinsured motor vehicle is one which a liability bond or policy applies at the time of the accident but its limit for liability is less than the limit of liability for this coverage.

    3.   Which, with respect to damages for "bodily injury" only, is a hit and run vehicle whose owner or operator cannot be identified and which makes physical contact with:

       a.   You or any "family member";

       b.   A vehicle which you or any "family member" are "occupying"; or

       c.   "Your covered auto".

**AA 0488 (03-98)**

020047

AA 0488 (03-98)

4.  To which a liability bond or policy applies at the time of the accident but the bonding or insuring company:

    a.  Denies coverage; or

    b.  Refuses to admit coverage except conditionally or with reservation; or

    c.  Is or becomes insolvent within one year of the accident.

With respect to coverage for "property damage", the accident must involve direct physical contact between "your covered auto" and the "uninsured motor vehicle", and:

1.  The owner or operator of the "uninsured motor vehicle" must be identified; or

2.  The "uninsured motor vehicle" must be identified by its license number.

However, "uninsured motor vehicle" does not include any vehicle or equipment:

1.  Owned by or furnished or available for the regular use of you or any "family member".

2.  Owned or operated by a self-insurer under any applicable motor vehicle law, except a self-insurer which is or becomes insolvent.

3.  Owned by any governmental unit or agency.

4.  Designed or modified for use off public roads while not on public roads.

5.  While located for use as a residence or premises.

## EXCLUSIONS

A.  We do not provide Uninsured Motorists Coverage for "bodily injury" sustained by any "insured":

1.  While "occupying" or when struck by:

    a.  Any motor vehicle; or

    b.  A trailer of any type used with a motor vehicle:

    owned by you or any "family member" which is not insured for this coverage under this policy.

2.  If that "insured" or legal representative settles the "bodily injury" claim without our consent.

    This exclusion (A.1) does not apply to a settlement made with the insurer of a vehicle described in Section 2 of the definition of "uninsured motor vehicle".

3.  Using a vehicle without a reasonable belief that that "insured" is entitled to do so.

4.  While "occupying" a motor vehicle rented or leased to that "insured" for use as a public or livery conveyance.

B.  We do not provide Uninsured Motorists Coverage for "property damage" sustained by any "insured" while "occupying" or when struck by any motor vehicle owned by you or any "family member" which is not insured for this coverage under this policy.

C.  This coverage shall not apply:

1.  To "property damage" to:

    a.  A trailer or any type; or

    b.  Any motor vehicle owned by you to which Collision Coverage applies under this policy; or

AA 0488 (03-98)

020048

AA 0488 (03-98)

c. Any other motor vehicle to the extent that there is valid and collectible Collision Coverage applicable to that damage under any other policy.

2. Directly or indirectly to benefit:

a. Any insurer or self-insurer under any of the following or similar law:

1) Workers' compensation law; or

2) Disability benefits law.

b. Any insurer of property.

3. Directly to the benefit of the United States or any State or political subdivision thereof.

D. We do not provide Uninsured Motorists Coverage for punitive or exemplary damages.

**LIMIT OF LIABILITY**

The limits of liability for you and "family members" and persons designated in the Schedule are different than for other persons.

Subject to the limit of liability as determined by paragraphs A and B below, the limit of Bodily Injury Liability shown in the Declarations for this coverage for each accident is the maximum amount we will pay to all "insureds" for all damages for "bodily injury" resulting from any one accident.

A. Limit of Liability For Bodily Injury To You and "Family Members" and Persons Designated in the Schedule

The limit of Bodily Injury Liability shown in the Declarations for this coverage for each person is the maximum amount we will pay for "bodily injury" sustained by any one person in any one accident, when that "bodily injury" is sustained by you or any "family member" or any person designated in the Schedule. That maximum amount includes any claim of other persons arising out of that "bodily injury".

B. Limit of Liability For Bodily Injury To Other Persons

1. The maximum amount we will pay to an "insured", other than you or any "family member" or any person designated in the Schedule, for "bodily injury" sustained by any person in any one accident is the lesser of a. or b. as follows:

a. The limit of Bodily Injury Liability shown in the Declarations for this coverage for each person; or

b. $30,000.

That maximum amount includes any claim of other persons arising out of that "bodily injury".

2. Subject to this limit for each person, the maximum amount we will pay for all "insureds", other than you or any "family member" or any person designated in the Schedule, for all damages for "bodily injury" resulting from any one accident is the lesser of a. or b. as follows:

a. The limit of Bodily Injury Liability shown in the Declarations for this coverage for each accident; or

b. $60,000.

SCHEDULE

AA 0488 (03-98)

PPA 0008899321-1     02/13/07          INSURED COPY          R          Page 3 of 6

78    982

020049

AA 0488 (03-98)

C. Limit of Liability For Property Damage

Our maximum limit of liability for all damages for "property damage" resulting from any one accident will be the lesser of:

1. The limit of Property Damage Liability shown in the Declarations; or

2. The actual cash value of "your covered auto"; or

3. The amount of any deductible if there is valid and collectible Collision Coverage under any policy.

An adjustment for depreciation and physical condition will be made in determing actual cash value at the time of the loss.

D. The limit of Bodily Injury Liability or Property Damage Liability determined by paragraphs A, B, or C above is the most we will pay regardless of:

1. "Insureds"

2. Claims made;

3. Vehicles or premiums shown in the Declarations;

4. Vehicles involved in the accident;

5. Policies involved; or

6. Premiums paid.

E. The limit of liability shall be reduced by all sums:

1. Paid because of the "bodily injury" or "property damage" by or on behalf of persons or organizations who may be legally responsible. This includes all sums paid under Part A of the policy; and

2. Paid and the present value of all sums payable because of the "bodily injury" under any workers' compensation law exclusive of non-occupational disability benefits.

F. We will not make a duplicate payment under this coverage for the same element of loss that has been paid by or on behalf of persons or organizations who may be legally responsible. This includes all sums paid under Part A of the policy.

G. We will not make a duplicate payment under this coverage for the same element of loss that has been paid under any automobile medical payments coverage. This includes all sums paid under Part B of the policy.

H. We will not make a duplicate payment under this coverage for the same element of loss that a person is entitled to receive payment for under any workers' compensation law exclusive of non-occupational disability benefits.

## OTHER INSURANCE

If there is other applicable uninsured motorists coverage available under one or more policies or provisions of coverage:

1. Any recovery for damages may equal but not exceed the highest applicable limit for any one vehicle under this insurance or any other insurance providing coverage on either a primary or excess basis.

In addition, if any such coverage is provided on the same basis, either primary or excess, as the coverage we provide under this endorsement, we will pay only our share. Our share is the proportion that our limit of liability bears to the total of all applicable limits for coverage provided on the same basis.

2. Any coverage we provide with respect to a vehicle you do not own shall be excess over any other collectible uninsured motorists coverage.

AA 0488 (03-98)

020050

**ARBITRATION**                                             AA 0488 (03-98)

A.  If we and an "insured" do not agree:

  1.  Whether that person is legally entitled to recover damages under this coverage; or

  2.  As to the amount of damages;

then the matter will be settled by arbitration.  Such arbitration may be initiated by a written demand for arbitration made by either party.  The arbitration shall be conducted by a single neutral arbitrator.  With respect to "property damage", arbitration proceedings must be formally instituted by the "insured" within 1 year from the date of the accident.  Disputes concerning coverage under this part may not be arbitrated.

B.  Each party will:

  1.  Pay the expenses it incurs; and

  2.  Bear the expenses of the arbitrator equally.

C.  Any decision of the arbitrator will be binding as to:

  1.  Whether the "insured" is legally entitled to recover damages; and

  2.  The amount of damages.

## II.  DUTIES AFTER AN ACCIDENT OR LOSS

Paragraph C. of Part E is replaced by the following:

C.  A person seeking Uninsured Motorists Coverage must also:

  1.  Promptly notify the police if a hit-and-run driver is involved.

  2.  Send us copies of the legal papers if a suit is brought.

A person seeking coverage for "bodily injury" sustained in an accident involving a vehicle described in section 2. of the definition of "uninsured motor vehicle" must:

  1.  Provide us with a copy of the complaint by personal service or certified mail, if the "insured" brings action against the owner or operator of the "uninsured motor vehicle".

  2.  Within a reasonable time, make available all pleadings and depositions for copying by us or furnish us copies at our expense.

  3.  Provide with proof that the limits of liability under any applicable liability bonds or policies have been exhausted by payment of judgments or settlements.

A person seeking Uninsured Motorists Coverage for "property damage" must also notify us or our agent within 10 business days of the accident.

## III.  GENERAL PROVISIONS

Part F is amended as follows with respect to Uninsured Motorists Coverage:

A.  The Legal Action Against Us provision is replaced by the following:

### LEGAL ACTION AGAINST US

No legal action may be brought against us until:

  1.  There has been full compliance with all the terms of the policy; and

AA 0488 (03-98)

AA 0488 (03-98)

2. With respect to an accident involving a vehicle described in items 1., 3. and 4. of the definition of "uninsured motor vehicle", one of the following actions are taken within 1 year from the date of the accident:

    a. Agreement as to the amount due under this coverage has been concluded:

    b. The "insured" or his legal representative has formally instituted arbitration proceedings by notifying us in writing. Such notification must be sent by certified mail, return receipt requested; or

    c. Suit for "bodily injury" has been filed against the uninsured motorist in a court of competent jurisdiction. Written notice of the suit must be provided to us within a reasonable time after the "insured" knew or should have known of the uninsured status of the other motorist. In no event will such notice be required before one year from the date of the accident. Failure of the "insured" or his representative to provide such notice will not be a basis for a denial of coverage unless such failure prejudices our rights.

B. The Our Right To Recover Payment provision is amended as follows:

**OUR RIGHT TO RECOVER PAYMENT**

1. Paragraph A. of this provision does not apply to coverage under item 2. of the definition of "uninsured motor vehicle".

2. Paragraph B. of this provision does not apply to coverage under items 1., 3. or 4. of the definition of "uninsured motor vehicle".

This endorsement must be attached to the Change Endorsement when issued after the policy is written.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Copyright, Insurance Services Office, Inc. 1996

AA 0488 (03-98)

PPA 0008899321-1     02/13/07          INSURED COPY          R

Page 6 of 6

78     985

020052

PP 0305 (08-86)

**LOSS PAYABLE CLAUSE**

Loss Payee:

Loss or damage under this policy shall be paid, as interest may appear, to you and the loss payee shown in the Declarations or in this endorsement. This insurance with respect to the interest of the loss payee, shall not become invalid because of your fraudulent acts or omissions unless the loss results from your conversion, secretion or embezzlement of "your covered auto". However, we reserve the right to cancel the policy as permitted by policy terms and the cancellation shall terminate this agreement as to the loss payee's interest. We will give the same advance notice of cancellation to the loss payee as we give to the named insured shown in the Declarations.

When we pay the loss payee we shall, to the extent of payment, be subrogated to the loss payee's rights of recovery.

This endorsement must be attached to the Change Endorsement when issued after this policy is written.

Copyright, Insurance Services Office, Inc., 1986

**PP 0305 (08-86)**

PPA 0008899321-1    02/13/07    **INSURED COPY**    R    78    986

020053

INSURANCE IDENTIFICATION CARDS
PLEASE KEEP A CARD IN EACH VEHICLE
DO NOT USE IF YOUR POLICY OR COVERAGE IS NOT IN FORCE

PERSONAL INSURANCE
SERVICE CARDS FOR
YOUR WALLET OR PURSE

INSURANCE IDENTIFICATION CARD
(California)
KEEP THIS CARD IN YOUR VEHICLE

Policy No.    PPA  0008899321-1
Account No:  618521618

RAYBURN, CHRISTINE D.
RAYBURN JR, MALCOLM W.
2 SINALOA CT
NOVATO CA 94947-3837

Policy Period: 10/27/00  to 10/27/01

Veh:    1  86  HONDA

HRH OF NORTHERN CALIFORNIA

NOVATO CA  94945-5057
This evidence of insurance may be used if requested by a peace officer to show evi-
dence of insurance during a traffic stop or at an accident.

AMCO INSURANCE COMPANY
701 5TH AVE
DES MOINES IA  50391-2000

This Card effective: 10/27/00

JHMBA5430GC088837

Allied
Insurance
a Nationwide company
On Your Side℠

HRH OF NORTHERN CALIFORNIA
NOVATO CA 94945-5057
INSURED  RAYBURN, CHRISTINE D.
RAYBURN JR, MALCOLM W.
POLICY NUMBER  PPA 0008899321-1
ACCOUNT NUMBER  618521618
Customer Service & Claims: 1-800-282-1446

---

INSURANCE IDENTIFICATION CARD
(California)
KEEP THIS CARD IN YOUR VEHICLE

Policy No.    PPA  0008899321-1
Account No:  618521618

RAYBURN, CHRISTINE D.
RAYBURN JR, MALCOLM W.
2 SINALOA CT
NOVATO CA 94947-3837

Policy Period: 10/27/00  to 10/27/01

Veh:    1  86  HONDA

HRH OF NORTHERN CALIFORNIA

NOVATO CA  94945-5057
This evidence of insurance may be used if requested by a peace officer to show evi-
dence of insurance during a traffic stop or at an accident.

AMCO INSURANCE COMPANY
701 5TH AVE
DES MOINES IA  50391-2000

This Card effective: 10/27/00

JHMBA5430GC088837

Allied
Insurance
a Nationwide company
On Your Side℠

HRH OF NORTHERN CALIFORNIA
NOVATO CA 94945-5067
INSURED  RAYBURN, CHRISTINE D.
RAYBURN JR, MALCOLM W.
POLICY NUMBER  PPA 0008899321-1
ACCOUNT NUMBER  618521618
Customer Service & Claims: 1-800-282-1446

---

EVIDENCE OF INSURANCE IS REQUIRED WITH REGISTRATION RENEWAL

Effective January 1, 1997, you are required to have liability insurance to register your vehicle.  When you renew your vehicle registration you will
be required to submit evidence of insurance with your payment for the renewal transaction.  Evidence can be in the form of your insurance ID card
(a photocopy is acceptable).  Evidence of insurance is not required with registration renewal of off-highway vehicles, trailers, vessels, or if you file
a planned non-operation (PNO) on the vehicle.  If you do not have evidence of insurance, contact your insurance company.

Motor Carriers of property as defined in CVC34601 may provide a statement that the carrier has evidence of insurance on file for this vehicle with
PUC or DMV pursuant to CVC34630.

You may be requested by a peace officer to show evidence of insurance during a traffic stop or at an accident.  Each owner is required to carry
written evidence of liability insurance in each vehicle.  Note:  Comprehensive and Collision Insurance covers your damages only, and does not
meet the liability  insurance requirement.

Vehicle Code Sections:  4000.37, 16020, and 16028.  DOCUMENTS SUBMITTED TO DMV WILL NOT BE RETURNED

ID 0004 (03-97)
DIRECT BILL    78NU    07044                INSURED COPY                618521618                78    987

209 (05-04) IX

020054


**THIS IDENTIFICATION IS REQUIRED TO BE IN EACH INSURED VEHICLE AT ALL TIMES.  USE ONLY IF COVERAGE IS CURRENTLY IN FORCE.**

IN CASE OF ACCIDENT: Report all accidents to your Agent/Company as soon as possible.  Obtain the following information:

1.  Name and address of each driver, passenger and witness
2.  Name of Insurance Company and policy number for each vehicle involved.
3.  License numbers of other vehicles.
4.  Fix in your mind locations of vehicles before and after the accident. Take pictures if possible, or draw a diagram of the accident site.
5.  Inform police and obtain name and badge number of investigating officer.

NOTE:  Do not express an opinion as to who was at fault. Do not sign any statement or allow your version of the accident to be recorded except by an identified representative of your company, or as required by the authorities.

**THIS IDENTIFICATION IS REQUIRED TO BE IN EACH INSURED VEHICLE AT ALL TIMES.  USE ONLY IF COVERAGE IS CURRENTLY IN FORCE.**

IN CASE OF ACCIDENT: Report all accidents to your Agent/Company as soon as possible.  Obtain the following information:

1.  Name and address of each driver, passenger and witness
2.  Name of Insurance Company and policy number for each vehicle involved.
3.  License numbers of other vehicles.
4.  Fix in your mind locations of vehicles before and after the accident. Take pictures if possible, or draw a diagram of the accident site.
5.  Inform police and obtain name and badge number of investigating officer.

NOTE:  Do not express an opinion as to who was at fault. Do not sign any statement or allow your version of the accident to be recorded except by an identified representative of your company, or as required by the authorities.

DIRECT BILL    78NU    07044                INSURED COPY            618521618            78        988

020055

**INSURANCE IDENTIFICATION CARDS**
**PLEASE KEEP A CARD IN EACH VEHICLE**
**DO NOT USE IF YOUR POLICY OR COVERAGE IS NOT IN FORCE**

**PERSONAL INSURANCE SERVICE CARDS FOR YOUR WALLET OR PURSE**

**INSURANCE IDENTIFICATION CARD**
(California)
**KEEP THIS CARD IN YOUR VEHICLE**

Policy No.    PPA  0008899321-1
Account No:  618521618

**RAYBURN, CHRISTINE D.**
**RAYBURN JR, MALCOLM W.**
**2 SINALOA CT**
**NOVATO CA 94947-3837**

Policy Period: 10/27/00  to 10/27/01

Veh:   4   99  CHEVLT

**HRH OF NORTHERN CALIFORNIA**

**NOVATO CA  94945-5057**
This evidence of insurance may be used if requested by a peace officer to show evidence of insurance during a traffic stop or at an accident.

**AMCO INSURANCE COMPANY**
**701 5TH AVE**
**DES MOINES IA  50391-2000**

This Card effective: **10/27/00**

**1GNEK13R9XR150279**

Allied Insurance

HRH OF NORTHERN CALIFORNIA
NOVATO CA  94945-5057
INSURED   RAYBURN, CHRISTINE D.
RAYBURN JR, MALCOLM W.
POLICY NUMBER  PPA 0008899321-1
ACCOUNT NUMBER  618521618
Customer Service & Claims: 1-800-282-1446

**INSURANCE IDENTIFICATION CARD**
(California)
**KEEP THIS CARD IN YOUR VEHICLE**

Policy No.    PPA  0008899321-1
Account No:  618521618

**RAYBURN, CHRISTINE D.**
**RAYBURN JR, MALCOLM W.**
**2 SINALOA CT**
**NOVATO CA 94947-3837**

Policy Period: 10/27/00  to 10/27/01

Veh:   4   99  CHEVLT

**HRH OF NORTHERN CALIFORNIA**

**NOVATO CA  94945-5057**
This evidence of insurance may be used if requested by a peace officer to show evidence of insurance during a traffic stop or at an accident.

**AMCO INSURANCE COMPANY**
**701 5TH AVE**
**DES MOINES IA  50391-2000**

This Card effective: **10/27/00**

**1GNEK13R9XR150279**

Allied Insurance

HRH OF NORTHERN CALIFORNIA
NOVATO CA  94945-5057
INSURED   RAYBURN, CHRISTINE D.
RAYBURN JR, MALCOLM W.
POLICY NUMBER  PPA 0008899321-1
ACCOUNT NUMBER  618521618
Customer Service & Claims: 1-800-282-1446

**EVIDENCE OF INSURANCE IS REQUIRED WITH REGISTRATION RENEWAL**

Effective January 1, 1987, you are required to have liability insurance to register your vehicle. When you renew your vehicle registration you will be required to submit evidence of insurance with your payment for the renewal transaction. Evidence can be in the form of your Insurance ID card (a photocopy is acceptable). Evidence of insurance is not required with registration renewal of off-highway vehicles, trailers, vessels, or if you file a planned non-operation (PNO) on the vehicle. If you do not have evidence of insurance, contact your insurance company.

Motor Carriers of property as defined in CVC34601 may provide a statement that the carrier has evidence of insurance on file for this vehicle with PUC or DMV pursuant to CVC34630.

You may be requested by a peace officer to show evidence of insurance during a traffic stop or at an accident. Each owner is required to carry written evidence of liability insurance in each vehicle.  Note:  Comprehensive and Collision Insurance covers your damages only, and does not meet the liability insurance requirement.

Vehicle Code Sections: 4000.37, 16020, and 16028.  DOCUMENTS SUBMITTED TO DMV WILL NOT BE RETURNED

ID 0004 (03-97)
DIRECT BILL    7BNU     07044

**INSURED COPY**

618521618                    78      989

200 (05-04) 9:

020056


**THIS IDENTIFICATION IS REQUIRED TO BE IN EACH INSURED VEHICLE AT ALL TIMES. USE ONLY IF COVERAGE IS CURRENTLY IN FORCE.**

IN CASE OF ACCIDENT: Report all accidents to your Agent/Company as soon as possible. Obtain the following information:

1. Name and address of each driver, passenger and witness
2. Name of Insurance Company and policy number for each vehicle involved.
3. License numbers of other vehicles.
4. Fix in your mind locations of vehicles before and after the accident. Take pictures if possible, or draw a diagram of the accident site.
5. Inform police and obtain name and badge number of investigating officer.

NOTE:  Do not express an opinion as to who was at fault. Do not sign any statement or allow your version of the accident to be recorded except by an identified representative of your company, or as required by the authorities.

**THIS IDENTIFICATION IS REQUIRED TO BE IN EACH INSURED VEHICLE AT ALL TIMES. USE ONLY IF COVERAGE IS CURRENTLY IN FORCE.**

IN CASE OF ACCIDENT: Report all accidents to your Agent/Company as soon as possible. Obtain the following information:

1. Name and address of each driver, passenger and witness
2. Name of Insurance Company and policy number for each vehicle involved.
3. License numbers of other vehicles.
4. Fix in your mind locations of vehicles before and after the accident. Take pictures if possible, or draw a diagram of the accident site.
5. Inform police and obtain name and badge number of investigating officer.

NOTE:  Do not express an opinion as to who was at fault. Do not sign any statement or allow your version of the accident to be recorded except by an identified representative of your company, or as required by the authorities.

DIRECT BILL    78NU    07044          INSURED COPY          618521618          78      990

020057

**INSURANCE IDENTIFICATION CARDS**
**PLEASE KEEP A CARD IN EACH VEHICLE**
**DO NOT USE IF YOUR POLICY OR COVERAGE IS NOT IN FORCE**

PERSONAL INSURANCE
SERVICE CARDS FOR
YOUR WALLET OR PURSE

**INSURANCE IDENTIFICATION CARD**
(California)
KEEP THIS CARD IN YOUR VEHICLE

AMCO INSURANCE COMPANY
701 5TH AVE
DES MOINES IA 50391-2000

Policy No.    PPA  0008899321-1
Account No: 618521618

**RAYBURN, CHRISTINE D.**
**RAYBURN JR, MALCOLM W.**
**2 SINALOA CT**
**NOVATO CA 94947-3837**

Policy Period: 10/27/00 to 10/27/01

This Card effective: 10/27/00

Veh:   5   67  VOLKS

367178038

HRH OF NORTHERN CALIFORNIA

NOVATO CA 94945-5057
This evidence of insurance may be used if requested by a peace officer to show evidence of insurance during a traffic stop or at an accident.

□ Allied
   Insurance
   a Nationwide company
   On Your Side℠

HRH OF NORTHERN CALIFORNIA
NOVATO CA 94945-5057
INSURED   RAYBURN, CHRISTINE D.
          RAYBURN JR, MALCOLM W.
POLICY NUMBER   PPA 0008899321-1
ACCOUNT NUMBER   618521618
Customer Service & Claims: 1-800-282-1446

**INSURANCE IDENTIFICATION CARD**
(California)
KEEP THIS CARD IN YOUR VEHICLE

AMCO INSURANCE COMPANY
701 5TH AVE
DES MOINES IA 50391-2000

Policy No.    PPA  0008899321-1
Account No: 618521618

**RAYBURN, CHRISTINE D.**
**RAYBURN JR, MALCOLM W.**
**2 SINALOA CT**
**NOVATO CA 94947-3837**

Policy Period: 10/27/00 to 10/27/01

This Card effective: 10/27/00

Veh:   5   67  VOLKS

367178038

HRH OF NORTHERN CALIFORNIA

NOVATO CA 94945-5057
This evidence of insurance may be used if requested by a peace officer to show evidence of insurance during a traffic stop or at an accident.

□ Allied
   Insurance
   a Nationwide company
   On Your Side℠

HRH OF NORTHERN CALIFORNIA
NOVATO CA 94945-5057
INSURED   RAYBURN, CHRISTINE D.
          RAYBURN JR, MALCOLM W.
POLICY NUMBER   PPA 0008899321-1
ACCOUNT NUMBER   618521618
Customer Service & Claims: 1-800-282-1446

**EVIDENCE OF INSURANCE IS REQUIRED WITH REGISTRATION RENEWAL**

Effective January 1, 1997, you are required to have liability insurance to register your vehicle. When you renew your vehicle registration you will be required to submit evidence of insurance with your payment for the renewal transaction. Evidence can be in the form of your insurance ID card (a photocopy is acceptable). Evidence of insurance is not required with registration renewal of off-highway vehicles, trailers, vessels, or if you file a planned non-operation (PNO) on the vehicle. If you do not have evidence of insurance, contact your insurance company.

Motor Carriers of property as defined in CVC34601 may provide a statement that the carrier has evidence of insurance on file for this vehicle with PUC or DMV pursuant to CVC34630.

You may be requested by a peace officer to show evidence of insurance during a traffic stop or at an accident. Each owner is required to carry written evidence of liability insurance in each vehicle. Note: Comprehensive and Collision Insurance covers your damages only, and does not meet the liability insurance requirement.

Vehicle Code Sections: 4000.37, 16020, and 16028. **DOCUMENTS SUBMITTED TO DMV WILL NOT BE RETURNED**

ID 0004 (05-97)
DIRECT BILL    76NU    07044                    INSURED COPY              618521618         78      991

200 (05-04) α

020058

**THIS IDENTIFICATION IS REQUIRED TO BE IN EACH INSURED VEHICLE AT ALL TIMES. USE ONLY IF COVERAGE IS CURRENTLY IN FORCE.**

IN CASE OF ACCIDENT: Report all accidents to your Agent/Company as soon as possible. Obtain the following information:

1. Name and address of each driver, passenger and witness
2. Name of Insurance Company and policy number for each vehicle involved.
3. License numbers of other vehicles.
4. Fix in your mind locations of vehicles before and after the accident. Take pictures if possible, or draw a diagram of the accident site.
5. Inform police and obtain name and badge number of investigating officer.

NOTE: Do not express an opinion as to who was at fault. Do not sign any statement or allow your version of the accident to be recorded except by an identified representative of your company, or as required by the authorities.

**THIS IDENTIFICATION IS REQUIRED TO BE IN EACH INSURED VEHICLE AT ALL TIMES. USE ONLY IF COVERAGE IS CURRENTLY IN FORCE.**

IN CASE OF ACCIDENT: Report all accidents to your Agent/Company as soon as possible. Obtain the following information:

1. Name and address of each driver, passenger and witness
2. Name of Insurance Company and policy number for each vehicle involved.
3. License numbers of other vehicles.
4. Fix in your mind locations of vehicles before and after the accident. Take pictures if possible, or draw a diagram of the accident site.
5. Inform police and obtain name and badge number of investigating officer.

NOTE: Do not express an opinion as to who was at fault. Do not sign any statement or allow your version of the accident to be recorded except by an identified representative of your company, or as required by the authorities.

DIRECT BILL    78NU    07044                    INSURED COPY                    618521618              78        992

020059

**Allied**
Insurance
a Nationwide® company
*On Your Side™*

**AGENCY - 84 - 35720**
HRH OF NORTHERN CALIFORNIA
NOVATO CA  94945

AMCO INSURANCE COMPANY
701 5TH AVE
DES MOINES IA  50391-2000

24

US FIRST FEDERAL CREDIT UNION
FOUR APPLETREE SQUARE
BLOOMINGTON MN 55425-1642

**INSURED**
RAYBURN, CHRISTINE D.
RAYBURN JR, MALCOLM W.
2 SINALOA CT
NOVATO CA 94947-3837
LOAN NUMBER:

**PERSONAL AUTO POLICY NUMBER**
PPA 0008899321-1

*LOSS PAYEE, MORTGAGEE OR OTHER INTEREST INFORMATION . . . .*

The enclosed material provides loss payee, mortgagee, or other interest information pertaining to your client.

JL0008L (02-93)
**DIRECT BILL    78NU  07044**

R  618521618            993

020060

AMCO INSURANCE COMPANY
701 5TH AVE
DES MOINES IA 50391-2000
1-515-280-4211

**PERSONAL AUTO POLICY**

| AGENCY 001 | HRH OF NORTHERN CALIFORNIA NOVATO CA 94945-5057 |
| --- | --- |

**DECLARATIONS    AMENDED**

NAMED INSURED AND ADDRESS
**RAYBURN, CHRISTINE D.
RAYBURN JR, MALCOLM W.
2 SINALOA CT
NOVATO CA 94947-3837**

POLICY NUMBER
PPA 0008899321-1
ACCOUNT NUMBER
618521618

Policy Period
From:  10/27/00  To:  10/27/01
12:01 A.M. Standard Time

Effective Date of Change

### COVERAGE AND LIMITS OF LIABILITY (In Dollars)
Coverage is provided where a premium or limit of liability is shown for coverage.

| VEHICLE | BODILY INJURY EACH PERSON | BODILY INJURY EACH ACCIDENT | PROPERTY DAMAGE EACH ACCIDENT | MEDICAL PAYMENTS EACH PERSON | PERSONAL INJURY PROTECTION OPTION | UNINSURED MOTORISTS EACH PERSON | UNINSURED MOTORISTS EACH ACCIDENT |
| --- | --- | --- | --- | --- | --- | --- | --- |
| 1 | 100,000 | 300,000 | 50,000 | 5,000 | | | |
| 4 | 100,000 | 300,000 | 50,000 | 5,000 | | 100,000 | 300,000 |
| 5 | 100,000 | 300,000 | 50,000 | 5,000 | | 100,000 | 300,000 |
| | | | | | | 100,000 | 300,000 |

| VEHICLE | DAMAGE TO YOUR VEHICLE Other Than Collision Loss — Actual Cash Value Minus Deductible | Collision Loss | TOWING PER DISABLE-MENT | RENT RE TRN EXP PER DAY/ MAXIMUM |
| --- | --- | --- | --- | --- |
| 1 | 500 | 500 | | |
| 4 | 500 | 500 | 50 | 30/ 900 |
| 5 | | | 50 | 30/ 900 |

**PREMIUMS (In Dollars)**

| VEH | BODILY INJURY | PROPERTY DAMAGE | MEDICAL PAYMENTS | PERSONAL INJURY PROTECTION | UNINSURED MOTORISTS | DAMAGE TO YOUR VEHICLE Other Than Collision Loss | Collision Loss | TOWING | RENT RE TRN EXP |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| 1 | 305.52 | 195.12 | 31.54 | | 77.50 | 41.18 | 163.56 | 3.20 | 19.20 |
| 4 | 261.32 | 166.98 | 19.32 | | 66.42 | 69.60 | 325.72 | 3.20 | 19.20 |
| 5 | 155.18 | 99.34 | 16.12 | | 39.82 | | | | |

| VEH | | | | | COLLISION DEDUCTIBLE BUY BACK | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| 1 | | | | | | | | | |
| 4 | | | | | 7.88 | | | | |
| 5 | | | | | 7.88 | | | | |

| VEH | Total Premium Each Vehicle | Other Miscellaneous Endorsements Requiring Premium: | | | |
| --- | --- | --- | --- | --- | --- |
| 1 | 844.70 | No. | | Sub-Total | $ 2,094.80 |
| 4 | 939.64 | | $ | Other Endorsements/Fees | $ |
| 5 | 310.46 | | $ | | $ |
| | | | $ | Full Term Premium | $ 2,094.80 |
| | | | $ | Add'l Premium | $ |
| | | | | Return Premium | $ |

**THIS IS NOT A BILL - SEE YOUR BILLING STATEMENT**

Page 1 of 2

Countersigned by - Authorized Representative

R  618521618    7B    994

020061

## DESCRIPTION OF VEHICLE

| VEH | Year | Trade Name | Body Type and Model | Identification Number | Cost/New | Max Value | HP | CC's | Class |
|-----|------|-----------|--------------------|----------------------|----------|-----------|-----|------|-------|
| 1 | 1986 | HONDA | 4 DOOR | JHMBA5430GC088837 | | | | | G11121 |
| 4 | 1999 | CHEVLT | 4 DOOR | 1GNEK13R9XR150279 | | | | | G1112V |
| 5 | 1967 | VOLKS | 2 DOOR | 367178038 | | | | | G11420 |

## ALTERNATE GARAGING LOCATIONS

| VEH | Year | Make | Body Type and Model | Address |
|-----|------|------|--------------------|---------|
| 1 | 1986 | HONDA | ACCORD LX | |
| 4 | 1999 | CHEVLT | TAHOE BASE | |
| 5 | 1967 | VOLKS | SQUARE BAC | |

## ENDORSEMENTS

Endorsements forming a part of this policy:
IN0002 (0397)   IN0263 (1199)   IN0521 (0794)   IN0531 (1299)   IN0532 (0191)
IN0542 (1087)   IN0590 (0200)   AA0001 (0986)   AA0901A (1098)   AA0007 (1192)   AA0006A (1199)   AA0073 (0697)   AA0078 (0995)
AA0169 (1299)   AA0170 (0398)   AA0383 (0699)   AA0488 (0398)   PP0305 (0886)   SN0559C (1299)

Loss Payee: INTEREST IS AUTO
or
Designee       4

US FIRST FEDERAL CREDIT UNION
FOUR APPLETREE SQUARE
BLOOMINGTON MN 55425-1642

**NOTICE TO LOSS PAYEE:**
This policy will be extended for successive policy periods on payment of the required premium when due. You will be notified:
a. If the continuation premium is NOT paid and the policy lapses.
b. If the policy is cancelled for non-payment of any other required premiums.
c. Of changes affecting your interest.

Page 2 of 2

995

020062

PP 0305 (08-86)

## LOSS PAYABLE CLAUSE

Loss Payee:

Loss or damage under this policy shall be paid, as interest may appear, to you and the loss payee shown in the Declarations or in this endorsement. This insurance with respect to the interest of the loss payee, shall not become invalid because of your fraudulent acts or omissions unless the loss results from your conversion, secretion or embezzlement of "your covered auto". However, we reserve the right to cancel the policy as permitted by policy terms and the cancellation shall terminate this agreement as to the loss payee's interest. We will give the same advance notice of cancellation to the loss payee as we give to the named insured shown in the Declarations.

When we pay the loss payee we shall, to the extent of payment, be subrogated to the loss payee's rights of recovery.

This endorsement must be attached to the Change Endorsement when issued after this policy is written.

Copyright, Insurance Services Office, Inc., 1986

PP 0305 (08-86)

PPA 0008898321-1        02/13/07              LOSS PAYEE COPY                    R              78    996

020063

# EXHIBIT D
to (Second) Declaration of
David M. Porter

001744201878

# LAW OFFICES OF STEPHEN M. MURPHY

STEPHEN M. MURPHY
NIKKI HALL

JEFFREY B. MEADE
*Paralegal*

July 9, 2003

Jeffrey V. Mangone
Special Claims Representative
AMCO Insurance Company
2301 Circadian Way
P.O. Box 849
Santa Rosa CA 95402-0849

<p style="margin-left:2em">Re: <u>Christine Dougherty – Underinsured Motorist Claim</u><br>
Your Insured:   Christine D. Rayburn<br>
Your File No.:   84F99015 PPA 0008899321<br>
Date of Incident:  4/17/01</p>

Dear Mr. Mangone:

As you know, I represent Christine Dougherty with regard to her underinsured motorist claim arising out of an automobile accident which occurred on April 17, 2001. I am writing to present a settlement demand on behalf of my client. It is my hope that we can resolve this matter informally without the need to proceed with arbitration of Ms. Dougherty's underinsured motorist claim.

## Factual Background

Ms. Dougherty is a 43 year old mother of three sons, two teenagers and a one and a half year old.

On April 17, 2001, at approximately 4:00 p.m., Ms. Dougherty was driving a 1969 Porsche that her husband gave her as a 40th birthday present. Ms. Dougherty came to a complete stop at a posted stop sign at the intersection of San Marin Drive and Simmons Lane in Novato. Before making a left turn onto Simmons Lane, Ms. Dougherty noticed two trucks, one green and one white, stop at the stop sign in front of her, in the eastbound direction of San Marin Drive. Ms. Dougherty was stopped at the stop sign before the two trucks stopped and had the right of way.

Ms. Dougherty began to make a left turn onto Simmons Lane. As she was turning, she noticed the white truck slowing down, but the green truck was accelerating through the intersection. Ms. Dougherty yelled out of her window to the driver of the green truck, honked her horn, and tried to accelerate out of the way, but the driver of the green truck, Glen Osmidoff, struck the rear portion of Ms. Dougherty's vehicle. Ms. Dougherty had almost completed her left turn when she was struck. Ms. Dougherty sustained approximately $7,000 in damages to her vehicle.

*ALLIED-PRO*
*JUL 1 1 2003*
*BO*

44 Montgomery Street
Suite 1000
San Francisco, CA 94104

CERTIFIED AS CIVIL TRIAL SPECIALIST BY NATIONAL BOARD OF TRIAL ADVOCACY
ADMITTED IN CALIFORNIA AND MASSACHUSETTS
REPRESENTING PLAINTIFFS IN EMPLOYMENT AND PERSONAL INJURY LITIGATION

Telephone: (415) 986-1338
Fax: (415) 288-1836
Email: smurphy@Justice.com
www.sick-leave.com

010401

001744201879

# LAW OFFICES OF STEPHEN M. MURPHY

A police officer reported to the scene of the incident and made a report. (The police report is attached hereto as **Exhibit A.**) After speaking to Mr. Osmidoff, Ms. Dougherty and an independent witness, the police officer concluded that the accident was caused by Mr. Osmidoff's failure to yield to Ms. Dougherty, in violation of Vehicle Code section 21800a. The independent witness told the police officer that he believed Mr. Osmidoff may have been talking to the driver of the white truck prior to the incident and that he was looking to the left, at the driver of the white truck, instead of looking forward to where Ms. Dougherty's vehicle was located at the time he accelerated away from the intersection.

Ms. Dougherty and her husband, Malcolm Rayburn, filed a lawsuit against Mr. Osmidoff for negligence and loss of consortium on April 16, 2002. In December of 2002, Ms. Dougherty and Mr. Osmidoff settled for $30,000, the limits of Mr. Osmidoff's insurance policy.[1]

## Medical Treatment

Ms. Dougherty first began to experience pain on Wednesday April 18, a day after the incident. Her first symptom was a stiff neck. By Thursday April 19, Ms. Dougherty could not move her head to the right and called Dr. Ernest Sponzilli at Mt. Tam Orthopedics for an appointment. The first available appointment Dr. Sponzilli had was on April 24.

During her first appointment with Dr. Sponzilli, Ms. Dougherty complained of neck, shoulder and upper back pain. She also told Dr. Sponzilli that she believed she was pregnant. Dr. Sponzilli held off on taking any x-rays until Ms. Dougherty could find out whether or not she was pregnant. In the meantime, Dr. Sponzilli prescribed physical therapy, a cervical collar, anti-inflammatories, and a cervical traction unit. Dr. Sponzilli's initial diagnosis was a possible cervical disk herniation, cervical soft tissue strain, and rotator cuff strain. (The records from Dr. Sponzilli/Mt. Tam Orthopedics are attached hereto as **Exhibit B.**)

Ms. Dougherty was seen by her OBGYN, Dr. Harris Simmonds, on May 7, 2001. Dr. Simmonds confirmed that she was indeed pregnant and advised Ms. Dougherty against undergoing x-rays, MRIs, or CAT scans until after her baby was delivered. Ms. Dougherty's due date was late December 2001. (Dr. Simmonds' records, which relate to the automobile accident, are attached hereto as **Exhibit C.**)

---

[1] We have previously sent you a copy of the Complaint, release, declaration pages from Mr. Osmidoff's policy, and the depositions of Ms. Dougherty and Dr. Ernest Sponzilli.

## LAW OFFICES OF STEPHEN M. MURPHY

Ms. Dougherty started physical therapy on May 8, 2001 and went to ten (10) physical therapy sessions from that date until July 5, 2001. (The records from Novato Back Care & Sports Rehab. are attached hereto as **Exhibit D.**)

Ms. Dougherty followed-up with Dr. Sponzilli on June 4, 2001. At that time, Dr. Sponzilli prescribed additional physical therapy for Ms. Dougherty as well as acupuncture. Following this appointment, Ms. Dougherty continued with physical therapy and had three acupuncture treatments in June of 2001 at the Novato Acupuncture and Herb Clinic. (The records from Novato Acupuncture and Herb Clinic are attached hereto as **Exhibit E.**) The physical therapy and acupuncture offered little relief of Ms. Dougherty's symptoms. Ms. Dougherty followed-up again at Mt. Tam Orthopedics on July 9, 2001.

Ms. Dougherty gave birth to her son on December 17, 2001.

On February 15, 2002, Ms. Dougherty returned to Dr. Sponzilli and complained of continuing, chronic neck and right shoulder pain. X-rays were taken that day and an MRI was ordered. The MRI's were conducted on March 1, 2002. The MRI's showed cervical disk herniations at C5-6 and C6-7 and a torn right rotator cuff. (The records from Marin Magnetic Imaging are attached hereto as **Exhibit F.**)

Dr. Sponzilli went over the MRI results with Ms. Dougherty on March 8, 2002 and prescribed additional physical therapy as well as topical and oral anti-inflammatory medications. Dr. Sponzilli discussed that surgery might be an option for Ms. Dougherty, but she wanted to opt for a conservative treatment regimen since she had just given birth a few months prior and, as a result, was not in a position to undergo surgery and subsequent rehabilitation from surgery.

Ms. Dougherty followed-up again at Mt. Tam Orthopedics on April 19, 2002. At that time, she was prescribed additional physical therapy and acupuncture. Ms. Dougherty had twelve (12) acupuncture treatments from April 26 through July 9, 2002. (The acupuncture was performed by licensed acupuncturist and RN, Paula Aboud. Ms. Aboud is affiliated with Mt. Tam Orthopedics.) By late June/early July 2002, Ms. Dougherty started to notice some improvement in her neck and shoulder as a result of the acupuncture. Ms. Dougherty's last follow-up appointment at Mt. Tam Orthopedics was on June 7, 2002.

Ms. Dougherty previously tore her right rotator cuff approximately 8-10 years ago as a result of an injury from playing softball. However, that injury resolved itself several years prior to the automobile accident of April 2001, and Ms. Dougherty had not received treatment for the prior rotator cuff injury or had any symptoms for several years prior to the automobile accident. Ms. Dougherty fractured her lower spine in an automobile accident which occurred in April of 1999.

However, the spine fracture was resolved by August of 1999 and was not exacerbated by the automobile accident of April 2001. Moreover, Dr. Sponzilli opined in his deposition that Ms. Dougherty's neck and shoulder injuries were caused by the April 2001 automobile accident.

### Medical Expenses

Ms. Dougherty incurred the following medical expenses to date as a result of the incident:

| | |
|---|---|
| Mt. Tam Orthopedics | $1,856.00 |
| Marin Magnetic Imaging | 970.87 |
| Novato Acupuncture & Herb Clinic | 350.00 |
| Novato Back Care & Sports Rehab. | 1,025.00 |
| | $4,201.87 |

(Ms. Dougherty's billing records are attached hereto as **Exhibit G**.)

### Pain and Suffering

Ms. Dougherty suffered constant pain in her neck and right shoulder for over a year after the incident. The pain made Ms. Dougherty's pregnancy more difficult to endure. The pain in Ms. Dougherty's neck also caused her sexual relations with her husband to be severely compromised for a period of two to three months following the incident. Ms. Dougherty was also unable to engage in her hobby of gardening and many household chores for approximately one year following the incident. Although the pain in Ms. Dougherty's neck and shoulder has decreased, she continues to regularly experience aching, pain and stiffness in her neck and shoulder.

### Conclusion

Ms. Dougherty has authorized me to accept $45,000 in full settlement of her underinsured motorist claim. We believe a total settlement of $75,000 ($45,000 plus $30,000 from the underinsured driver) is a reasonable demand in view of the seriousness of her injuries, notwithstanding the low amount of special damages. Please contact me within one week of the date of this letter to discuss this settlement demand.

Very truly yours,

STEPHEN M. MURPHY

Enclosures

**EXHIBIT E**
to (Second) Declaration of
David M. Porter

**Allied**
Insurance

a member of Nationwide Insurance

Pacific Coast Regional Office
2301 Circadian Way P.O. Box 849
Santa Rosa, California 95402-0849

August 22, 2003

Mr. Stephen M. Murphy, Esq.
44 Montgomery street
Suite 1000
San Francisco, California 94104

Re:     Your Client:          Christine Dougherty
        Our Policyholders:    Christine and Malcolm Dougherty
        Our Claim Number:     84F99015
        Policy Number:        PPA 0008899321
        Date of Accident:     04/17/2001

Dear Mr. Murphy:

Our review and evaluation of Mrs. Dougherty's treatment data is complete.

Before we discuss the matter of the content of the evaluation, there appears to be some items and documentation that was not included with your offer of settlement. After reviewing Mrs. Dougherty's deposition again, I see where the issue of wage loss arose, and, Mrs. Dougherty testified she lost some time from work. However, these documents were not included with the rest of her treatment records.

The other issue concerns the matter of future care of Mrs. Dougherty's injuries to her neck and shoulder. From her orthopedic surgeon's testimony, Dr. Sponzilli, surgical intervention for these injuries is mentioned, but only as an option. From the current records, it does not appear Mrs. Dougherty has had any treatment or care for her injuries since June of 2002. Is this still the case?

Please check your file for any additional information and documentation for either of these issues. If there are any other matters or issues concerning Mrs. Dougherty's claim, please describe and document them for our review.

I will wait to hear from you concerning Mrs. Dougherty's claim.

Respectfully,

Jeffery V. Mangone
Special Claims Representative II
AMCO Insurance Company
(707) 769-1542 Voice
(707) 769-1547 Facsimile

Allied Group, Inc.
AMCO Insurance Company
Allied Property and Casualty Insurance Company
Depositors Insurance Company

010481

# EXHIBIT F
## to (Second) Declaration of David M. Porter

SEPTEMBER 28, 2004

04803
HRH OF NORTHERN CALIFORNIA
NOVATO CA 94948-6132

AMCO Insurance Company
Pacific Coast Regional Office
3820 109th St Dept 5577
Des Moines, IA  50391-5577
Phone: 800-552-2437/Fax: 800-742-1341

MR. STEPHEN MURPHY  ESQ.

180 MONTGOMERY STE. 940
SAN FRANCISCO CA 94104

Claim No.:   84F99015
Policy No.:     PPA 0008899321
Date of Loss: 04/17/01

YOUR CLIENT: CHRISTINE DOUGHERTY

DEAR MR. MURPHY:

THIS LETTER IS TO ADVISE YOU WE ARE CLOSING OUR FILE.

WE PREVIOUSLY ADVISED YOU OUR EVALUATION OF MS. DOUGHERTY'S INJURIES DID NOT
INDICATE A VIABLE UNDERINSURED MOTORIST CLAIM. OUR EVALUATION WAS BASED ON THE
TREATMENT DATA AS PROVIDED BY YOUR OFFICE.

PLEASE FEEL FREE TO CONTACT ME IF YOU WISH TO DISCUSS THIS MATTER IN FURTHER
DETAIL.

JEFF MANGONE (707) 769-1542
Ext:
AMCO Insurance Company

923C (10-99)

010510

# EXHIBIT G
to (Second) Declaration of
David M. Porter

Nov 04 04 02:50p          Law Offices          1415288183?          p.2

# LAW OFFICES OF STEPHEN M. MURPHY

STEPHEN M. MURPHY
NIKKI HALL

November 4, 2004

                              VIA FAX (800-742-1341) AND FIRST CLASS MAIL

Jeffrey V. Mangone
Special Claims Representative
AMCO Insurance Company
Pacific Coast Regional Office
3820 109th Street, Dept 5577
Des Moines, IA 50391-5577

          Re:   Christine Dougherty
          Claim No.:   84F99015
          Policy No.:   PPA 0008899321
          Date of Loss: 4/17/01

Dear Mr. Mangone:

       This office is in receipt of the letter advising that you have closed your file on Ms. Dougherty's underinsured motorist claim.

       As you know, I informed you on January 6, 2003 that my client intended to make an underinsured motorist claim. Subsequent to that, I sent you information supporting her claim. Obviously you disagree as to the viability and value of Ms. Dougherty's underinsured motorist claim. However, Ms. Dougherty is entitled to have this dispute submitted to arbitration pursuant to the terms of her policy with AMCO.

       Accordingly, Ms. Dougherty is hereby formally requesting arbitration of her underinsured motorist claim. According to Ms. Dougherty's policy, each party is to pick an arbitrator and those two arbitrators will choose a third. Plaintiff picks Geoffrey Russell, Esq., 5 Weatherly, Ste. 308, Mill Valley, CA 94941 (415-380-1871) as her arbitrator.

       Please let me know your choice of arbitrator within ten days or I will have no choice but to file a petition to compel arbitration.

                              Yours very truly,

                              Stephen M. Murphy (sr)

                              Stephen M. Murphy

180 Montgomery Street
Suite 940
San Francisco, CA 94104

CERTIFIED AS CIVIL TRIAL SPECIALIST BY NATIONAL BOARD OF TRIAL ADVOCACY
ADMITTED IN CALIFORNIA AND MASSACHUSETTS
REPRESENTING PLAINTIFFS IN EMPLOYMENT AND PERSONAL INJURY LITIGATION

Telephone: (415) 986-1338
Fax: (415) 986-1231
Email: smurphy@Justice.com
www.sick-leave.com

010590

# EXHIBIT H
## to (Second) Declaration of David M. Porter

1      IN THE UNITED STATES DISTRICT COURT

2    NORTHERN DISTRICT OF CALIFORNIA (SAN FRANCISCO)

3        ---oOo---

4

5  CHRISTINE DOUGHERTY,

6      Plaintiff,

7    VS.        No. C 07-01140 MHP

8  AMCO INSURANCE COMPANY,
   AND DOES ONE THROUGH TWENTY,
9  INCLUSIVE,

10      Defendants.
  _____/
11

12      DEPOSITION OF JASON WARTACH

13      March 4, 2008

14

15

16

17
  Reported by:
18  ANNETTE M. SNYDER
  CSR NO. 1880
19  murphy

20

21

       LUSK & SNYDER
22     3715 MONTEREY BOULEVARD
     OAKLAND, CALIFORNIA  94619
23   (510)482-9991/FAX(510)482-1052

24

25

1                INDEX

2                        PAGE

3   EXAMINATION BY MR. MURPHY ............... 6

4

5            ---oOo---

6            EXHIBITS

7   PLAINTIFF'S

8   EXHIBIT 1:  NOTICE OF TAKING DEPOSITION ......    6

9   EXHIBIT 2:  DOCUMENT ENTITLED "PHYSICAL THERAPY"  24

10  EXHIBIT 3:  DOCUMENT ENTITLED "FUTURE SURGERY"    26

11  EXHIBIT 4:  DOCUMENT ENTITLED "CONSULTATION TIPS"  31

12  EXHIBIT 5:  COLOSSUS SCREEN ................... 33

13  EXHIBIT 6:  COLOSSUS SCREEN:  ASSESSMENT FOR

14          GENERAL DAMAGES ................... 39

15  EXHIBIT 7:  COLOSSUS TRAINING MANUAL .......... 43

16  EXHIBIT 8:  COLOSSUS GUIDELINES ............... 55

17  EXHIBIT 9:  PCRO COLOSSUS UNIT WORKFLOW

18          GUIDELINES ........................ 56

19  EXHIBIT 10: COLOSSUS HINTS .................... 56

20  EXHIBIT 11: EXEMPT CLAIM CATEGORIES ........... 57

21  EXHIBIT 12: IMPAIRMENTS ....................... 57

22  EXHIBIT 13: INJURY DISSECTION SHEET ........... 57

23  EXHIBIT 14: MEDICAL ABBREVIATIONS ............. 57

24  EXHIBIT 15: RED FLAGS IN IMPAIRMENT EVALUATION.   58

25  EXHIBIT 16: USEFUL WEB SITES .................. 58

1        EXHIBITS, CONTINUED

2

3  EXHIBIT 17:  COLOSSUS SCREEN, INDEPENDENT

4      MEDICAL EXAM ................... 77

5  EXHIBIT 18:  COLOSSUS SCREEN, INDEPENDENT

6      MEDICAL EXAM ................... 78

7  EXHIBIT 19:  COLOSSUS SCREEN, NON MEDICAL

8      FACTORS ........................ 79

9  EXHIBIT 20:  COLOSSUS SCREEN, NON MEDICAL

10      FACTORS ........................ 80

11  EXHIBIT 21:  COLOSSUS SCREEN, RECOMMENDED

12      SETTLEMENT ..................... 80

13  EXHIBIT 22:  COLOSSUS SCREEN, CONSULTATION

14      SUMMARY ........................ 84

15  EXHIBIT 23:  COLOSSUS SCREEN, ADJUSTMENTS .... 89

16

17

18

19

20

21

22

23

24

25

1  Q.      Is the medical documentation, that you

2  instruct adjusters to look at, medical records and

3  reports?

4  A.      It would include documentation provided by the

5  medical provider, generally about the person who might

6  be referring them for these surgeries.

7  Q.      Does Colossus require that any, any entry as

8  to future surgery, whether it be possible, probable, or

9  definite, be backed up by medical record or report?

10  A.      We always instruct the associate that they

11  should be looking for objective medical documentation to

12  support their entries.  So in this situation, we would

13  want some type of documentation or support from a

14  medical provider, such as an anticipated surgery date,

15  perhaps an estimate of surgical costs, perhaps a

16  treatment plan that would include maybe additional care,

17  and then, if that care was not successful, discussion

18  about a surgical option.

19          In any case, we would instruct the associate

20  to really look for medical documentation to support

21  whatever entry they select here.

22  Q.      Is there any provision in Colossus for

23  inputting data from deposition transcripts?

24  A.      I don't quite understand.

25  Q.      If an adjuster has a deposition transcript

LUSK & SNYDER          28
(510)482-9991/FAX (510)482-1052

1   available from a treating doctor, is the adjuster

2   trained on how to interpret the deposition and input

3   data into Colossus from the deposition?

4   A.      We leave that very broad.  And it basically is

5   the responsibility of the associate, if they feel that

6   it is objective medical documentation, they would

7   include it in the consultation.  If it was perhaps not

8   medical documentation, they would use that after the

9   consultation was completed to determine whether or not

10   they felt the range was appropriate, or if they should

11   go above or below that range.

12   Q.      Was there anything in any of the written

13   materials that you provided to attendees that dealt with

14   the use of deposition transcripts in inputting data into

15   Colossus?

16   A.      There was no specific material that I am aware

17   of dealing with specifically deposition transcripts as

18   medical documentation in Colossus.

19   Q.      And when you were working as an adjuster, did

20   you have occasion to review deposition transcripts of

21   treating physicians?

22   A.      Generally, no.

23   Q.      And would you agree that, that the only

24   circumstances in which you would have deposition

25   transcripts of a treating doctor, would be in an

```
 1   under-insured motorist claim?

 2   A.      I would think you could have deposition

 3   transcripts for any number of reasons.

 4   Q.      So would you train adjusters to use Colossus

 5   for cases that were in litigation?

 6   A.      We were not training litigation associates.

 7   Q.      So these were all pre-litigation associates?

 8   A.      Correct.

 9   Q.      And so, in what circumstances would you

10   anticipate there being deposition exhibits available,

11   aside from under-insured motorists claims?

12   A.      Again, I couldn't speculate what would happen

13   in a claims file.  It could be for any number of reasons

14   why a person would have transcripts, or deposition

15   records, available as part of their medical

16   documentation.

17   Q.      Was there anything in the training materials

18   for Colossus, that provided that medical reports of

19   treating physicians were to be valued in any way higher

20   than deposition testimony of a treating physician?

21   A.      There was never any information which would

22   rank the medical documentation that the associate would

23   use.  They were instructed to review all information in

24   their file; to dissect that out before entering a

25   consultation, always looking for the objective
```

1    documentation from a treating physician, or a medical

2    provider as the most appropriate information to use when

3    entering a consultation.

4           (Whereupon, a document entitled "Consultation

5           Tips" was marked Plaintiff's Exhibit 4 for

6           identification.)

7           MR. MURPHY:  Q.  Show you Exhibit 4.

8    Do you recognize Exhibit 4 as another excerpt from

9    materials from your computer on Colossus?

10   A.      I do.

11   Q.      And this is entitled "Consultation Tips."

12           Actually, I just realized I forgot to ask you

13   something about Exhibit 3.  Let me back up a moment.

14   A.      Okay.

15   Q.      Is there any provision in Colossus, that you

16   trained people on, for inputting data regarding future

17   surgery that may be possible, probable, or definite, if

18   the claimant or plaintiff decides not to have the

19   surgery?

20   A.      If a person later on elects not to have a

21   surgery, we have to look at the current state of that

22   person.  So if there is medical documentation to support

23   the need for a future surgery, we want to address that.

24   If the person decides, at a later date, not to have

25   that, that would be after the consultation was run and

1  we would not have a way of entering that.

2  Q.      Well, if you -- if an adjuster knows, at the

3  time of the consultation, that a doctor has recommended

4  surgery, but the claimant has decided against it, is

5  there any provision in Colossus to input that kind of

6  data?

7  A.      They would probably, at that point, even

8  though there is medical documentation to support the

9  need for surgery, if the person says:  No way, no how, I

10  am going to have surgery, they might elect to have,

11  instead of a "definite," they might try to put down a

12  "probable" or even a "possible" at that point.

13  Q.      Okay.  Thank you.

14          Turning to Exhibit 4 again.

15          And it says only an actual injury that was

16  diagnosed and/or treated should be entered.  A complaint

17  is not an injury.  Be sure that all injuries are

18  medically documented.

19          What do you train people, in the terms of the

20  difference between what is a "injury" and what is a

21  "complaint"?

22  A.      An injury is the cause of the complaint.  The

23  complaint is an indication of the injury.  If you have

24  pain in your shoulder, that is an indication of a

25  condition in your shoulder that is causing the pain.

1    That is not the actual injury.  It is a symptom of the

2    injury itself.

3    Q.      So, is there any way to input into Colossus,

4    complaints?

5    A.      Yes.

6    Q.      How is that done?

7    A.      Based on the injury that is entered, there

8    would be additional follow-up questions that would ask

9    about specific, specific complaints that were noted.

10    Q.      Is there any provision for inputting severity

11    of complaints; for example, someone has mild pain,

12    moderate pain, or severe pain?

13    A.      I am not aware of any ability in Colossus to

14    indicate the level of pain, or the level of the

15    complaint; just that there was that complaint.

16    Q.      Okay.

17          (Whereupon, Colossus screen marked as

18          Plaintiff's Exhibit 5 for identification.)

19          MR. MURPHY:  Q.  Let me show you Exhibit 5.

20    Do you recognize Exhibit 5 as an excerpt from your

21    training materials on Colossus?

22    A.      Yes, I do.

23    Q.      And can you explain what this is?

24    A.      I am sorry.  I didn't mean to cover up the

25    microphone.  Sorry.

1        This is the initial screen that an associate

2   will use to define what the injuries are that are

3   documented in the records that they have.

4   Q.      So, the associate would input into this screen

5   CS spine, if it's a cervical spine injury?

6   A.      They could.  This is a broad search area.

7   Depending on how specific the associate is in their

8   definition, defines what selections come up.  So if they

9   were to just enter "spine," they would be provided with

10  all of the potential injuries within Colossus associated

11  with the spine.

12  Q.      Does this page indicate whether it is lower

13  spine, upper spine, or mid spine?

14  A.      On this screen, no, it does not.

15  Q.      There is another screen that would have that?

16  A.      There would be follow-up screens which would

17  ask you to further define if this was in the cervical

18  region or if this was in the thoraco-lumbar region of

19  the spine.

20  Q.      And then there is entry here that says DP

21  equals disc injury (rupture, herniation etc).

22         Are adjusters trained on how to determine,

23  from reviewing medical record, whether there is a

24  rupture or herniation to a disc?

25  A.      Part of the instruction does include an

1    explanation of all of these different injury codes and

2    it does go over examples in each of these categories.

3    And that would include looking in the medical bills and

4    records.  So that would include any billing codes or any

5    diagnostic codes that are used to help them identify

6    whether it was a DP, or a CS, or one of the other

7    injuries codes there are.

8    Q.      And what, what are adjusters trained is the

9    definition of a rupture or herniation of a disc?

10   A.      Again, I would have to refer back to the

11   Colossus material as they define a "rupture" or

12   "herniation".  Generally speaking, it's going to state

13   somewhere in the records, or in the billing information,

14   that this was a rupture or herniation of a disc.

15   Q.      Are you familiar with the term "disc bulge"?

16   A.      Yes.

17   Q.      Is there any provision in Colossus for

18   inputting a disc bulge that may not be considered a

19   rupture or herniation?

20   A.      For a disc bulge, that would be included in

21   the -- in the DP section.

22   Q.      As a rupture or herniation?

23   A.      Correct.

24   Q.      Is there any provision to input whether the

25   disc rupture, herniation, or bulge, is compressing the

1   spinal cord?

2   A.      That would be a symptom of the, of the

3   disc bulge itself, but not the actual injury, so they

4   would just go ahead and enter that as a disc bulge.

5   Q.      So when they get to the injury screen, is

6   there a way to input the fact that the disc bulge or

7   herniation may be impinging the spinal cord?

8   A.      What would be defined in Colossus would be the

9   type and length of care that they received while that

10  disc bulge was pinching or impinging on the spinal cord.

11  There would not be a specific question, specifically

12  addressing:  Was that bulge impinging the spinal cord.

13  That would be defined through follow-up questions on

14  length of care, type of care, type of treatment.

15  Q.      Is there any way to input into Colossus, the

16  number of discs that may be herniated?

17  A.      I am thinking which version this is here.

18          I believe in this version here, disc bulges

19  are going to be counted based on the region.  So if

20  there are multiple bulges within the cervical region,

21  that would be counted just as an injury to the cervical

22  spine.  If there was a rupture, then they would be

23  specific between which vertebrae, C2-C3, C3-C4.

24  Q.      So bulges and ruptures would be handled

25  differently for that purpose?

1  A.    There would be different follow-up questions,

2  depending on whether it was bulge or herniation.

3  Initially the type of injury would be input the same,

4  but the follow-up questions would vary.

5  Q.    So if somebody had two herniated discs in the

6  cervical region, would that be reflected in Colossus in

7  any way?

8  A.    A herniation or a rupture, would be specific

9  to the specific vertebrae that were affected.  A bulge

10  would be based on a general region of the spine.

11  Q.    If somebody had two bulges in the cervical

12  region, Colossus would have no way of inputting that

13  information?

14  A.    That would be entered as just a bulge in the

15  cervical spine; regardless of the number of bulges.

16  Again, defined through their period of care, their

17  length of treatment, the type of treatment would help

18  further define.

19        Does that make sense?

20  Q.    Now this Exhibit 5 says:  This is the

21  Define/Modify Injuries screen, is the engine that drives

22  the Colossus train.

23        What do you understand that phrase to mean?

24  A.    Colossus is a logic-based tool, meaning it

25  doesn't know anything until you tell it.  However, once

1   you make an entry, the follow-up or subsequent questions

2   would be as a result of a previous answer.  So

3   considering this is the first screen, this would be the

4   defining screen as to all of the follow-up questions

5   that would come after.

6   Q.      So, if an adjuster input the incorrect injury

7   in this screen, that would necessarily affect the value

8   that came out at the end?

9   A.      If they didn't -- if they entered the wrong

10  injury, if it was a sprain and they entered a fracture,

11  it would result in a number of questions that the

12  associate probably couldn't have answered because it

13  would not have been an appropriate entry.  Some of them

14  are very similar and, yes, you could go through the

15  entire consultation with the wrong injury code.

16  Q.      If, for example, an adjuster had input CS, for

17  contusion soft-tissue whiplash, instead of DP for disc

18  injury, would that -- could the adjuster have gone

19  through the whole program and not noticed that mistake?

20  A.      It's possible.

21  Q.      And the result would be a lower value for a CS

22  than for DP; is that true?

23  A.      It could be the same; it could be lower; it

24  could be higher.  Again, it's based on the additional

25  questions:  The follow-up, the length of care, the type

1   of care, length of treatment, future medical needs,

2   pre-existing conditions.  All of those questions go into

3   it.

4   Q.      But all of those things being equal, is it

5   your understanding of the way Colossus evaluates claims,

6   that a CS injury would result in a lower value than a DP

7   injury?

8   A.      No.

9   Q.      Even with all of the other things being equal?

10  A.      That's correct.

11          MR. MURPHY:  Let me show you Exhibit 6.

12          (Whereupon, Colossus screen, Assessment for

13          General damages was marked Plaintiff's

14          Exhibit 6 for identification.)

15          MR. MURPHY:  Q.  Again, Exhibit 6 is one of

16  the screens from your training materials?

17  A.      Yes, it is.

18  Q.      Now this says:  The final screen you will view

19  is the narrative report itself.  This report lists all

20  of the information you have entered.

21          Is that narrative report available to the

22  adjuster remotely?

23  A.      This is a web-based tool, so as long as they

24  have the ability to sign in with a secure connection,

25  they can view the consultation.

1    practices regarding training employees, not about his

2    testing of the system or the validity of the system, or

3    the accuracy of the system, or how one could manipulate

4    the system.  So I ask counsel to try to limit the topics

5    covered to what he is being produced today to talk

6    about.

7        MR. MURPHY:  Q.  Did you ever talk at your

8    training classes about the informal testing you did?

9    A.        No.

10   Q.        Did you ever talk about how certain tweaks in

11   the system would affect the value generated by Colossus?

12   A.        That wouldn't have been appropriate, no.

13   Q.        Are you aware of any formalized testing done

14   by Allied on the Colossus system?

15   A.        No.

16   Q.        Let's take a look at Exhibit 11.

17            This is an Exempt Claim Categories.

18            Do you have -- and this is -- you would train

19   people on what these exempt claim categories are; is

20   that true?

21   A.        Correct.

22   Q.        And do you train people on Item Number 9,

23   which is obvious limits cases, how they are to determine

24   that?

25   A.        We just indicate that if it's an obvious

1  limits case, that they would just need to document it

2  and they would be not -- excuse me -- not necessary to

3  run a consultation.

4  Q.      But you don't tell them how do determine

5  whether a case is an obvious limit?

6  A.      No.

7  Q.      Now then there is Complications Exempt from

8  Consultation.  It says:  Presence of the following does

9  not exclude the requirements of completing a

10  consultation or of consideration towards a final

11  settlement of the general damages but they are facets of

12  the model that Colossus cannot use to further define its

13  injury model.

14        "1" is pregnancy complications.  Is there any

15  way that an adjuster can consider pregnancy

16  complications in using Colossus?

17  A.      Not within the consultation.  They would need

18  to do that after the consultation was complete.

19  Q.      So take whatever range Colossus provided and

20  then adjust it by whatever complications were not

21  considered by Colossus?

22  A.      You do that in all situations where, if

23  Colossus didn't ask you a question, if it didn't address

24  something that you, as the associate, felt was

25  important, in either adding to or subtracting from the

1   value of that claim, would you always need to do that

2   after the consultation was complete.

3   Q.      Was there any way for Colossus to consider the

4   circumstances where a woman is injured while she is

5   pregnant, and as a result of the pregnancy is unable to

6   obtain certain types of treatment?

7   A.      That would be up to the associate to identify.

8   Q.      So that wouldn't be something Colossus would

9   consider?

10  A.      Correct.

11  Q.      So, again, that would be a situation where the

12  associate would get the range set by Colossus and adjust

13  it according to whatever those facts were?

14  A.      Absolutely.

15  Q.      All right.  Let's look at Exhibit 12, which is

16  "Impairments."

17          And was this Exhibit 12 given to people at the

18  training sessions?

19  A.      Yes.

20  Q.      I notice, at the bottom, where the file name,

21  it has:  Colossus binder for Jay\Handouts,

22  miscellaneous.  So would any of the pages that have that

23  file designation be ones you would hand out at the

24  training sessions?

25  A.      You are speaking on the bottom here it says:

## CONSULTATION TIPS

Only an actual injury that was diagnosed and/or treated should be entered. A complaint is not an injury. Be sure that all injuries are medically documented.

Complaints must be medically documented. Here are a few reminders when considering these complaints.

Radiating pain would be pain that starts at one point and then moves (radiates) to a particular limb of the body or buttocks. This can be an indication of nerve involvement.

Anxiety, depression, and neurosis should only be selected if there is evidence of treatment such as related medications, psychiatric therapy, tranquilizers, or anti-depressants.

Headaches are a result of an injury (complaint) and not an injury themselves. Do not select closed/concussive head injury to compensate for headaches. Headaches are commonly seen in association with soft-tissue neck injuries.

D:\Jason\2003 and prior. version 5.x\B Consult I ST.docComputer Sciences Corporation            2
Proprietary and Confidential

*Confidential/Restricted: Subject to Protective Order* - **Dougherty v. AMCO, *C07-01140, N.Dist. Cal***            4



This is the Define/Modify Injuries screen, it is the engine that drives the Colossus train. To define an injury, type one of the two letter descriptors followed by the injured body part. Type on injury per line. It is often best to be more general in the description of the injury, this will ensure that the correct injury code will come up as a result of a search.

The claimant, in this scenario, sustained a cervical strain. CS spine or CS neck may be used to define the injury. Always use CS when handling whiplash type injuries to the neck or back.

Click on the **Next** button after entering the injury.

*Confidential/Restricted: Subject to Protective Order* - Dougherty v. AMCO, C07-01140, N.Dist. Cal

# Exempt Claim Categories

COLOSSUS *should not* be used on the following types of claims:

1. Injury claims with a total settlement value of $1000 and under are exempt. If a first contact settlement is in excess of $1000, the file should be documented accordingly as to why COLOSSUS was not run.
2. Severe head injury, brain damage
3. Severe spinal cord injury, paraplegia, or quadriplegia
4. Death or survivor claims
5. Burns, or other cosmetic disfigurements
6. Dental trauma (except for TMJ)
7. Claims that contain no general damages, i.e. Consortium, PIP, No liability claims
8. Poisoning (lead, food, Carbon dioxide, carbon monoxide, etc.)
9. Obvious limits cases

## Complications Exempt from Consultation

Presence of the following does not exclude the requirements of completing a consultation or of consideration towards a final settlement of the general damages but they are facets of the injury that Colossus cannot use to further define it's injury model.

1. **Pregnancy complications such as early labor, low birth weight, Anemia, Gestational Diabetes or elevated blood pressure**

2. **Heart attack or heart diseases**

3. **Psychological disorders such as PTSD, ADD**

Copyright 2003 by Allied Insurance. Reproduction, disclosure, or use without specific written authorization of Allied Insurance staff claims is strictly forbidden.

C:\Documents and Settings\swansond\Desktop\Colussus Binder for Jay\Handouts misc\Exempt Claim Categories.doc

*Confidential/Restricted: Subject to Protective Order - Dougherty v. AMCO, C07-01140, N.Dist. Cal*