# UNITED STATES COURT OF APPEALS

## FOR THE NINTH CIRCUIT

### CIVIL APPEALS DOCKETING STATEMENT

RECEIVED

INTERNAL USE ONLY JUL 2 2 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

PLEASE TYPE OR PRINT. ATTACH ADDITIONAL PAGES IF NECESSARY

| TITLE IN FULL: | DISTRICT: Northern | JUDGE: Marilyn Hall Patel |
|---|---|---|
| Christine Dougherty v. AMCO Insurance Company | DATE COMPLAINT FILED: 1/24/2007 | DISTRICT COURT DOCKET NUMBER: CV07-01140 MHP |

**DATE NOTICE OF APPEAL FILED:** July 22, 2008   **IS THIS A CROSS-APPEAL?** YES   NO XX

**HAS THIS MATTER BEEN BEFORE THIS COURT PREVIOUSLY?** _____ YES  XX NO
IF YES, STATE WHEN:

CASE NAME:

CITATION:                                          DOCKET NUMBER:

CHECK AS MANY AS APPLY

| JURISDICTION | | DISTRICT COURT DISPOSITION | | |
|---|---|---|---|---|
| 1. FEDERAL | 2. APPELLATE | 1. STAGE OF PROCEEDINGS | 2. TYPE OF JUDGMENT/ ORDER APPEALED | 3. RELIEF |
| ( ) FEDERAL QUESTION | (X) FINAL DECISION OF DISTRICT COURT | (X) PRE-TRIAL | ( ) DEFAULT JUDGMENT | (X) DAMAGES: AMOUNT SOUGHT $_____ |
| (X) DIVERSITY | ( ) INTERLOCUTORY DECISION APPEALABLE AS OF RIGHT | ( ) DURING TRIAL | (X) JUDGMENT/COURT DECISION | |
| ( ) OTHER (SPECIFY): | | ( ) AFTER TRIAL | ( ) DISMISSAL/JURISDICTION | AMOUNT ( ) GRANTED: ( ) DENIED:$_____ |
| | ( ) INTERLOCUTORY ORDER CERTIFIED BY DISTRICT JUDGE (SPECIFY) | | ( ) JUDGMENT/JURY VERDICT | ( ) INJUNCTIONS ( ) PRELIMINARY OR ( ) PERMANENT |
| | ( ) OTHER (SPECIFY) | | ( ) DISMISSAL/MERITS | ( ) GRANTED OR ( ) DENIED |
| | | | (X) SUMMARY JUDGMENT | |
| | | | ( ) JUDGMENT NOV | |
| | | | ( ) DECLARATORY JUDGMENT | |
| | | | ( ) DIRECTED VERDICT | |
| | | | ( ) OTHER (SPECIFY) | |

BRIEF DESCRIPTION OF NATURE OF ACTION AND RESULT BELOW: Plaintiff filed a complaint in the Superior Court of the State of California on January 24, 2007 against her insurance carrier, AMCO Insurance Company, alleging breach of contract and breach of the implied covenant of good faith and fair dealing. Defendant filed a Notice of Removal in the district court on February 26, 2007 based on diversity jurisdiction. The district court subsequently granted defendant's Motion for Summary Judgment in its entirety.

ISSUES PROPOSED TO BE RAISED ON APPEAL:

See "ATTACHMENT A"

BASED ON YOUR PRESENT KNOWLEDGE:

    Does this appeal involve a question of first impression?  __XX__ Yes _____No

    Will the determination of this appeal turn on the interpretation or application of a particular case or statute?
    __XX__ Yes _____No  If yes, provide

    Case name/statue: __Wilson v. 21st Century Insurance Co.__
    Citation: __42 Cal. 4th 713 (2007)__
    Docket number, if unreported:_____

Is there any case now pending or about to be filed in this court or any other court or administrative agency which:

a)   Arises from substantially the same case or controversy as this appeal?
    _____ Yes  __XX__ No

b)   Involves an issue that is substantially the same, similar or related to an issue in this appeal?
    _____ Yes  __XX__ No

    Case name: _____

    Citation: _____
    Court or Agency:_____
    Docket number, if unreported: _____

Will this appeal involve a conflict of law within the Ninth Circuit?
_____ Yes  __XX__ No

Among circuits? _____ Yes  __XX__ No
If yes, explain briefly:
_____
_____
_____

DOES THIS APPEAL INVOLVE ANY OF THE FOLLOWING:

__XX__ Possibility of settlement;

_____ Likelihood of a motion to expedite the appeal;

_____ Multiple parties on either side for whom joint briefing is possible;

_____ Likelihood of motions to intervenue on appeal;

_____ Likelihood of motions to file amicus briefs;

_____ Likelihood of motions to stay appeal pending resolution of a related case. Identify case name, docket number and court or agency:

_____
_____
_____

_____ Other procedural complexities:

_____
_____
_____

COUNSEL FOR APPELLANT(S):
    NAME: __Stephen M. Murphy_____

    FIRM: __Law offices of Stephen M. Murphy__
    ADDRESS: __180 Montgomery Street, Suite__ 940
            San Francisco, CA 94104

    TELEPHONE: (415)986-1338

I CERTIFY THAT A COPY OF THIS CIVIL APPEALS DOCKETING STATEMENT WAS SUBMITTED TO THE CLERK OF DISTRICT COURT OR THE U.S. COURT OF APPEALS, AND THAT IT WAS SERVED ON EACH PARTY/COUNSEL SHOWN ON THE ATTACHED SERVICE LIST.

_____  7/22/08
SIGNATURE          DATE

**REMEMBER TO ATTACH COPIES OF ORDER/JUDGMENT APPEALED FROM AND SERVICE LIST WITH TELEPHONE NUMBERS**

ATTACHMENT A

**ISSUES PROPOSED TO BE RAISED ON APPEAL**

1) Are there genuine issues of material fact regarding whether Amco unreasonably evaluated Dougherty's underinsured motorist claim and withheld policy benefits that were due to Dougherty?

2) Are there genuine issues of material fact regarding whether Amco unreasonably denied Dougherty's claim for underinsured motorist benefits without making a full investigation?

3) Are there genuine issues of material fact regarding whether Amco breached its insurance contract with Dougherty?

4) Are there genuine issues of material fact regarding whether Amco breached the implied covenant of good faith and fair dealing in its handling of Dougherty's claim for underinsured motorist benefits, both before and after Dougherty demanded arbitration?

5) Did the District Court err in interpreting *Wilson v. 21st Century Insurance Company*, 42 Cal.4th 713 (Cal. 2007) (modified without change in disposition at 42 Cal.4th 806a), which held that before denying a claim by its own insured, an insurer must affirmatively investigate all possible bases for the claim, as opposed to sitting on its hands and demanding information from the insured or the insured's counsel? *Id.* at 721.

6) If there are no genuine issues of material fact, did the District Court err in entering summary judgment for Amco rather than Dougherty?

7) Did the District Court err in denying Dougherty's request for a continuance pursuant to F.R.C.P. 56(f) to allow plaintiff adequate time to conduct discovery?

8) Did the District Court err in denying Dougherty's motion to strike the declarations of Jeffrey Mangone, Darbie Hoffman and Renton Rolph because required attestations signaling their concurrence in filing of the documents were not provided?

# **<u>SERVICE LIST</u>**

Julian J. Pardini, Esq.
Lewis Brisbois Bisgaard & Smith
One Sansome Street, Suite 1400
San Francisco, CA 94104

TEL:   (415) 362-2580
FAX:   (415) 434-0882

Attorney for Defendant
AMCO Insurance Company


David M. Porter, Esq.
Law Offices of David M. Porter
44 Montgomery Street, Suite 2500
San Francisco, CA 94104

TEL:   (415) 982-8600
FAX:   (415) 391-7808

Attorney for Plaintiff
Christine Dougherty

1

2                    IN THE UNITED STATES DISTRICT COURT

3                    FOR THE NORTHERN DISTRICT OF CALIFORNIA

4

5

6   Dougherty,                              No. CV 07-01140 MHP

7              Plaintiff,
                                            **JUDGMENT IN A CIVIL CASE**
8   v.

9   AMCO Insurance Company,

10             Defendant.
    _____/

11

12        () **Jury Verdict.** This action came before the Court for a trial by jury. The issues

13   have been tried and the jury has rendered its verdict.

14        (X) **Decision by Court.** This action came to trial or hearing before the Court. The

15   issues have been tried or heard and a decision has been rendered.

16        **IT IS SO ORDERED AND ADJUDGED** that defendant's motion for summary

17   judgment is granted.

18

19   Dated: June 23, 2008                   Richard W. Wieking, Clerk

20

21                                          By: Anthony Bowser
                                            Deputy Clerk
22

23

24

25

26

27

28

United States District Court
For the Northern District of California

1

2

3

4

5

6                    UNITED STATES DISTRICT COURT

7                    NORTHERN DISTRICT OF CALIFORNIA

8
CHRISTINE DOUGHERTY,                      No. C 07-01140 MHP
9
            Plaintiff,
10                                         **MEMORANDUM & ORDER**
    v.
11                                         **Re: Defendant's Motion for Summary
                                           Judgment**
    AMCO INSURANCE COMPANY,
12
            Defendant.
13  _____/

14

15          Plaintiff Christine Dougherty filed this action in the Superior Court for the state of California

16  on January 24, 2007 alleging causes of action for breach of contract and breach of the implied

17  covenant of good faith and fair dealing against defendant AMCO Insurance Company ("AMCO").

18  Defendant removed the action to this court based on diversity jurisdiction.  Now before the court is

19  defendant's motion for summary judgment.  Having considered the parties' arguments and

20  submissions, and for the reasons set forth below, the court rules as follows.

21

22  BACKGROUND

23          On April 17, 2001 Dougherty was injured in an automobile collision.  Mangone Dec., ¶ 2.[1]

24  She reported the accident to her automobile insurer, AMCO.  Id.; see also Hoffman Dec., Exh. T

25  (hereinafter "Policy").  AMCO assigned Dougherty's claim to its adjuster, Jeffrey Mangone.

26  Mangone Dec., ¶ 2.  Dougherty suffered $7,874 in medical expenses and AMCO paid $5,000 for her

27  medical bills—the policy limit under the "med-pay" provisions of her policy.  Id., ¶ 3; see also

28  Policy at 020061.

1    A year later, on April 16, 2002, Dougherty filed suit against the other driver involved in the

2  collision.  Mangone Dec., ¶ 4, Exh. A.  A week later, the insurer for the other driver accepted

3  liability for the collision on behalf of its insured.  Porter Dec., Exh. A at 010085.  On December 20,

4  2002 Dougherty settled that action for $30,000, the policy limit of the other driver's insurance

5  policy.  Mangone Dec., ¶ 5, Exh. B.

6    On January 8, 2003 Dougherty notified AMCO that she was filing a claim under the

7  underinsured motorist ("UIM") provisions of her policy, which had a limit of $100,000.  Id., ¶ 6; see

8  also Policy at 020061.  On February 4, 2003 Dougherty provided AMCO supporting documentation,

9  including copies of her and her treating physician's depositions taken during the litigation between

10  Dougherty and the other driver involved in the collision.  See Pardini Dec., Exh. X.

11    On February 20, 2003, based on this documentation, Mangone set the UIM reserves at

12  $15,000.  Porter Dec., Exh. A at 010095.  The reserve value, which could change on a daily basis, is

13  based upon AMCO's potential exposure.  Id., Exh. E (hereinafter "McKeever Dep.") at 41:12–23.

14  When setting the reserves, Mangone stated that "the injury appears to be of a serious enough nature

15  and the surgery to repair the shoulder injury is going to happen sooner or later, if the insd has not

16  already had the operation."  Id., Exh. A at 010095.  He further stated that "we may need to adjust

17  this after teh [sic] rest of the docs are in."  Id.  The same day, Mangone requested Dougherty's

18  "treatment records and billings for her care."  Pardini Dec., Exh. Y.  Mangone also wanted to know

19  "if Mrs. Dougherty is still undergoing treatment, and if the surgical intervention has taken place."

20  Id.  Receiving no response, Mangone wrote Dougherty three times over the next four months asking

21  for the treatment information.  Id., Exhs. Z, AA & BB.

22    On July 9, 2003 Dougherty provided further documentation of her injuries and demanded

23  $45,000 to settle her claim.  Mangone Dec., Exh. C.  Dougherty's demand letter indicated that she

24  had suffered "constant pain in her neck and right shoulder for over a year after the incident," and

25  that "she continues to regularly experience aching, pain and stiffness in her neck and shoulder."  Id.

26  at 010404.

27    On July 29, 2003 AMCO responded by stating that Dougherty's claim file "appears to be

28  complete, and is in review for evaluation."  Porter Dec., Exh. C.  The letter went on to state that "[i]f

United States District Court
For the Northern District of California

2

United States District Court
For the Northern District of California

1   additional information is required, [AMCO] will contact you with the specific request for that

2   information." Id. On August 22, 2003 AMCO requested additional information, particularly about

3   Dougherty's wage loss claim and future medical care.  Mangone Dec., Exh. D.

4         On August 28, 2003 Mangone spoke to Dougherty's attorney via telephone.  Dougherty's

5   attorney advised that Dougherty was not making a wage loss claim and had chosen not to have

6   surgery to address certain injuries sustained in the automobile collision.  Id., ¶ 9.  It is undisputed

7   that Dougherty was foregoing surgery even though her treating physicians recommended surgery.

8   When Dougherty's attorney was asked about the medical necessity of this surgery, Dougherty's

9   attorney represented that he would query Dougherty's physician and report back to AMCO.  Id.

10   Mangone's notes from the same day state that "[i]f the surgery is a medical necessity, and teh [sic]

11   insd chooses not to have the surgery, we can put more money on the evaluation of her general

12   damages to move the settlement range above the $30,000.00 range."  Porter Dec., Exh. A at 010102.

13         On October 29, 2003 Mangone wrote to Dougherty's attorney reiterating his query about the

14   medical necessity of the surgery that Dougherty has elected to forego.  Mangone Dec., Exh. E.

15   Receiving no response, on November 26, 2003 Mangone notified Dougherty that "our current

16   evaluation of Mrs. Dougherty's injury claim does not indicate an underinsured motorist for bodily

17   injury is present.  Please let me know if you have had any success in obtaining a more

18   comprehensive report from Dr. Sponzolli [sic] with regard to the issue of the medical necissity [sic]

19   for back surgery."  Id., Exh. F.

20         Over the course of the next six months, Mangone sought information on the eventual need

21   for the surgery that Dougherty had elected to forego.  He repeatedly—at least eight

22   times—requested Dougherty's physicians' assessment regarding whether surgery was a medical

23   necessity.  Id., Exhs. G, H, I, J, K, L, M & N.  The letter dated May 6, 2004 asks Dougherty to

24   "please send these documents as soon as practicable.  Our current evaluation of Ms. Dougherty's

25   claim does not indicate the opther [sic] party's liability limits were inadequate for the compensation

26   of her injury claim."  Id., Exh. M.  The letter dated June 11, 2004 states:

27         We have not heard from you concerning the additional reports from Dr. Sponzilli.

28         Without further medical documentation of Ms. Dougherty's injuries, our evaluation
           does not indicate an under insured motorist claim for this loss.

3

1      Please advise us of the status of your progress with Ms. Dougherty's doctors. If we
       do not hear from you within a reasonable amount of time, we will presume we can
2      close our file.

3   Id., Exh. N. Each of these eight requests went unanswered.

4          In reaching the conclusion that no monies were owed to Dougherty, AMCO relied on its

5   Colossus software. Colossus is a claims adjusting software that takes as input select data from the

6   claims file and outputs a settlement range. Porter Dec., Exh. D (hereinafter "Wartach Dep.") at

7   13:4–21, 24:2–28:21. On August 13, 2003 Mangone acknowledged "clear liability" on the part of

8   the other driver, and stated that even though Dougherty "had discontinued care," she was "still

9   experiencing chronic pain symptoms in her neck and shoulder." Id., Exh. A at 010098, 010100. The

10  same day, he referred Dougherty's claim to AMCO's Colossus unit. Id. at 010101; Pardini Dec.,

11  Exh. W at 95:17–96:2 (testimony of Mangone). Mangone's referral indicated that Dougherty had

12  zero percent comparative negligence. Porter Dec., Exh. A at 010101; Pardini Dec., Exh. W at

13  96:3–97:3 (testimony of Mangone). The Colossus unit completed its consultation on August 21,

14  2003 and concluded that Dougherty had already been fully compensated for her injuries by way of

15  the $30,000 she had already received from the settlement of her case against the other driver and the

16  $5,000 received for medical payments. Porter Dec., Exh. A at 010101–02. Specifically, the

17  Colossus unit stated that Dougherty's claim fell in the range of $26,522 to $32,102. Id., Exh. B at

18  108:10–13 (testimony of Mangone).

19         The settlement range output by Colossus was based solely on pre-litigation settlements

20  within the group of companies owned by AMCO's parent company. Wartach Dep. at 46:6–49:9.

21  Neither jury verdicts, arbitration awards nor post-litigation settlements were reflected in the

22  Colossus analysis of settlement value. Id. The software did, however, distinguish between different

23  geographic regions when providing settlement ranges. Id. at 49:10–50:22. Mangone testified that

24  he had no discretion to vary from the Colossus settlement range in making an offer on a claim,

25  Porter Dec., Exh. B at 46:18–25 (testimony of Mangone), and that after reviewing the Colossus

26  report he concluded that Dougherty did not have a viable claim. Id. at 107:22–108:24; Porter Dec.,

27  Exh. A at 010101, 010105. Mangone could have, however deviated from the range with permission

28  from his manager.

4

*United States District Court*
*For the Northern District of California*

United States District Court
For the Northern District of California

1    On September 28, 2004 AMCO notified Dougherty that it was closing her file.  Mangone

2   Dec., Exh. O.  AMCO stated that it had "previously advised you our evaluation of Ms. Dougherty's

3   injuries did not indicate a viable underinsured motorist claim.  Our evaluation was based on the

4   treatment data as provided by your office."  Id.

5    On November 4, 2004 Dougherty demanded that her claim be submitted to arbitration.  Id.,

6   Exh. P.  AMCO acceded.  On November 9, 2004 Dougherty's claim was transferred to AMCO's

7   litigation section.  Porter Dec., Exh. A at 010107.  On February 24, 2005, Linda Howard,

8   presumably an AMCO employee, entered into her notes for the claim file that "Carl feels we should

9   make some kind of offer."  Id. at 010112.  The notes further state that Howard reviewed the file to

10  "determine what to offer" and that "there is no way to make educated offer at this point as we still

11  cannot figure out why adverse paid her the $30K and we need full med info."  Id.

12    The arbitration was held on January 26, 2006.  Rolph Dec., ¶ 6; Porter Dec., ¶ 3.  Dougherty

13  argued that her claim was worth between $125,000 and $175,000, which was in addition to the

14  $35,000 she had already received.  Rolph Dec., ¶ 5, Exh. Q.  AMCO argued that given Dougherty's

15  comparative negligence and the nature of her injuries, she had already been adequately

16  compensated.  Id., ¶ 6, Exh. R at 01083.  AMCO also estimated that, assuming Dougherty bore no

17  fault in the accident, her claim was "at most . . . worth $20,000."  Id., ¶ 6.  On March 1, 2006 the

18  arbitration judge awarded Dougherty $107,874.  Id., Exh. S (hereinafter "Award") at 2.  The award

19  expressly assumed that Dougherty would never have the surgical procedure previously

20  recommended.  Id. at 3.  Consequently, given the monies Dougherty had already received,

21  Dougherty was entitled to recover $72,874 from AMCO.  Id., ¶ 7.  AMCO paid this amount on

22  March 29, 2006.  Id., ¶ 8.

23

24  LEGAL STANDARD

25    Summary judgment is proper when the pleadings, discovery and affidavits show that there is

26  "no genuine issue as to any material fact and that the moving party is entitled to judgment as a

27  matter of law."  Fed. R. Civ. P. 56(c).  Material facts are those which may affect the outcome of the

28  case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute as to a material fact is

5

**United States District Court**
For the Northern District of California

1   genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving

2   party. Id. The party moving for summary judgment bears the burden of identifying those portions

3   of the pleadings, discovery and affidavits that demonstrate the absence of a genuine issue of material

4   fact. Celotex Corp. v. Cattrett, 477 U.S. 317, 323 (1986). On an issue for which the opposing party

5   will have the burden of proof at trial, the moving party need only point out "that there is an absence

6   of evidence to support the nonmoving party's case." Id.

7        Once the moving party meets its initial burden, the nonmoving party must go beyond the

8   pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a

9   genuine issue for trial." Fed. R. Civ. P. 56(e). Mere allegations or denials do not defeat a moving

10  party's allegations. Id.; Gasaway v. Nw. Mut. Life Ins. Co., 26 F.3d 957, 960 (9th Cir. 1994). The

11  court may not make credibility determinations, and inferences to be drawn from the facts must be

12  viewed in the light most favorable to the party opposing the motion. Masson v. New Yorker

13  Magazine, 501 U.S. 496, 520 (1991); Anderson, 477 U.S. at 249.

14

15  DISCUSSION

16       It is undisputed that Dougherty presented certain documents to AMCO and made a demand.

17  It is also undisputed that based on its evaluation of the submitted documents, AMCO rejected that

18  demand. These documents evidenced her damages, including her pain and suffering and the

19  treatment she had received to date. Subsequently, at arbitration, Dougherty was awarded thousands

20  of dollars more than her initial demand. Dougherty claims that AMCO breached the insurance

21  policy and the duty of good faith and fair dealing "by the way in which they handled, and

22  mishandled, plaintiff's claims for underinsured motorist benefits. They did not pay promptly and/or

23  handle the claim fairly." Def.'s Request for Judicial Notice, Exh. U (hereinafter "Complaint"), ¶

24  19.[2] Thus, the issue here is whether AMCO's denial of Dougherty's claim was reasonable in light of

25  the information then at its disposal. See Wilson v. 21st Century Ins. Co., 42 Cal. 4th 713, 723

26  (2007).

27       In Wilson, the plaintiff had been injured by a third party in an automobile collision and she

28  settled with the third party for the third party's policy limit, $15,000. Plaintiff then claimed

6

**United States District Court**
For the Northern District of California

1   underinsured benefits from her insurer, the defendant.  Defendant insurance company, however,

2   denied the claim stating that the $15,000 received from the third party and the $5,000 it paid for

3   medical expenses adequately compensated plaintiff.  This denial was based on the defendant's

4   claims adjustor's view that plaintiff's medical conditions were preexisting and on his own

5   interpretation of the medical evidence, both of which were directly contrary to the conclusions of

6   plaintiff's treating physicians.  Id. at 717–19.  Thereafter, plaintiff initiated arbitration.  The

7   insurance company then investigated plaintiff's claims further and eventually agreed to pay $85,000

8   to settle her claim.

9          The California Supreme Court stated that a genuine issue of material fact existed as to

10  whether the insurance company had thoroughly investigated and objectively evaluated plaintiff's

11  claim before initially denying it.  The Court took particular issue with the fact that the insurance

12  company had rejected plaintiff's claim even though it had no basis for its rationale that the harm was

13  preexisting or that the causative link for the harm was unlikely.  The court went on to say that if the

14  insurance company had good faith doubts as to the veracity of the claims, it should have investigated

15  them further.  Specifically, "[w]hat [the insurance company] could not do, consistent with the

16  implied covenant of good faith and fair dealing, was *ignore* [their insured's treating physician's]

17  conclusions without any attempt at adequate investigation, and reach contrary conclusions lacking

18  any discernible medical foundation."  Id. at 722.

19         Based on the above case law and after discussing a threshold issue, this court discusses

20  separately the initial denial of Dougherty's claim and AMCO's alleged failure to investigate the

21  issue of definite future medical expenses.

22

23         A.      Threshold Issue

24         The law implies in every contract a covenant of good faith and fair dealing.  Comunale v.

25  Traders & General Ins. Co., 50 Cal. 2d 654, 659 (1958).  In the context of a liability insurance

26  policy, the California Supreme Court found that "[w]hen an insurer unreasonably and in bad faith

27  withholds payment of the claim of its insured, it is subject to liability in tort."  Wilson, 42 Cal. 4th at

28  720 (quoting Frommoethelydo v. Fire Ins. Exchange, 42 Cal. 3d 208, 214–15 (1986)).  Thus,

1  AMCO's argument that no claim for the breach of the implied covenant of good faith and fair

2  dealing can be brought in the absence of a breach of contract is not quite correct.

3       In acknowledging the principle laid down in <u>Comunale</u>, the Supreme Court characterized its

4  application to insurance policies thus:

5       Because the covenant is a contract term, in most cases compensation for its breach is
        limited to contract rather than tort remedies. But '[a]n exception to this general rule
6       has developed in the context of insurance contracts where, for a variety of policy
        reasons, courts have held that [an insurer's] breach of the implied covenant will
7       provide the basis for an action in tort.'

8  <u>Kransco v. Am. Empire Surplus Lines Ins. Co.</u>, 23 Cal. 4th 390, 400 (2000) (quoting <u>Foley v.</u>

9  <u>Interactive Data Corp.</u>, 47 Cal. 3d 654, 684 (1988)).

10      Thus, a breach of the covenant is perforce a breach of the contract.  Admittedly, this area is

11  not without some confusion.  Subsequent to the opinion in <u>Kransco</u>, the California Court of Appeal

12  reiterated that "[i]t is well established that a breach of the implied covenant of good faith is a breach

13  of the contract."  <u>Schwartz v. State Farm Fire & Cas. Co.</u>, 88 Cal. App. 4th 1329, 1339 (2001).

14  Nonetheless, the <u>Schwartz</u> court went on to state that "even an insurer that pays the full limits of its

15  policy may be liable for breach of the implied covenant, if improper claims handling causes

16  detriment to the insured."  <u>Id.</u>  The court then distinguished cases where no breach of contract and,

17  therefore, no breach of the covenant occurred because there was no coverage or no insurable

18  interest.  These are not the circumstances here and as explained hereafter if there is a breach of the

19  covenant it would constitute a breach of the contract.

20

21      B.    <u>Denial of Dougherty's Claim</u>

22      Dougherty discusses the methodology by which AMCO determines the range of settlement

23  amounts for UIM claims.  AMCO uses a software named Colossus and Dougherty claims the

24  software is flawed for two reasons.  First, that AMCO had a policy and practice of failing to properly

25  evaluate first-party claims by providing Colossus with incomplete information about the claims.

26  This flaw, Dougherty contends, violates the standard set forth in <u>Wilson</u>.  Second, that AMCO set

27  the settlement range output by Colossus based solely on pre-litigation settlements, which

28  consistently led to the output of underinclusive settlement ranges.  The second flaw, Dougherty

United States District Court
For the Northern District of California

8

1  contends, whereby AMCO only makes low-ball offers is inconsistent with industry standards and

2  "best practices." See generally Corridan Dec. Neither of these alleged flaws, however, evidence

3  bad faith.

4      First, Dougherty claims that the input to Colossus "failed to consider acupuncture treatment,

5  deposition testimony, the existence of two protruding cervical disks (rather than only one), and the

6  insured's subjective complaints regarding her shoulder." Corridan Dec., ¶ 9(c). Thus, Dougherty

7  argues, the insurance company ignored information she submitted, in contravention to Wilson's

8  requirements. Wilson, however, holds that "[w]hat [the insurance company] could not do, consistent

9  with the implied covenant of good faith and fair dealing, was ignore [their insured's treating

10  physician's] conclusions without any attempt at adequate investigation, and reach contrary

11  conclusions lacking any discernible medical foundation." 42 Cal. 4th at 722. There is no evidence

12  here that AMCO reached a conclusion lacking any discernible medical foundation.

13      The court further notes that the Colossus software's inability to take into account the

14  information Dougherty believes should have been taken into account does not evidence bad faith on

15  AMCO's part. Dougherty has presented no evidence that additional variables, if entered into the

16  Colossus system, would have changed the settlement range output by the system. Specifically, there

17  is no evidence that Dougherty should have been paid $45,000 above and beyond what she had

18  already received. Further, the court is unwilling to define what information an insurer must take into

19  account when evaluating a claim. In this regard, this court agrees with and is bound by the

20  California Supreme Court's rationale when declining to set forth a floor for the investigation an

21  insurer must always perform:

22          We agree that, the critical issue being the reasonableness of the insurer's conduct
           under the facts of the particular case, stating a general rule as to how much or what
23          type of investigation is needed to meet the insurer's obligations under the implied
           covenant is difficult. An insurer's good or bad faith must be evaluated in light of the
24          totality of the circumstances surrounding its actions.

25  Wilson, 42 Cal. 4th at 723. Here, Dougherty's disputes are with certain aspects of her claim that

26  were not specifically input into Colossus. Two of these disputes are with respect to purely

27  subjective considerations, her deposition testimony and her complaints. These are adequately

28  addressed by the fact that Colossus outputs a range and not a particular number. Furthermore, the

1 | *failure* to consider acupuncture treatment (other than its costs) could *increase* Dougherty's claim for

2 | pain and suffering, not reduce it. Finally, the failure to specify, in Colossus, that Dougherty had two

3 | protruding cervical disks instead of only one does not evidence bad faith. Dougherty's argument

4 | implicitly assumes that her general protruding disk ailment was entered into Colossus. The level of

5 | specificity that could be entered into the software knows no bounds. Indeed, if Colossus had an

6 | input field for the number of protruding disks, Dougherty might well have argued that Colossus does

7 | not take into account the specific disks that were protruding. The major aspect of Dougherty's

8 | claim, the protruding disk issue, was taken into account by Colossus. Consequently, since Colossus

9 | outputs a range of possible settlement values, the court holds that the failure to include the

10 | information that Dougherty seeks to include was not in bad faith.

11 |     Second, if AMCO uses a flawed methodology in order to categorically deny legitimate

12 | claims, then AMCO may very well be doing so in bad faith. However, there is no evidence of bad

13 | faith here since Colossus takes into account pre-litigation settlement amounts when determining a

14 | settlement range for *use during pre-litigation proceedings*. Use of pre-litigation data at the expense

15 | of other data, by itself, does not demonstrate bad faith. In this case, whether this settlement range

16 | ought to incorporate jury verdicts, arbitration awards or post-litigation settlements is a business

17 | decision best left to the decision makers at AMCO. This business decision, if not made correctly,

18 | can lead to unnecessary or extensive business expenses. For instance, if AMCO is using a flawed

19 | methodology to evaluate claims, then it will pay for this flaw during arbitration. If, as Dougherty

20 | claims, the Colossus system provides for settlement offers that are unreasonably low, then AMCO's

21 | insureds will reject those offers and collect more during the arbitration proceedings. This is exactly

22 | what happened here.[3]

23 |     In sum, the failure to incorporate information into the Colossus system that Dougherty

24 | considers pertinent, whether provided by her or other post-litigation settlement information, is not

25 | bad faith on AMCO's part.

26

27

28

**United States District Court**
For the Northern District of California

10

C.    Failure to Investigate

**United States District Court**
For the Northern District of California

1    Under California law, when evaluating a claim, an insurer must give at least as much

2  consideration to the interests of its insured as it does to its own interests. Wilson, 42 Cal. 4th at 720.

3

4  This requires the insurance company to investigate the possible bases that might support the

5  insured's claims. Id. at 721.

6    Dougherty claims that AMCO acted in bad faith by failing to investigate Dougherty's claim

7  and instead asking her for information regarding the necessity of further surgery. Specifically,

8  Dougherty claims that bad faith is evidenced by AMCO's failure to obtain her medical records

9  pursuant to a medical release form, have its own physician review medical records she provided,

10  request that she be examined by a physician of its choosing, take its own deposition of her physician,

11  or exercise any of its other rights under the policy to resolve questions regarding her medical

12  condition. Porter Dec., ¶ 2; Pardini Dec., Exh. W at 114:4–115:6 (testimony of Mangone).

13    This entire line of reasoning is unpersuasive. Dougherty claims it was bad faith for the

14  insurance company to request information from its insured and not engage in more expensive and

15  intrusive forms of investigation. However, Dougherty never stated that she was unwilling or unable

16  to provide this information. Indeed, her counsel agreed to provide this information. Nor has

17  Dougherty demonstrated that the requested information was present in the documentation and

18  evidence she provided AMCO.[4] Furthermore, Mangone testified that he did not subject Dougherty

19  to an independent investigation because:

20    Independent medical examinations, or really any kind of examination is intrusive, it's
      time consuming, it's stressful. She'd already been through all that. She's already has
21    her stress, she's already had her inconvenience and so forth. No need to be poked
      and prodded when all we needed was a simple note from [her physician] explaining
22    whether this surgery was a medical necessity. I figured that would be a lot easier
      than sending her through an independent medical examination, and it was just a note
23    that I was asking for.

24  Pardini Dec., Exh. W at 114:21–115:6. This does not evidence bad faith. Indeed, the California

25  Supreme Court has stated:

26    [The insurance company], of course, was not obliged to accept [Wilson's treating
      physician]'s opinion without scrutiny or investigation. To the extent it had good faith
27    doubts, the insurer would have been within its rights to investigate the basis for
      Wilson's claim by asking [Wilson's treating physician] to reexamine or further
28    explain his findings, having a physician review all the submitted medical records and

12

United States District Court
For the Northern District of California

1       offer an opinion, or, if necessary, having its insured examined by other physicians . . . .

2  Wilson, 42 Cal. 4th at 722. Here, unlike in Wilson, AMCO did not deny Dougherty's claim without

3  exercising these contractual rights. AMCO exercised the first step and specifically asked for further

4  explanation from Dougherty's treating physician. It is only after Dougherty's continued non-

5  response for over a year that AMCO closed its file. In light of Dougherty's non-responsiveness,

6  AMCO's decision not to embark upon further more expensive and intrusive steps is not bad faith.

7  Indeed, Dougherty does not explain why AMCO should be required to escalate the issue when her

8  actions evince that she has abandoned the issue.

9       Furthermore, Dougherty attempts a Catch-22 with AMCO's responsibility. AMCO's

10  decision not to subject Dougherty to a medical examination was not in bad faith. However, had

11  AMCO subjected Dougherty to a medical examination without asking for a simple note from her

12  physician, she could just as easily have claimed that AMCO was acting in bad faith. This cannot be

13  so. Although Dougherty is correct to note that conducting an independent review of the submitted

14  evidence or deposing her physicians would not have inconvenienced her at all, she does not explain

15  the need for the same when a note from her physician would have sufficed.[5] .

16       This action boils down to a dispute regarding the compensable value of Dougherty's pain and

17  suffering. There is no dispute that Dougherty suffers from continuing pain due to her injuries. The

18  arbitrator's award found Dougherty had proven $100,000 in "general damages which is reasonable

19  compensation for the pain and suffering she endured from the accident through the birth of her child,

20  her recuperation period and present permanent condition." Award at 2. This decision, by itself,

21  does not demonstrate AMCO's bad faith. The so called "genuine dispute rule" supports this

22  disposition. The rule holds that "an insurer denying or delaying the payment of policy benefits due

23  to the existence of a genuine dispute with its insured as to . . . the amount of the insured's coverage

24  claim is not liable for bad faith . . . ." Wilson, 42 Cal. 4th at 723 (internal quotation omitted). Here,

25  there was a genuine dispute as to the value of Dougherty's claim. This dispute was maintained in

26  good faith and on reasonable grounds. AMCO can substantiate its decision via its Colossus

27  software, which takes the most relevant information into account, does not ignore important medical

28  information and has the proper benchmarks for use in the pre-litigation setting. Further, AMCO

13

1   consistently asked Dougherty to substantiate her future medical expenses claim. Indeed, AMCO's

2   *good* faith is demonstrated by its claims adjustor's statement that the medical evidence being sought

3   would likely take Dougherty's claim out of the $30,000 range and into a range that would allow

4   Dougherty further recovery. See, e.g., Mangone Dep. at 112:1–6 (the future surgery is "still

5   something, a future expense that she could incur, that she would incur and should be evaluated so

6   she can be compensated for it.").

7        Though Dougherty attempts to liken this action to <u>Wilson</u>, she is unable to demonstrate

8   either that AMCO "lacked any factual basis for [its] conclusion" or that it "unfairly ignored medical

9   evidence submitted by the insured." 42 Cal. 4th at 724. Unlike <u>Wilson</u>, AMCO's declination to pay

10  Dougherty was not based on its belief that her injuries were overstated, but instead on its good faith

11  belief that the amount of damages demanded were overstated.

12       Furthermore, AMCO did not act in bad faith by presenting a novel argument at the

13  arbitration; namely, that Dougherty was comparatively negligent and therefore did not deserve

14  compensation under her policy. AMCO is well within its rights to try to justify its decision to the

15  arbitrator. The arbitrator need not accept this explanation. Obviously, the arbitrator did not do so

16  here. Nor did AMCO act in bad faith by refusing to make an offer of settlement. AMCO

17  determined that the $35,000 Dougherty had already received adequately compensated her and

18  consequently denied her claim. Rolph's statement that, in the absence of comparative negligence,

19  Dougherty's claim would be worth *at most* $20,000 does not demonstrate that a settlement offer

20  should have been made.

21       Dougherty also argues that the setting of the reserve value at $15,000 evidences that AMCO

22  acted in bad faith when it denied her claim. However, the setting of this reserve value, which can

23  change depending on the available information, seems to take into account the medical necessity of

24  shoulder surgery. Porter Dec, Exh. A at 010095 (when setting the reserve value, Mangone stated

25  that "the injury appears to be of a serious enough nature and the surgery to repair the shoulder injury

26  is going to happen sooner or later, if the insd has not already had the operation."). Consequently, it

27  was not bad faith to fail to offer $15,000 to settle the claim without first knowing if shoulder surgery

28  was a medical necessity. Furthermore, the fact that Mangone decided to voluntarily double the

*United States District Court*
For the Northern District of California

14

1    initial reserve value of $7,500 before he knew of the Colossus assessment does not demonstrate that

2    Mangone disagreed with the Colossus assessment.  The fact-specific reserve value is subject to

3    change and merely setting it at a particular value without having all the pertinent information does

4    not demonstrate that Mangone acted in bad faith when he chose not to ask his manager to deviate

5    from the range provided by Colossus.[6]

6         Along the same vein, Dougherty's argument that first-party claims must be treated differently

7    than third-party claims is unpersuasive.  Although Dougherty is correct that liability is imposed for

8    bad faith in a first-party claim based on the "special relationship" between an insured and the

9    insurer, Foley v. Interactive Data Corp., 47 Cal. 3d 654, 684–85 (1988), her conclusory statement

10   does not demonstrate bad faith due to AMCO's alleged treatment of the first-party claim in the same

11   manner as third-party claims.

12        In sum, although AMCO has responsibilities and duties under Wilson, this court does not

13   interpret those to mean that it is AMCO's responsibility to maximize the monetary value of

14   Dougherty's claim.  Based on documentation submitted by Dougherty, AMCO concluded in good

15   faith that no monies were due under the policy.  It then asked Dougherty to substantiate her claim

16   further in case future expenses could lead to recovery under the UIM provision of the policy.

17   Dougherty did not do so despite repeated requests.  This cannot be considered bad faith on the part

18   of AMCO.  There is no evidence that AMCO disregarded or discounted any of the information

19   submitted, or that it substituted its own judgment in place of Dougherty's physicians.[7]

20   Consequently, Dougherty cannot maintain a claim for the breach of contract or for breach of the

21   implied covenant of good faith and fair dealing.[8]

22

23   CONCLUSION

24        For the foregoing reasons, defendant's motion for summary judgment is GRANTED.

25        IT IS SO ORDERED.

26
     Dated: June 20, 2008

27                                                    MARILYN HALL PATEL
                                                      United States District Court Judge
28                                                    Northern District of California

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

**ENDNOTES**

1.      Plaintiff moves to strike the declarations of Jeffrey Mangone, Darbie Hoffman and Renton Rolph because required attestations signaling their concurrence in filing of the documents were not provided. There is no evidence to indicate that the declarations were falsely filed. Consequently, plaintiff's motion to strike is DENIED. The court refuses to place a technical oversight above the substance of the declarations. However, the court's benevolence ends here and it warns AMCO to abide by local rules in the future.

2.      The court hereby takes judicial notice of Exhibit U of AMCO's Request for Judicial Notice pursuant to Federal Rule of Evidence 201.

3.      The court notes that the rejection of Dougherty's claim did not rest on anticipated future special damages for surgery. The rejection was based on AMCO's evaluation of Dougherty's claim for general damages based on pain and suffering caused by the 2001 collision.

4.      Dougherty points to language in Dr. Sponzilli's deposition that allegedly states that the surgery was a medical necessity. See Porter Dec., Exh. B at 10225–26. None of the doctor's statements, however, state that the surgery was a "medical necessity."

5.      The court also notes that if, as Dougherty contends, AMCO requested further medical information from Dougherty after rejecting her claim, then AMCO did not delay in processing Dougherty's claim.

6.      Since the methodology used to set the fact specific reserve value will not change the court's disposition, further discovery regrading the same is unnecessary.

7.      Dougherty requests that if the court is inclined to grant the motion for summary judgment, then she be allowed to conduct additional discovery. Specifically, she seeks to further depose Mangone regarding his setting of the reserve value. However, the court's order provided that it was up to AMCO to provide the person most knowledgeable regarding the reserves issue. Pardini Reply Dec., ¶ 5. In any event, given the court's holding above, the issue of how the reserves were set is of no consequence and therefore no further discovery is warranted.

8.      Due the court's holding, it has no occasion to reach Dougherty's argument regarding punitive damages.

16

### PROOF OF SERVICE BY FIRST CLASS MAIL

The undersigned certifies and declares as follows:

I am over the age of eighteen years and not a party to this action. My business address is 180 Montgomery St., Suite 940, San Francisco 94104, which is located in the county where the mailing described below took place.

I am readily familiar with the business practice at my place of business for collection and processing of correspondence for mailing with the United States Postal Service. Correspondence so collected and processed is deposited with the United States Postal Service that same day in the ordinary course of business.

On July 22, 2008  at my place of business at San Francisco, California, I served a copy of the following document(s):

## UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT CIVIL APPEALS DOCKETING STATEMENT (including attachments)

Person(s) being served:

Julian J. Pardini, Esq.
Lewis Brisbois Bisgaard & Smith
One Sansome Street, Suite 1400
San Francisco, CA 94104

David M. Porter, Esq.
Law Offices of David M. Porter
44 Montgomery Street, Suite 2500
San Francisco, CA 94104

Attorney for Defendant
AMCO Insurance Company

Attorney for Plaintiff
Christine Dougherty

**XX**  BY MAIL: I caused such envelope with postage thereon fully prepaid to be placed in the United States mail at San Francisco, California.

❒  BY PERSONAL SERVICE: I caused such document(s) to be delivered by hand to the office(s) of the person(s) listed above.

❒  BY FEDERAL EXPRESS: I caused such document(s) to be delivered via Federal Express to the office of the person(s) listed above.

❒  BY FACSIMILE TRANSMISSION: I caused such document(s) to be delivered via facsimile at or about _____on the above date. The facsimile numbers of the person(s) are as set forth above. The facsimile machine I used complied with Rule 2003(3) and no error was reported by the machine.

Dated: July 22, 2008, at San Francisco, CA.

MARTIN M. SKOWRON